## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| ALEXIS RICHARDSON,<br>    2701 Connecticut Avenue NW, Apt. 100<br>    Washington DC, 20008, | Case No. _____ |
| JAY SANDLER,<br>    33 W Huron Street, Apt. 511<br>    Chicago, IL 60654, | **CLASS ACTION COMPLAINT** |
| LUBNA PESHIMAM,<br>    15 Eastern Drive<br>    West Windsor, NJ 08550, | **DEMAND FOR JURY TRIAL** |
| TRACEY ANN BERTRAND,<br>    11301 NW 34th Place<br>    Sunrise, FL 33323, | |
| MOLLIE KRENGEL,<br>    3420 W 29th Street<br>    Minneapolis, MN 55416, | |
| and | |
| NANCIE LIGON,<br>    64 Woodworth Lane<br>    Sonoma, CA 95476, | |
| Individually and on Behalf of All Others<br>Similarly Situated, | |
| Plaintiffs, | |
| v. | |
| L'OREAL USA, INC.,<br>    575 Fifth Avenue<br>    New York, NY 10017 | |
| Defendant. | |

Plaintiffs Alexis Richardson, Jay Sandler, Lubna Peshimam, Tracey Ann Bertrand,

Mollie Krengel, and Nancie Ligon ("Plaintiffs"), individually and on behalf of all others

similarly situated, bring this class action against L'Oréal USA, Inc. ("L'Oréal" or "Defendant").

The following allegations are based on personal knowledge as to Plaintiffs' own conduct and are made on information and belief as to the acts of others:

## INTRODUCTION

1.      This is a class action on behalf of Plaintiffs and others similarly situated who purchased Defendant's professional hair care products that were falsely and misleadingly labeled, marketed and advertised as "for sale only in professional beauty salons," "exclusive salon distribution," "Exclusive to Kérastase Consultant Salons," and "Available Only at Fine Salons & Spas" (collectively, "salon-only"), when consumers can purchase these products in major retail outlets throughout the United States where professional salon services are not available.

2.      Defendant manufactures, advertises, sells and distributes professional hair care products throughout the United States for consumer purchase.  By labeling these products as salon-only, Defendant has created a demand for them.  The cachet attached to a "salon-only" product induces consumers to pay a premium for Defendant's products under the false pretense that they are distinct from non-salon products, when they are, in fact, available for purchase at mass retailers as are non-salon products.   Regardless whether Defendant's products are considered, or actually are, high quality products, Defendant is using the salon-only designation – which is false and misleading – to market its products as professional, thereby inducing customers to pay a premium.

3.      Defendant intends to capture the cachet, goodwill, price and significant revenues that salon-only products command.  As a result of the false and misleading labeling, marketing and advertising, Defendant is able to sell these products to numerous consumers and profit at the consumer's expense.

4.      Defendant's false and misleading representations violate state and federal law, as detailed below.

5.      Plaintiffs bring this action individually and on behalf of all those similarly situated to seek redress for injury caused by Defendant's wrongful conduct.

## JURISDICTION AND VENUE

6.      This action is within the original jurisdiction of this Court by virtue of 28 U.S.C. §1332(d)(2).   Plaintiffs are citizens of different states than Defendant, and the amount in controversy in this class action exceeds $5 million, exclusive of interest and costs.

7.      This Court has personal jurisdiction over Defendant because Defendant has intentionally and purposefully availed itself of the markets and laws of the District of Columbia by transacting business in this State.

8.      Venue is proper in this District pursuant to 28 U.S.C. §1391(a)(1)-(2).   Plaintiff Richardson resides in this district and bought Defendant's products within this District.

## PARTIES

9.      Plaintiff Nancie Ligon is a citizen of California who resides in Sonoma, California.   Ms. Ligon purchased L'Oréal's Matrix Biolage Shampoo on June 19, 2012, and Matrix Biolage Shampoo and Conditioner at the Big Kmart Store in Petaluma, California on April 19, 2012.

10.      Plaintiff Alexis Richardson is a citizen of the District of Columbia who resides in Washington, D.C.  Ms. Richardson purchased Pureology Hydrate® Shampoo and Conditioner at Salon Blu in the District of Columbia in or about 2012 and Kerastase Bain Satin 1 at Okyo Salon in the District of Columbia in or about 2012.

11.     Plaintiff Tracey Ann Bertrand is a citizen of Florida who resides in Sunrise, Florida.  Ms. Bertrand purchased L'Oréal's Matrix Biolage Hydra Therapie Hydrating Shampoo and Body Lotion at a JC Penney Salon in or about 2011.

12.     Plaintiff Jay Sandler is a citizen of Illinois who resides in Chicago, Illinois.  Mr. Sandler purchased Kérastase Reistance Ciment Thermique and Kérastase Nutritive Bain Satin Shampooing Nutrition Complète at Salon Buzz located at 1 East Delaware Place, Chicago, Illinois 60611 multiple times in 2012.

13.     Plaintiff Lubna Peshimam is a citizen of New Jersey who resides in West Windsor, New Jersey.  Ms. Peshimam has been purchasing L'Oréal's Redken Smooth Down Heat Glide at various salons in New York and New Jersey for the past nine (9) years.  In 2012, she began purchasing Redken Smooth Lock Heat Glide and Color Extend Shampoo and Color Extend Conditioner at various salons in New Jersey.

14.     Plaintiff Mollie Krengel is a citizen of Minnesota who resides in Minneapolis, Minnesota.  Ms. Krengel purchased Pureology Hydrate®, Pure Volume® and Nano Works® at Mask Hair Designs and Day Spa in Minnetonka, Minnesota and Trade Secret in Minnesota in or about 2012.

15.     When Plaintiffs purchased Matrix Biolage Shampoo and Conditioner, Hydra Therapie Hydrating Shampoo and Body Lotion, Kérastase Reistance Ciment Thermique and Kérastase Nutritive Bain Satin Shampooing Nutrition Complète, Kérastase Bain Satin 1, Redken Smooth Down, Pureology Hydrate®, Pure Volume® and Nano Works® (collectively, the "Products"), they reasonably relied on the label representation that the Products are "salon-only." They understood these labels as confirming that the Products are superior in properties and qualities to products manufactured for non-salons.  Accordingly, Plaintiffs paid a premium price

for the Products.  Plaintiffs further understood that, by advertising that the Products were salon-only, Defendant intended to convey to consumers that the Products were somehow unique and distinct from hair care products that are not labeled "salon only."  Plaintiffs were deceived and misled by Defendant's labeling of its Products, and therefore suffered injury from Defendant's deceptive actions.

16.     Defendant L'Oréal USA, Inc. is a Delaware corporation with headquarters at 575 Fifth Avenue, New York, New York 10017.  Defendant L'Oréal is engaged in the business of manufacturing and distributing hair care products under the "Matrix," "Kérastase," "Pureology" and "Redken" brand names.  Matrix offers a wide range of hair care products under its brand, including:  Biolage, Amplify, Sleek.look, Vavoom, Curl.life, Color.smart, Opti.smooth, SOCOLOR and Color Sync.  All Matrix products bear Matrix's name and trademarks and are listed on Defendant L'Oréal's website under "brands."[1] Kérastase offers a wide range of hair products under its brand, including: Cristalliste, Nutritive, Resistance, Reflection Age Premium, Specifique, Soleil, Homme, and Exizir Ultime.  All Kérastase products bear Kérastase's name and trademarks and are accessible through Defendant L'Oréal's website under "brands." Additionally, Redken offers a wide range of hair care products under its brand, including: All Soft, Blonde Glam, Body Full, Clear Moisture, Color Extend, Extreme, Fresh Curls, Nature's Rescue, Real Control, Smooth Down, Smooth Lock and Time Reset.  All Redken products bear Redken's name and trademarks and are accessible through Defendant L'Oréal's website under "brands." Finally, L'Oreal touts Pureology as the #1 color care brand in the United States. Pureology's products include Hydrate®, Pure Volume®, Essential Repair, Super Smooth™,

---

[1] L'Oreal website, http://lorealusa.com/_en/_us/ (last visited Jan. 21, 2013).

Purify® Shampoo and Colour Stylist™.  All Pureology products bear Pureology's name and trademarks and are accessible through Defendant L'Oréal's website under "brands."

## FACTUAL ALLEGATIONS

17.     Hair care products generally fall into two broad categories:  (1) mass market products that are marketed and sold through chain drug stores, grocery stores, department stores, and mass retailers such as Target, CVS, Walgreens, Kmart and Kroger and (2) professional or salon-only products that are marketed for sale only through professional beauty salons.

18.     Defendant L'Oréal falsely represents to the public that its Matrix, Kérastase, Redken and Pureology hair care products are manufactured exclusively for the professional salon industry and are therefore only available and sold through professional beauty salons, beauty schools, or spas.

**A.     Defendant's False and Misleading Labeling and Advertising**

19.     Defendant advertises its Products as "salon-only" on its product labels, on the internet, and in print advertising.

20.     A bottle label for a Matrix product reflecting the salon-only designation is attached to this Complaint as Exhibit A.

21.     A bottle label for a Kérastase product reflecting the salon-only designation is attached to this Complaint as Exhibit B.

22.     A bottle label for a Redken product reflecting the salon-only designation is attached to this Complaint as Exhibit C.

23.     A bottle label for a Pureology product reflecting the salon-only designation is attached to this Complaint as Exhibit D.

24.     Defendant's web-advertising corroborates its intent to highlight the professional nature of its salon-only products.   Defendant's websites include:  www.loreal.com,

www.redkensalon.com, www.matrix.com, www.matrixbeautiful.com, www.pureology.com, and www.kerastase-usa.com. Defendant L'Oréal's website specifically distinguishes its products between those sold as "Consumer Products" and those sold as "Professional Products." Matrix Biolage, Kérastase, Pureology and Redken are categorized as "Professional Products," distributed only through salons. They are not included in the list of "Consumer Products" sold in retail outlets.

25. The "Professional Product" designation under which Matrix Biolage, Kérastase, Pureology and Redken are categorized on www.lorealusa.com states, "L'Oréal Professional supplies a network of exclusive distributors who service professional hairdressers with their cutting edge, professionally exclusive haircolor, haircare and styling products."[2] The website further represents that its "Professional Products" "are formulated to bring unrivaled results when applied by professionally trained hairdressers."[3]

26. The Matrix website[4] underscores the purported distinction between its professional and consumer products by proclaiming the following:

- To ensure a full refund, you MUST have purchased the product from an authorized salon/spa. Matrix can only guarantee the performance of our products when purchased through an authorized salon/spa. If you have purchased any of our products from the following, we cannot guarantee that the products are within our standards and therefore will not be able to provide you with a refund.

- Unauthorized Sales Outlets

- Any Mass Retailer

---

[2] *Id.*

[3] *Id.*

[4] Matrix Website, http://www.matrix.com/antidiversion/qa.aspx (last visited Jan. 21, 2013).

- Mass Discount Store

- Grocery Store

- Online Purchases from non-L'Oréal Professional Salon Product Website

\*       \*       \*

Only products purchased in a salon or spa are guaranteed to perform to our standards. . . .

27.     Defendant has created a demand and cachet for its products by labeling and advertising them as salon-only.  These representations are an important aspect of the Products' claimed nature, characteristics, and qualities and allow Defendant to demand a premium for the Products.

28.     By advertising its brands as professional grade and available only through salons, Defendant captures the cachet, goodwill, price, and significant revenues that salon-only products command.  The salon-only label implies a superior quality product that is available only through professionals in hair care.  The salon-only representation also is intended to differentiate these Products from those sold only by mass retailers.

**B.      Defendant Benefits from Claimed "Diversion" of Its Products**

29.     Despite Defendant's claims that Matrix, Kérastase, Pureology and Redken professional/salon-only hair care products are sold only in salons, these products are, in fact, sold throughout the country in drug stores, grocery stores, and other mass merchandise retail stores, including Target, Kmart and Walgreens.

30.     The sale of professional or salon-only products through stores that do not have a salon on the premises is known in the industry as "diversion."

31.     On the "Anti-Diversion" page of its website,[5] Matrix suggests that Matrix products sold outside of professional salons are sold without Defendant's knowledge, approval or consent: "Products are diverted by unauthorized distributors and salons or their employees, *plus other dishonest individuals who see profit in piracy*."  (Emphasis supplied.)

32.     Matrix's website further claims that it

> states on all its advertising "Genuine Products Guaranteed Only In Salons."  This means if you buy our products in a supermarket, drugstore or any other outlet other than a salon, we cannot guarantee that it is an authentic Matrix product that will perform as tested.

33.     As part of its "anti-diversion" advertising, the Matrix website further states that it "continues in its commitment to aggressively combat diversion" and claims to engage in specific strategies to achieve that goal.

34.     Like Matrix Biolage, Redken's website contains an "Anti-Diversion" page.[6] Redken's website claims that "all genuine Redken products are sold exclusively in salons.  But you might see a few bottles in your local supermarket, drugstore, online or at a discounter.  Salon professional products you find outside of a salon are considered to be 'diverted.'"[7]

35.     The Redken website claims that "Products are diverted by unauthorized distributors and salons or their employees, plus other dishonest individuals who see profit in piracy."[8]

---

[5] Matrix Anti-Diversion website, http://www.matrix.com/antidiversion/ (last visited Oct. 26, 2012).

[6] Redken Anti-Diversion website,  http://www.redkensalon.com/difference/anti-diversion/ (last visited Oct. 26, 2012).

[7] *Id.*

[8] *Id.*

36.     Redken's website professes it has an "Anti-Diversion Strategy" that it claims "focuses on the sources of diversion, which means uncovering authorized distributors and salons that intentionally divert our products."[9]

37.     Pureology also has an "Anti-Diversion" page on its website.[10]   Pureology claims it uses "exclusive product coding . . . to track the movement of Pureology products.   This is the method for tracing products to industry diverters."   Furthermore, Pureology claims its representatives "undertake regular sample sweeps at unauthorized retail outlets in the U.S. These products are subsequently decoded in an effort to identify diverters."[11]

38.     Upon information and belief, Defendant is aware that Matrix, Kérastase, Pureology and Redken salon-only hair care products are being sold through stores other than salons, and that the product sold is the same "authentic" product sold in its salons.

39.     According to data compiled by ACNielsen's Market Decisions for the years 2001 to 2011, Defendant L'Oréal owns four heavily diverted brands: Matrix, Redken, Kérastase and Pureology.   Brands Matrix, Redken, Kérastase and Pureology make professional/salon-only claims.   By 2011, total sales of L'Oréal diverted products were $110.088 million.

40.     For Defendant, every bottle of its professional product sold outside of its stated and intended professional/salon-only use increases its sales revenues and profits.

41.     Defendant has the technology and the ability to trace diverted products to particular distributors, but has instead chosen to turn a blind eye toward the practice despite its

---

[9] *Id.*

[10] Pureology Anti-Diversion website, http://www.pureology.com/discover/antidiversion.aspx (last visited Jan 18, 2013).

[11] *Id.*

public statements opposing diversion and its claimed "commitment" to protecting the integrity of its professional brand by stopping the practice.

42.     Upon information and belief, Defendant has known of the magnitude of the diversion problem for years and continues to profit from it.

43.     Defendant's claims that it opposes diversion are false as demonstrated by its failure to take meaningful steps to halt the practice and the hundreds of millions of dollars that Defendant earns each year from the sale of diverted product.

**C.     Defendant Has Profited from Its False and Misleading Labeling and Advertising**

44.     Defendant's labeling, print and internet advertising, and promotion of its professional products as sold to salons only are literally false and misrepresent the nature, characteristics, qualities and origin of Defendant's products.

45.     Despite its advertising and labeling of its products as available only through professional salons, Defendant's salon-only products are widely available in grocery stores, drug stores, mass merchandise stores, and over the internet.  At the point of sale, a reasonable consumer would not have the ability to independently investigate why or how a product that is labeled salon-only is sold in a mass retailer such as Kmart. Defendant knows of this diversion and knowingly profits from it as described above.

46.     Defendant's labeling, and its print and internet advertising of its professional products as available only in salons, are deceptive and misleading. These representations are likely to cause confusion among consumers and to deceive them as to the affiliation, connection or association of Defendant's Products with professional salons, falsely leading consumers to believe that the Products have qualities that make them distinct and unique because of their exclusive salon connection and that differentiate these Products from hair care products otherwise commercially available in non-salon retail outlets.

47.    Defendant purportedly knows that consumers are willing to pay a premium for products sold exclusively through salons because they associate these products with professional expertise.

48.    Defendant has profited from its false advertising not only with respect to products sold in professional salons, but also with respect to products diverted and sold outside of salons through consumer retail outlets, including: chain drug stores, grocery stores, department stores, and mass retailers such as Target, Kmart, CVS, Walgreens, and Kroger grocery stores.  The salon-only designation causes consumers to view Defendant's line of professional salon Products as having a cachet and a presumed quality that commands a higher price than is paid for other non-professional grade products.  Accordingly, consumers are willing to pay a premium price for the Products both in salons and outside salons.

## CLASS ACTION ALLEGATIONS

49.    This action is brought and may be properly maintained as a class action pursuant to Fed. R. Civ. P. 23. Plaintiffs seek certification of the following Class:

**Nationwide Class**:  All consumers throughout the United States who purchased Matrix, Kérastase, Pureology and/or Redken products during the liability period for their household use, rather than for resale or distribution, that were marketed under the brand name Matrix, Kérastase, Pureology and/or Redken and were labeled or advertised as sold and/or available only through professional salons or beauty schools.

In the alternative, Plaintiffs seek approval of the following Classes:

(a)    **District of Columbia Class**:  All consumers within the District of Columbia who purchased Matrix, Kérastase, Pureology and/or Redken products during the liability period for their household use, rather than for resale or distribution, that were marketed under the brand name Matrix, Kérastase, Pureology and/or Redken and were labeled or advertised as sold and/or available only through professional salons or beauty schools.

(b)    **California Class**:  All consumers within the State of California who purchased Matrix, Kérastase, Pureology and/or Redken products during the liability period for their household use, rather than for resale or distribution, that

were marketed under the brand name Matrix, Kérastase, Pureology and/or Redken and were labeled or advertised as sold and/or available only through professional salons or beauty schools.

(c) **Minnesota Class:** All consumers within the State of Minnesota who purchased Matrix, Kérastase, Pureology and/or Redken products during the liability period for their household use, rather than for resale or distribution, that were marketed under the brand name Matrix, Kérastase, Pureology and/or Redken and were labeled or advertised as sold and/or available only through professional salons or beauty schools.

(d) **New Jersey Class:** All consumers within the State of New Jersey who purchased Matrix, Kérastase, Pureology and/or Redken products during the liability period for their household use, rather than for resale or distribution, that were marketed under the brand name Matrix, Kérastase, Pureology and/or Redken and were labeled or advertised as sold and/or available only through professional salons or beauty schools.

(e) **Illinois Class:** All consumers within the State of Illinois who purchased Matrix, Kérastase, Pureology and/or Redken products during the liability period for their household use, rather than for resale or distribution, that were marketed under the brand name Matrix, Kérastase, Pureology and/or Redken and were labeled or advertised as sold and/or available only through professional salons or beauty schools.

(f) **Florida Class:** All consumers within the State of Florida who purchased Matrix, Kérastase, Pureology and/or Redken products during the liability period for their household use, rather than for resale or distribution, that were marketed under the brand name Matrix, Kérastase, Pureology and/or Redken and were labeled or advertised as sold and/or available only through professional salons or beauty schools.

50.     All classes defined above are referred to herein as the "Class."  Plaintiffs reserve the right to change the Class definition at any time with proper notice.

51.     Excluded from the Class is Defendant, any entity in which Defendant has a controlling interest or which holds a controlling interest in Defendant, including, but not limited to, any salons or distributors in which Defendant has a controlling interest or which Defendant has previously identified as having diverted Defendant's professional products during the liability period and Defendant's legal representatives, assigns and successors.

13

52. Plaintiffs also specifically exclude from the Class any person or entity who has previously commenced and concluded a lawsuit against Defendant arising out of the subject matter of this lawsuit.

53. Plaintiffs also specifically exclude from the Class the Judge assigned to this case and any member of the Judge's immediate family.

54. The Class is so numerous that individual joinder is impracticable.  The actual number of Class members is unknown at this time, but on information and belief will likely number in the thousands.  The actual number of Class members can be determined through sales records in the possession of Defendant.

55. Numerous questions of law and fact common to Plaintiffs and the Class predominate over any questions that may affect individual Class members, including, without limitation:

    (a) Whether Defendant's advertising that its salon-only products are available only in salons is literally false;

    (b) Whether Defendant's advertising that its salon-only products are available only in salons is false, misleading, and likely to deceive or confuse consumers;

    (c) Whether Defendant knew or should have known of the false and misleading nature of its advertising and labeling before putting the products subject to such advertising and labeling into the stream of commerce for purchase and use by Plaintiffs and the Class;

    (d) Whether Defendant's professional hair care products are deceptive in that they are not as advertised, marketed, and labeled;

(e) Whether Defendant acted intentionally in its deceptive and false advertising;

(f) Whether, and to what extent, injunctive relief should be imposed on Defendant to prevent such conduct in the future.

56.     Plaintiffs' claims are typical of the claims of the Class, in that Plaintiffs, like all Class members, purchased Matrix, Kérastase, Pureology and/or Redken professional hair care products from a salon and/or a mass retailer believing that the product was superior to a non-salon product because of the salon-only designation.  The misrepresentations to Plaintiffs when they purchased the Products are similar to the misrepresentations made to other Class members across the country (and across D.C., California, Illinois, Florida and Minnesota).  Plaintiffs and all Class members have suffered injury as a result of Defendant's misrepresentations.

57.     Plaintiffs will fairly and adequately protect the interests of the Class.  Plaintiffs have retained experienced counsel with the necessary expertise and resources to prosecute a nationwide consumer class action.  Plaintiffs and their counsel do not foresee any circumstances where the interests of Plaintiffs would be adverse to the interests of the Class.

58.     A class action is superior to other available methods for the fair and efficient adjudication of this controversy.  It would be economically impractical for Plaintiffs and Class members to pursue individual actions against Defendant as the costs of prosecution would likely surpass their individual damages.  Thus, Plaintiffs and Class members would be left with no effective remedy for the damages they suffered and continue to suffer.  Class treatment of Plaintiffs' claims will permit Plaintiffs and the Class to vindicate their rights against Defendant and conserve the resources of the Court and the Parties.  Class treatment will also avoid the possibility of inconsistent outcomes that could result from a multitude of individual actions in varying jurisdictions nationwide.

**COUNT I**
**Violation of the District of Columbia Consumer Protection Procedures Act**
**(ON BEHALF OF THE DISTRICT OF COLUMBIA CLASS)**

59.      This Count is brought pursuant to the District of Columbia Consumer Protection

Procedures Act ("CPPA"), D.C. Code §28-3901, *et seq*.  This Count is alleged against the

Defendant on behalf of the General Public of the District of Columbia pursuant to District of

Columbia Code §28-3905(k)(1).

60.      D.C. Code §28-3904 makes it an "unlawful trade practice . . . whether or not any

consumer is in fact misled, deceived or damaged thereby," to, among other things: (a) represent

that goods or services have a source, sponsorship, approval, certification, accessories,

characteristics, ingredients, uses, benefits, or quantities that they do not have; (d) represent that

goods or services are of a particular standard, quality, grade, style or model, if in fact they are of

another; and (e) misrepresent as to a material fact which has a tendency to mislead.

61.      In marketing the Products, Defendant violated subsection (a), (d) and (e) of the

CPPA by, *inter alia*, representing that the Products are "salon-only," when, in fact, they are

available for purchase at non-salon mass retailers.

62.      Plaintiff Richardson, on behalf of the General Public of the District of Columbia,

hereby seeks equitable relief in the form of restitution and an injunction preventing Defendant

from continuing to mislead the District of Columbia General Public, and requiring them to

disclose that the Products are not in fact "salon-only."

63.      Plaintiff Richardson and the General Public of the District of Columbia further

seek reasonable attorneys' fees and costs plus interest.

**COUNT II**
**For Violations of California Business & Professions Code Section 17200, *et seq.***
**Unlawful Business Acts and Practices**
**(ON BEHALF OF THE CALIFORNIA CLASS)**

16

64.     Plaintiffs incorporate by reference and reallege all allegations set forth in the preceding paragraphs.

65.     The acts of Defendant, as described above, constitute unlawful business acts and practices.

66.     In particular, Defendant's manufacturing, marketing, advertising, packaging, labeling, distributing, and selling of its professional hair care products violate California's Sherman Food, Drug, and Cosmetics Law, Cal. Health & Safety Code §109875, *et seq.* (the "Sherman Act").

67.     In relevant part, the Sherman Act declares that cosmetics are misbranded if the labeling on such cosmetics is false or misleading in any particular way and further provides that it is unlawful for any person to misbrand any cosmetic.  Cal. Health & Safety Code §§111770, 111765.

68.     The Sherman Act defines a "person" to include corporations.  Cal. Health & Safety Code §109995.  Defendant is a corporation and, therefore, is a "person" within the meaning of the Sherman Act.

69.     The Sherman Act defines "cosmetic" to mean "any article, or its components, intended to be rubbed, poured, sprinkled, or sprayed on, introduced into, or otherwise applied to, the human body, or any part of the human body, for cleansing, beautifying, promoting attractiveness, or altering the appearance."  Cal. Health & Safety Code §109900.  Defendant's Matrix, Kérastase, Redken and Pureology lines of professional hair care products constitute "cosmetics" within the meaning of the Sherman Act.

70.     The business practices alleged above are unlawful under the Consumers Legal Remedy Act, Cal. Civ. Code §1750, *et seq.* ("CLRA"), which forbids deceptive advertising.

17

71.     The business practices alleged above are also unlawful under Cal. Bus. & Prof. Code §17200, *et seq.*, because they violate §17500, *et seq.,* which forbids untrue and misleading advertising.

72.     As a result of the business practices described above, Plaintiff Ligon and the other members of the California Class, are entitled, pursuant to Cal. Bus. & Prof. Code §17203, to an order enjoining future unlawful conduct on the part of Defendant and to such other orders or judgments as may be necessary to force Defendant to halt the mislabeling or deceptive marketing or sale of Matrix, Kérastase, Redken and Pureology professional salon-only products.

73.     The above-described unlawful business acts and practices of Defendant present a threat and reasonable likelihood of continued deception to Plaintiff Ligon and other members of the California Class in that Defendant has systematically perpetrated, and continues to perpetrate, such acts or practices upon members of the California Class by means of its misleading manufacturing, marketing, advertising, packaging, labeling, distributing, and selling of Matrix, Kérastase, Redken and Pureology hair care products marketed as professional, salon-only, products.

74.     THEREFORE, Plaintiffs pray for relief as set forth below.

## COUNT III
### For Violations of California Business & Professions Code Section 17200, *et seq.*
### Unfair Business Acts and Practices
### (ON BEHALF OF THE CALIFORNIA CLASS)

75.     Plaintiffs incorporate by reference and reallege all allegations set forth in the preceding paragraphs.

76.     The acts of Defendant, as described above, constitute unfair business acts and practices.

77.     Plaintiff Ligon and the other members of the California Class who purchased Defendant's Matrix, Kérastase, Redken and Pureology professional, salon-only hair care products, suffered injury by virtue of buying products they believed had exclusive professional salon affiliations which were not, in fact, professional salon-only products and which they would not have purchased absent Defendant's unfair marketing, advertising, packaging, labeling, distributing, and selling methods.

78.     There is no benefit to consumers or competition from deceptive marketing, advertising, packaging, labeling, distributing or selling of Defendant's hair care products. Instead, the harm to consumers and competition is significant and substantial.

79.     Plaintiff Ligon and the other members of the California Class had no reasonable way of knowing that the products they thought were superior products having exclusive professional salon affiliations were, in fact, not as marketed, advertised, packaged, labeled and sold.  Thus, they could not have reasonably avoided the injury each of them suffered.

80.     Defendant's conduct, as described above, is unfair in that it is unethical, unscrupulous, offends public policy and is substantially injurious to Plaintiff Ligon and the other members of the California Class.

81.     As a result of the business acts and practices described above, Plaintiff Ligon and the other members of the California Class are entitled, pursuant to Cal. Bus. & Prof. Code §17203, to an order enjoining future unlawful conduct on the part of Defendant and to such other orders or judgments as may be necessary to force Defendant to halt the mislabeling or deceptive marketing or sale of Matrix, Kérastase, Redken and Pureology professional salon-only products.

82.     THEREFORE, Plaintiffs pray for relief as set forth below.

**COUNT IV**
**For Violations of California Business & Professions Code Section 17200,** *et seq.*
**Fraudulent Business Acts and Practices**
**(ON BEHALF OF THE CALIFORNIA CLASS)**

83.     Plaintiffs incorporate by reference and reallege all allegations as set forth in the preceding paragraphs.

84.     The acts of Defendant, as described above, constitute fraudulent business practices under Cal. Bus. & Prof. Code §17200, *et seq.*

85.     As more fully described above, Defendant's misleading marketing, advertising, packaging, labeling, distributing and selling of Defendant's professional salon hair care products are likely to deceive reasonable consumers, and, in fact, unquestionably deceived Plaintiff Ligon regarding the characteristics of Defendant's product.

86.     This fraud and deception caused Plaintiff Ligon and other members of the California Class to purchase Defendant's Matrix, Kérastase, Redken and Pureology hair care products for a premium price based upon their purported exclusive professional salon affiliation.

87.     As a result of the business acts and practices described above, Plaintiff Ligon and other members of the California Class are entitled, pursuant to Cal. Bus. & Prof. Code §17203, to an order enjoining future unlawful conduct on the part of Defendant and to such other orders or judgments as may be necessary to force Defendant to halt the mislabeling or deceptive marketing or sale of Matrix, Kérastase, Redken and Pureology professional salon-only products.

88.     THEREFORE, Plaintiffs pray for relief as set forth below.

**COUNT V**
**For Violations of California Business & Professions Code Section 17500,** *et seq.*
**Misleading and Deceptive Advertising**
**(ON BEHALF OF THE CALIFORNIA CLASS)**

89.     Plaintiffs incorporate by reference and reallege all allegations set forth in the preceding paragraphs.

20

90.     Plaintiff Ligon assert this cause of action for violations of Cal. Bus. & Prof. Code §17500, *et seq.*, through misleading and deceptive advertising.

91.     At all times material, Defendant engaged in a scheme of advertising Matrix, Kérastase, Redken and Pureology products as professional salon-only hair care products when, in fact, Defendant knew that these products were also sold in non-salon retail stores.  In engaging in this conduct, Defendant misrepresented an important characteristic of its products – i.e., their exclusive professional salon affiliation.   Defendant's advertisements and inducements concerning its professional salon-only products were made within the State of California and come within the definition of advertising contained in Cal. Bus. & Prof. Code §17500, *et seq.*, in that such advertisements and promotions were intended as inducements to consumers, including Plaintiff Ligon and members of the California Class, to purchase Defendant's products. Defendant knew, or in the exercise of reasonable care should have known, that its labeling of products was misleading and deceptive.

92.     In furtherance of its plan and scheme, Defendant has disseminated mislabeled products and distributed advertising, packaging, and other promotional materials, that misleadingly and deceptively represent that Matrix, Kérastase, Redken and Pureology products are sold only through salons.   Consumers, including Plaintiff Ligon and members of the California Class, were targets of these representations and reasonably relied on them.

93.     Defendant's acts were and are likely to deceive reasonable consumers by suggesting that the Matrix, Kérastase, Redken and Pureology professional hair care products have an exclusive professional salon affiliation which they do not, in fact, have, all in violation of the "misleading prong" of Cal. Bus. & Prof. Code §17500.

94.     As a result of the above violations of the "misleading prong" of Cal. Bus. & Prof. Code §17500, *et seq.*, Defendant has been unjustly enriched at the expense of Plaintiff Ligon and other members of the California Class.  Pursuant to Cal. Bus. & Prof. Code §17535, Plaintiff Ligon and other members of the California Class are entitled to an order enjoining future unlawful conduct on the part of Defendant and to such other orders or judgments as may be necessary to force Defendant to halt the mislabeling or deceptive marketing or sale of Matrix, Kérastase, Redken and Pureology professional salon-only products.

95.     THEREFORE, Plaintiffs pray for relief as set forth below.

**COUNT VI**
**For Violations of California Business & Professions Code Section 17500, *et seq.***
**Untrue Advertising**
**(ON BEHALF OF THE CALIFORNIA CLASS)**

96.     Plaintiffs incorporate by reference and reallege all allegations set forth in the preceding paragraphs.

97.     Plaintiff Ligon asserts this cause of action for violations of Cal. Bus. & Prof. Code §17500, *et seq.* for untrue advertising by Defendant.

98.     At all times material, Defendant was engaged in a scheme that involved offering Matrix, Kerastase, Redken and Pureology professional, salon-only, hair care products for sale to Plaintiff Ligon and other members of the California Class by way of, *inter alia*, commercial marketing, advertising, packaging, labeling, and other promotional materials.  These materials misrepresented that Matrix, Kerastase, Redken and Pureology professional hair care products were marketed and sold only through salons, thereby leading consumers to believe that the products were distinctive and unique because of their professional salon affiliation.  These representations and inducements were made within the State of California and come within the definition of advertising as contained in Cal. Bus. & Prof. Code §17500, *et seq.*, in that these

representations were intended to induce consumers to purchase Matrix, Kerastase, Redken and Pureology products and were intended to reach members of the Class, including Plaintiff Ligon. Defendant knew that the salon-only claims were untrue.

99.     The above-described acts of Defendant in disseminating untrue advertising throughout the State of California deceived Plaintiff Ligon and other members of the California Class by obfuscating and misrepresenting the nature and quality of the Matrix, Kerastase, Redken and Pureology professional hair care products, all in violation of the "untrue prong" of Cal. Bus. & Prof. Code §17500.

100.    As a result of the above violations of the "untrue prong" of Cal. Bus. & Prof. Code §17500, *et seq.*, Defendant has been unjustly enriched at the expense of Plaintiff Ligon and the other members of the California Class. Pursuant to Cal. Bus. & Prof. Code §17535, Plaintiff Ligon and the other members of the California Class are entitled to an order enjoining future unlawful conduct on the part of Defendant and to such other orders or judgments as may be necessary to force Defendant to halt the mislabeling or deceptive marketing or sale of Matrix, Kérastase, Redken and Pureology professional salon-only products.

101.    THEREFORE, Plaintiffs pray for relief as set forth below.

<u>**COUNT VII**</u>
<u>**For Violations of the California Consumers Legal Remedies Act,**</u>
**California Civil Code Section 1750,** *et seq.*
**(ON BEHALF OF THE CALIFORNIA CLASS)**

102.    Plaintiffs incorporate by reference and reallege all allegations set forth in the preceding paragraphs, except to the extent that they seek anything other than injunctive relief.

103.    This cause of action is brought under the CLRA.

104.    Defendant's actions, representations, and conduct have violated, and continue to violate the CLRA, because they relate to transactions that are intended to result, or which have resulted, in the sale of goods to consumers.

105.    Plaintiff Ligon and the other members of the California Class are "consumers" as that term is defined by the CLRA, Cal. Civ. Code §1761(d).

106.    The Products that Plaintiffs Ligon and other members of the California Class purchased from Defendant are "goods" within the meaning of Cal. Civ. Code §1761(a).

107.    By engaging in the actions, misrepresentations, and misconduct set forth in this Complaint, Defendant has violated, and continues to violate, Section 11709(a)(5) of the CLRA. Specifically, in violation of Cal. Civ. Code §1770(a)(5), Defendant's acts and practices constitute unfair methods of competition and unfair or fraudulent acts or practices in that they misrepresent that goods have sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities which they do not have.

108.    By engaging in the actions, misrepresentations, and misconduct set forth in this Complaint, Defendant has violated, and continues to violate, Section 1170(a)(7) of the CLRA. Specifically, in violation of Cal. Civ. Code §1770(a)(7), Defendant's acts and practices constitute unfair methods of competition and unfair or fraudulent acts or practices in that they misrepresent the particular standard, quality or grade of goods.

109.    By engaging in the actions, misrepresentations and misconduct set forth in this Complaint, Defendant has violated, and continues to violate, Section 1770(a)(9) of the CLRA. Specifically, in violation of Cal. Civ. Code §1770(a)(9), Defendant's acts and practices constitute unfair methods of competition and unfair or fraudulent acts or practices in that they advertise goods with intent not to sell them as advertised.

24

110.    Pursuant to Cal. Civ. Code §1780(a) (2), Plaintiff Ligon request that this Court enjoin Defendant from continuing to employ the unlawful methods, acts, and practices alleged herein.  If Defendant is not restrained from engaging in these types of practices in the future, Plaintiff Ligon and other members of the California Class will continue to suffer harm.

111.    THEREFORE, Plaintiffs pray for injunctive relief as provided by the CLRA.

**COUNT VIII**
**Violations of the Minnesota Consumer Fraud Act**
**(ON BEHALF OF THE MINNESOTA CLASS)**

112.    Plaintiffs incorporate by reference and reallege all allegations set forth in the preceding paragraphs.

113.    Minnesota Statute §325F.69, subd. 1 makes it unlawful for any person by use of "any fraud, false pretense, false promise, misrepresentation, misleading statement or deceptive practice, with intent that others rely there on in connection with the sale of any merchandise, whether or not any person has in fact been misled, deceived, or damaged thereby."

114.    Defendant's business practices, in advertising, marketing and selling its Products as "salon-only" constitute the use of fraud, false pretense, false promises, misrepresentations, misleading statements and deceptive practices and, thus, constitute multiple, separate violations of Minn. Stat. §325F.69.

115.    By engaging in the conduct described herein, Defendant violated and continues to violate Minn. Stat. §325F.69, subd. 1.

116.    Defendant's wrongful conduct and use of false pretenses, false promises, misrepresentations, and misleading statements, all with the intent that others relied on those statements, includes, by way of example and not by limitation:

a. Defendant's fraudulent, misleading, and deceptive statements and practices relating to its Products;

   b.  Defendant's warranty-related misconduct, including its fraudulent, deceptive and
       unfair practice of misrepresenting its Products' availability and characteristics;

   c.  Defendant's concealment of the true availability and characteristics of its
       Products; and

   d.  Defendant's continued sale of its Products after it knew about the misleading
       representations.

117.    Defendant's omissions and misrepresentations set forth in this Complaint are
material in that they relate to information that would naturally affect the purchasing decision or
conduct of purchasers, including Plaintiff Krengel and the Minnesota Class members, regarding
whether or not to purchase Defendant's Products.

118.    Had Plaintiff and the Minnesota Class known that Defendant's Products were not
"salon-only," they would not have paid a premium for the Products.

119.    Defendant fraudulently, negligently, recklessly and/or intentionally concealed
and/or failed to disclose the true characteristics of the Products for the purpose of inducing
Plaintiff Krengel and the Minnesota Class to rely thereon, and Plaintiff Krengel and the
Minnesota Class justifiably relied, to their detriment upon the truth and completeness of
Defendant's representations about its Products.  Plaintiff Krengel and the Minnesota Class relied
on Defendant to disclose all material facts and not omit any material information regarding its
Products.  That Plaintiff Krengel and the Minnesota Class members were deceived is evidenced
by the fact that Plaintiff Krengel and the Minnesota Class members purchased the Products.  Had
they known the truth, Plaintiff Krengel and the Minnesota Class would not have paid a premium
for Defendant's Products.   Defendant's fraudulent and deceptive practice of advertising,
marketing and selling the Products repeatedly occurred in Defendant's trade or business and was
capable of deceiving a substantial portion of the purchasing public.

26

120.     Where, as here, Plaintiff's claims inure to the public benefit, Minnesota's private-attorney general statute, Minn. Stat. §8.31, subd. 3a, allows individuals who have been injured through a violation of these consumer-protection statutes to bring a civil action and recover damages, together with costs and disbursements, including reasonable attorneys' fees.

121.     As a result of Defendant's fraud, false pretense, false promises, misrepresentations, misleading statements and deceptive practices relating to the sale of its Products, the Plaintiff and class have suffered actual damages in that they would not have paid a premium for the Products if they had known that the representations regarding the Products' "salon-only" nature were false.

122.     That as a direct, proximate and foreseeable result of Defendant's violation of the statute, the Plaintiff Krengel and Minnesota Class members sustained damages.

123.     THEREFORE, Plaintiffs pray for relief as set forth below.

**COUNT IX**
**Violations of the Minnesota Unlawful Trade Practices Act**
**(ON BEHALF OF THE MINNESOTA CLASS)**

124.     Plaintiffs incorporate by reference and reallege all allegations set forth in the preceding paragraphs.

125.     Minnesota Statute §325D.13 provides that, "No person shall, in connection with the sale of merchandise, knowingly misrepresent, directly or indirectly, the true quality, ingredients or origin of such merchandise."

126.     By engaging in the conduct described herein, Defendant violated and continues to violate Minn. Stat. §325D.13.

127.     Where, as here, Plaintiffs' claims inure to the public benefit, Minnesota's private-attorney general statute, Minn. Stat. §8.31, subd. 3a, allows individuals who have been injured

through a violation of these consumer-protection statutes to bring a civil action and recover damages, together with costs and disbursements, including reasonable attorneys' fees.

128.    Defendant's wrongful conduct and misrepresentation of the true quality of its Products, includes, by way of example and not by limitation:

     e.    Defendant's fraudulent, misleading, and deceptive statements and practices relating to its Products;

     f.    Defendant's warranty-related misconduct, including its fraudulent, deceptive and unfair practice of misrepresenting its Products' availability and characteristics;

     g.    Defendant's concealment of the true availability and characteristics of its Products; and

     h.    Defendant's continued sale of its Products after it knew about the misleading representations.

129.    Defendant and its agents and distributors also misrepresented the true characteristics of Defendant's Products by making the various statements about the alleged quality and availability of the Products as stated above.

130.    As a result of Defendant's practices relating to misrepresentation of the true characteristics of the Products, Plaintiff Krengel and the Minnesota Class have suffered actual damages in that they would not have paid a premium for the Products if they had known that the "salon-only" representations are false.

131.    That as a direct, proximate and foreseeable result of Defendant's violation of the statute, the Plaintiff Krengel and the Minnesota Class members sustained damages.

132.    THEREFORE, Plaintiffs pray for relief as set forth below.

## COUNT X
## Violations of the Minnesota Uniform Deceptive Trade Practice Act
### (ON BEHALF OF THE MINNESOTA CLASS)

133.    Plaintiffs incorporate by reference and reallege all allegations as set forth in the preceding paragraphs.

2.      Minnesota Statutes §325D.44, subd. 1 provides in part:

> A person engages in deceptive trade practices when, in the course of business, vocation, or occupation, the person
>
> > (5)   Represents that goods or services have…characteristics, ingredients, uses, benefits…that they do not have…
> >
> > (7)   Represents that goods or services are of a particular standard, quality, or grade,…if they are of another.
> >
> > (13)  Engages in any other conduct which similarly creates a likelihood of confusion or of misunderstanding.

134.    By engaging in the conduct described herein, Defendant violated and continues to violate Minn. Stat. §325D.44.

135.    Where, as here, Plaintiff's claims inure to the public benefit, Minnesota's private-attorney general statute, Minn. Stat. §8.31, subd. 3a, allows individuals who have been injured through a violation of these consumer-protection statutes to bring a civil action and recover damages, together with costs and disbursements, including reasonable attorneys' fees.

136.    Defendant's wrongful conduct and misrepresentation of the true characteristics, standards, quality, and grade of the Products, includes, by way of example and not by limitation:

> a.   Defendant's fraudulent, misleading, and deceptive statements relating to the true characteristics, standards, quality, and grade of its Products;
>
> b.   Defendant's fraud and misrepresentation, of information about the capabilities of Defendant's Products, and the Defendant's knowledge of those misrepresentations, and
>
> c.   Defendant's concealment of the true nature and availability of its misleading Products.

137.    Defendant and its agents and distributors also misrepresented the true characteristics, standards, quality, and grade of Products by making various statements about the alleged quality and availability of the Products herein.

138.    As a result of the Defendant's practices relating to misrepresentation of the true characteristics, standards, quality, and grade of its Products, Plaintiff Krengel and the Minnesota Class have suffered actual damages in that they would not have paid a premium for the Products if they had known that the "salon-only" representations regarding the Products' are false.

139.    That as a direct, proximate and foreseeable result of Defendant's violation of the statute, the Plaintiff Krengel and the Minnesota Class members sustained damages.

140.    THEREFORE, Plaintiffs pray for relief as set forth below.

**COUNT XI**
**Minnesota False Statement in Advertisement Act**
**(ON BEHALF OF THE MINNESOTA CLASS)**

141.    Plaintiffs incorporate by reference and reallege all allegations set forth in the preceding paragraphs.

142.    Minnesota Statutes §325F.67 provides in part:

> Any person, firm, corporation, or association who, with intent to sell or in any way dispose of merchandise, . . . service, directly or indirectly, to the public, for sale or distribution, or with intent to increase the consumption thereof, or to induce the public in any manner to enter into any obligation relating thereto, makes, publishes, disseminates, circulates, or place before the public, or causes, directly or indirectly, to be made, published, disseminated, circulated, or places before the public, in this state, in a newspaper or other publication, or in the form of a book, notice, handbill, poster, bill, label, price tag, circular, pamphlet, program, or letter, or over any radio or television station, in any other way, an advertisement of any sort regarding merchandise, . . . service or anything so offered to the public for use, consumption, purchase, or sale, which advertising contains any material assertion, representation or statement of fact which is untrue, deceptive, or misleading, shall, whether or not pecuniary or other specific damage to any other person occurs as a direct result thereof, be guilty of a

misdemeanor, and any such act is declared to be a public nuisance and may be enjoined as such.

143.    By engaging in the conduct described herein, Defendant violated and continues to violate Minn. Stat. §325F.67.

144.    Where, as here, Plaintiff Krengel's claims inure to the public benefit, Minnesota's private-attorney general statute, Minn. Stat. §8.31, subd. 3a, allows individuals who have been injured through a violation of these consumer-protection statutes to bring a civil action and recover damages, together with costs and disbursements, including reasonable attorneys' fees.

145.    Defendant's untrue, deceptive and misleading assertions and representations about its Products, include, by way of example and not by limitation:

> d.  Defendant's fraudulent, misleading, and deceptive statements relating to the true characteristics, standards, quality, and grade of Defendant's Products;
>
> e.  Defendant's fraud and misrepresentation, of information about the capabilities of Defendant's Products, and the Defendant's knowledge of those misrepresentations, and
>
> f.  Defendant's concealment of the true nature and availability of the misleading Products.

146.    Defendant and its agents and distributors also made untrue, deceptive, and misleading assertions and representations about its Products by making the various statements about the alleged quality and availability of the Products referenced herein.

147.    As a result of the Defendant's untrue, deceptive, and misleading assertions and representations about its Products, Plaintiff Krengel and the Minnesota Class have suffered actual damages in that they would not have paid a premium for the Products if they had known that the "salon-only" representations regarding the Products are false.

148.    Plaintiff Krengel and the Minnesota Class seek to enjoin Defendant from untrue, deceptive, and misleading assertions and representations about the Products.

31

149.    THEREFORE, Plaintiffs pray for relief as set forth below.

**COUNT XII**
**Violation of the New Jersey Consumer Fraud Act, N.J.S.A. Section 56:8-1, _et seq._**
**(ON BEHALF OF THE NEW JERSEY CLASS)**

150.    Plaintiffs incorporate by reference and reallege all allegations set forth in the preceding paragraphs.

151.    The New Jersey Consumer Fraud Act prohibits, _inter alia_,

> The act, use or employment by any person of any unconscionable commercial practice, deception, fraud, false pretense, false promise, misrepresentation, or the knowing concealment, suppression, or omission of any material fact with intent that others rely upon such concealment, suppression, or omission, in connection with the sale or advertisement of any merchandise . . . .

N.J.S.A. 56:8-2.

152.    Defendant, in its capacity as marketer, advertiser, promoter, distributor, and seller of the Products is a "person" as defined in the Consumer Fraud Act. N.J.S.A. §56:8-1(d).

153.    The Matrix, Redken, Kerastase and Pureology products constitute "merchandise" within the meaning of Consumer Fraud Act §56:8-1(c).

154.    Defendant's misrepresentations are false, deceptive and misleading statements with respect to the Products, as described above, constitute affirmative misrepresentations in connection with the manufacture, marketing, advertising, promotion, distribution and sale of Defendant's Matrix, Redken, Kerastase and Pureology products, in violation of the New Jersey Consumer Fraud Act.

155.    Defendant's false, deceptive, and misleading statements would have been material to any potential consumer's decision to purchase and use the Products.

156.    Moreover, Defendant made such false, deceptive, and misleading statements about the Products with the intent that others rely upon such statements.

32

157.    Plaintiff Peshimam and the others members of the New Jersey Class purchased the Products for personal use and suffered ascertainable loss as a direct and proximate result of Defendant's actions in violation of the New Jersey Consumer Fraud Act.

158.    As a consequence of Defendant's wrongful actions, Plaintiff Peshimam and the members of the New Jersey Class suffered actual damages in that they would not have paid a premium for the Products if they had known that the "salon-only" representations regarding the Products are false.

159.    By reason of the foregoing, Defendant must be enjoined in order to prevent future unlawful conduct on the part of Defendant and to such other orders or judgments as may be necessary to force Defendant to halt the mislabeling or deceptive marketing or sale of Matrix, Kérastase, Redken and Pureology professional salon-only products.

160.    Additionally, Plaintiff is entitled to reasonable attorneys' fees, filing fees and costs of suit.  N.J.S.A. §§56:8-2.11, 8-2.12, 8-2.19.

161.    THEREFORE, Plaintiffs pray for relief as set forth below.

**COUNT XIII**
**Violations of the Illinois Consumer Fraud and Deceptive Business Practices Act, 815**
**ILCS Section 505/1, *et seq.***
**Based Upon Misrepresentations**
**(ON BEHALF OF THE ILLINOIS CLASS)**

162.    Plaintiffs incorporate by reference and reallege all allegations set forth in the preceding paragraphs.

163.    Defendant engaged in unfair and/or deceptive acts and practices, by among other things, the dissemination of deceptive and misleading advertising and marketing materials stating that its Products were "salon-only" when, in fact, they are available in non-salon mass-retailers.

164.     At all times material, Defendant engaged in a scheme of advertising Matrix, Kérastase, Redken and Pureology products as professional salon-only hair care products when, in fact, Defendant knew that these products were also sold in non-salon retail stores.  In engaging in this conduct, Defendant misrepresented an important characteristic of its products – i.e., their exclusive professional salon affiliation.  Defendant intended that Plaintiff Sandler and members of the Illinois Class rely on its deceptive acts and misrepresentations, and Plaintiff Sandler and the members of the Illinois Class were actually deceived by Defendant's representations that the Products were "salon-only."

165.     If not for Defendant's deceptive and misleading representations, Plaintiff Sandler and members of the Illinois Class would not have paid a premium for the Products.

166.     Defendant was able to sell millions of products that it could not have sold absent its deceptive marketing, causing Plaintiff Sandler and the Illinois Class substantial injuries.

167.     The acts, practices, and misrepresentations by Defendant described above, with intent that Plaintiff Sandler and the other members of the Illinois Class rely upon the deceptive acts and misrepresentations, constituted unfair and/or deceptive acts and practices occurring in the course of conduct involving trade or commerce within the meaning of 815 ILCS §505/1, *et seq*.

168.     Defendant's misconduct in the course of trade and/or commerce offends public policy and is immoral, unethical, oppressive and/or unscrupulous and caused substantial injury to consumers.

169.     Plaintiff Sandler and members of the Illinois Class suffered damages as a result of Defendant's deceptive and/or unfair acts.  Accordingly, Plaintiff Sandler on behalf of himself and the other Illinois Class members, seek injunctive relief, attorneys' fees and costs and such

other and further relief as set forth in the Illinois Consumer Fraud and Deceptive Business Practices Act.

170.     THEREFORE, Plaintiffs pray for relief as set forth below.

## COUNT XIV
### For Violations of the Florida Deceptive and Unfair Trade Practices Act, Florida Statutes Section 501.201, *et seq.*
### (ON BEHALF OF THE FLORIDA CLASS)

171.     Plaintiffs incorporate by reference and reallege all allegations set forth in the preceding paragraphs.

172.     This cause of action is brought pursuant to the Florida Deceptive and Unfair Trade Practices Act, Fla. Stat. §501.201, *et seq.* ("FDUTPA").   The stated purpose of the FDUTPA is the "protect the consuming public . . . from those who engage in unfair methods of competition, or unconscionable, deceptive, or unfair acts or practices in the conduct of any trade or commerce."  Fla. Stat. §501.202(2).

173.     Plaintiff Bertrand is a consumer as defined by Fla. Stat. §501.203.  The Products are "goods" within the meaning of the FDUTPA.  Defendant is engaged in trade or commerce within the meaning of the FDUTPA.

174.     Fla. Stat §501.204(1) declares unlawful "[u]nfair methods of competition, unconscionable acts or practices, and unfair or deceptive acts or practices in the conduct of any trade or commerce."

175.     Defendant has violated the FDUTPA by engaging in the unfair and deceptive practices as described herein which offend public policies are immoral, unethical, unscrupulous and substantially injurious to consumers.

176.     Plaintiff Bertrand and members of the Florida Class have been aggrieved by Defendant's unfair and deceptive practices in that they paid a premium for the Products.

35

Furthermore, an objective reasonable person would have been deceived by Defendant's representations as described herein.

177.    The damages suffered by Plaintiff Bertrand and members of the Florida Class were directly and proximately caused by the deceptive, misleading and unfair practices of Defendant, as more fully described herein.

178.    Pursuant to Fla. Stat. §501.211(1), Plaintiff Bertrand and members of the Florida Class seek a declaratory judgment and court order enjoining the above-described wrongful acts and practices of Defendant and for restitution and disgorgement.

179.    Additionally, pursuant to Fla. Stat. §§501.211(2) and 501.2105, Plaintiff Bertrand and the members of the Florida Class make claims for attorneys' fees, and costs.

180.    THEREFORE, Plaintiffs pray for relief as set forth below.

**COUNT XV**
**Breach of Express Warranty**
**(ON BEHALF OF ALL CLASSES)**

181.    Plaintiffs incorporate by reference and realleges all allegations set forth in the preceding paragraphs.

182.    Defendant breached the express warranty on the label of, and/or in the advertising for the Products by labeling the Products "salon-only," when, in fact, they are available at non-salon mass retailers.

183.    Defendant made such express warranty knowing the purpose for which the Products were to be used, and advocating their use for such purpose.

184.    Defendant made such express warranty as part of its marketing campaign, in advertisements in print, on the Internet, and in other media; and on the labels of the Products.

185.     The Products do not conform to the express warranty made by Defendant and do not conform to Defendant's promises, descriptions, or affirmations of fact.   The Products, therefore, were not adequately packaged, labeled, sold, promoted, or fit for the ordinary purposes for which they were used.

186.     Plaintiffs and the other members of the Class purchased the Products based upon and in reliance upon such false warranty.

187.     As a consequence for the foregoing, Plaintiffs are entitled to an order enjoining future unlawful conduct on the part of Defendant and to such other orders or judgments as may be necessary to force Defendant to halt the mislabeling or deceptive marketing or sale of Matrix, Kérastase, Redken and Pureology professional salon-only products.

**COUNT XVI**
**Unjust Enrichment**
**(ON BEHALF OF ALL CLASSES)**

188.     Plaintiffs incorporate by reference and reallege all allegations set forth in the preceding paragraphs except those relating to existence of an express warranty. Plaintiffs allege a claim for unjust enrichment in the alternative to their claim for breach of express warranty.

189.     As a result of Defendant's deceptive, fraudulent and misleading marketing, advertising, packaging, labeling, distributing, and selling of Matrix, Kérastase, Redken and Pureology professional salon-only products, Defendant was enriched, at the expense of Plaintiffs, and Class Members, through the payment of the purchase price for Defendant's Products.

190.     Under the circumstances, it would be against equity and good conscience to permit Defendant to retain the ill-gotten benefits that it received from Plaintiffs, and Class Members, in light of the fact that the Matrix, Kérastase, Redken and Pureology professional

salon-only products purchased by Plaintiffs, and all others similarly situated, were not what Defendant represented them to be.  Thus, it would be unjust or inequitable for Defendant to retain the benefit without restitution to Plaintiffs and Class Members for the monies paid to Defendant for such Matrix, Kérastase, Redken and Pureology professional salon-only products.

191.    Therefore, Plaintiffs pray for relief as set forth below.

## PRAYER FOR RELIEF

**WHEREFORE,** Plaintiffs, on behalf of themselves and all other similarly situated, prays for judgment as requested above against Defendant and further prays for:

A.    An order certifying the Class proposed in this Complaint and appointing Plaintiffs and their counsel to represent the Class and requiring Defendant to bear the cost of class notice;

B.    Injunctive relief only pursuant to Cal. Civ. Code §1780, as Plaintiffs through this Complaint at this point expressly does not seek any monetary type of relief pursuant to the CLRA;

C.    An order granting injunctive relief requiring Defendant to stop marketing its professional hair care products as products sold only in salons;

D.    Statutory prejudgment interest;

E.    Reasonable attorneys' fees and costs as permitted by D.C. Code §28-3905(k)(1), Cal. Civ. Proc. Code §1021.5, Fla. Stat.§§ 501.211(2) and 501.2105, Illinois Consumer Fraud and Deceptive Business Practices Act, N.J.S.A. §§56:8-2.11, 8-2.12, 8-2.19, and Minn. Stat. §8.31, subd. 3(a).

F.    Other legal and equitable relief permitted with respect to the causes of action stated herein;

G.    A trial by jury on all issues so triable; and

H.    Such other and further relief as the Court may deem just and proper.

## DEMAND FOR JURY TRIAL

Plaintiff hereby demands a trial by jury with respect to any claims so triable.

DATED: 4-15-13

MICHAEL LIEDER (D.C. Bar No. 444273)
MEHRI & SKALET, PLLC
1250 Connecticut Avenue NW
Suite 300
Washington, DC 20036
Telephone: 202/822-5100
Fax:  202/822-4997
mlieder@findjustice.com

Local Counsel for Plaintiff and the [Proposed]
Class

CLAYTON HALUNEN
SUSAN M. COLER
MELISSA W. WOLCHANSKY
HALUNEN & ASSOCIATES
1650 IDS Center
80 South Eighth Street
Minneapolis, MN  55402
Telephone:  612/605-4098
Fax:  612/605-4099
halunen@halunenlaw.com
coler@halunenlaw.com
wolchansky@halunenlaw.com

AZRA Z. MEHDI
THE MEHDI FIRM
One Market
Spear Tower, Suite 3600
San Francisco, CA  94105
Telephone:  415/293-8039
Fax:  415/293-8001
azram@themehdifirm.com

Attorneys for Plaintiff and the [Proposed] Class