## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| ALEXIS RICHARDSON,<br>    2701 Connecticut Avenue NW, Apt. 100<br>    Washington DC, 20008;<br><br>JAY SANDLER,<br>    33 W Huron Street, Apt. 511<br>    Chicago, IL 60654;<br><br>LUBNA PESHIMAM,<br>    15 Eastern Drive<br>    West Windsor, NJ 08550,<br><br>TRACEY ANN BERTRAND,<br>    11301 NW 34th Place<br>    Sunrise, FL  33323,<br><br>MOLLIE KRENGEL,<br>    3420 W 29th Street<br>    Minneapolis, MN 55416,<br><br>and<br><br>NANCIE LIGON,<br>    64 Woodworth Lane<br>    Sonoma, CA 95476,<br><br>Individually and on Behalf of All Others<br>Similarly Situated,<br><br>              Plaintiffs,<br><br>        v.<br><br>L'OREAL USA, INC.,<br><br>              Defendant. | Case No. 13-CV-00508-JDB |

**MEMORANDUM IN SUPPORT OF MOTION FOR PRELIMINARY APPROVAL OF
SETTLEMENT, CERTIFICATION OF SETTLEMENT CLASS, APPROVAL OF THE
NOTICE PLAN, AND SCHEDULING A DATE FOR A FINAL FAIRNESS HEARING**

**TABLE OF CONTENTS**

I.      INTRODUCTION ................................................................................................1

II.     FACTUAL AND PROCEDURAL BACKGROUND.........................................3

        A.      L'Oréal's Labeling Practices .................................................................3

        B.      Procedural History, Plaintiffs' Due Diligence and Case Analysis .........................4

        C.      Mediation and Settlement Negotiations.................................................6

III.    OVERVIEW OF THE SETTLEMENT AGREEMENT ....................................7

        A.      The Settlement Class.............................................................................7

        B.      Injunctive Relief....................................................................................7

        C.      Incentive Awards ..................................................................................9

        D.      Notice to Class Members ......................................................................9

        E.      Release ................................................................................................10

        F.      Attorneys' Fees and Costs ..................................................................11

IV.     THE PROPOSED SETTLEMENT SHOULD BE PRELIMINARILY
        APPROVED ....................................................................................................11

        A.      Standard for Preliminary Approval.....................................................11

        B.      The Proposed Settlement Is the Product of Serious, Informed and Non-
                Collusive Negotiations........................................................................13

        C.      The Proposed Settlement Contains No Obvious Deficiencies and Is Within
                the Range of Possible Approval...........................................................14

                1.      Plaintiffs and the Class Face a Risk of Seeking Certification of a
                        Rule 23(b)(3) Class ..................................................................15

                2.      If the Litigation Proceeds, It May Be Years before the Class
                        Recovers, If at All ...................................................................16

        D.      The Proposed Settlement Treats All Class Members Equally...............................17

V.      THE SETTLEMENT CLASS SHOULD BE CERTIFIED................................18

VI.     THE PROPOSED NOTICE SATISFIES THE REQUIREMENTS OF FED. R.
        CIV. P. 23. ...........................................................................................................................21

        A.      Legal Standard for Approval of a Notice Plan........................................................21

        B.      The Content of the Notice Is Appropriate...............................................................22

        C.      The Manner of Providing Notice Is Appropriate.....................................................22

VII.    THE COURT SHOULD SCHEDULE THE FAIRNESS HEARING ...............................22

VIII.   CONCLUSION....................................................................................................................24

ECF CERTIFICATION .....................................................................................................................25

# TABLE OF AUTHORITIES

**Cases**

*Amchem Prods, Inc. v. Windsor,*
    521 U.S. 591 (1997)............................................................................................... 18

*Blackman v. District of Columbia,*
    454 F. Supp. 2d 1 (D.D.C. 2006)............................................................................ 12

*Daskalea v. Wash. Humane Soc'y,*
    275 F.R.D. 346 (D.D.C. 2011)................................................................................ 19

*Equal Rights Ctr. v. Washington Metro. Area Transit,*
    573 F. Supp. 2d 205 (D.D.C. 2008) ........................................................................ 12

*Freeport Partners, LLC v. Allbritton,*
    No. Civ. A. 04-2030(GK), 2006 WL 627140 (D.D.C. Mar. 13, 2006) ..................... 11

*Gen. Instrument Sec. Litig.,*
    209 F. Supp. 2d 423 (E.D. Pa. 2001) ...................................................................... 15

*Indep. Energy Holdings PLC Sec. Litig.,*
    No. 00 Civ 6689, 2003 WL 22244676 (S.D.N.Y. Sept. 29, 2003).......................... 14

*Lorazepam & Clorazepate Antitrust Litig.,*
    205 F.R.D. 369 (D.D.C. 2002)............................................................ 14, 16, 17, 23

*Lorazepam & Clorazepate Antitrust Litig.,*
    202 F.R.D. 27 (D.D.C. 2001).................................................................................. 19

*Lorazepam v. Mylan Labs., Inc.,*
    Nos. MDL 1290 (TFH), 99MS276 (TFH), 2003 WL 22037741, (D.D.C. June 16, 2003) ...... 13

*Luevano v. Campbell,*
    93 F.R.D. 68 (D.D.C.1981)..................................................................................... 16

*Mullane v. Central Hanover Bank & Trust Co.,*
    339 U.S. 306 (1950)............................................................................................... 21

*O'Brien v. Brain Research Labs,*
    No. 12-201, 2012 WL 3242365 (D.N.J. Aug. 9, 2012) ........................................... 15

*Perez v. Asurion Corp.*,
    501 F. Supp. 2d 1360 (S.D. Fla. 2007) ................................................................................ 16

*Pigford v. Glickman*,
    182 F.R.D. 341 (D.D.C. 1998) .............................................................................................. 19

*Radosti v. Envision EMI, LLC*,
    717 F. Supp. 2d 37 (D.D.C. 2010) ................................................................................. 13, 18

*Radosti v. Envision EMI, LLC*,
    760 F. Supp. 2d 73 (D.D.C. 2011) ....................................................................................... 17

*Tableware Antitrust Litig.*,
    484 F. Supp. 2d 1078 (N.D. Cal. 2007) ............................................................................... 12

*Thomas v. Albright*,
    139 F.3d 227 (D.C. Cir. 1998) .............................................................................................. 12

*Trombley v. Nat'l City Bank*,
    759 F. Supp. 2d 20 (D.D.C. 2011) ....................................................................................... 12

*Twelve John Does v. District of Columbia*,
    117 F.3d 571 (D.C. Cir. 1997) .............................................................................................. 19

*United States v. District of Columbia*,
    933 F. Supp. 42 (D.D.C. 1996) ............................................................................................ 15

*Vitamins Antitrust Litig.* (*"Vitamins I"*),
    No. MISC. 99-197(TFH), 2001 WL 856292 (D.D.C. July 25, 2001) .................................... 12

*Vitamins Antitrust Litig.* (*"Vitamins II"*),
    305 F. Supp. 2d 100 (D.D.C. 2004) ..................................................................................... 11

*Vitamins Antitrust Litig.*,
    209 F.R.D. 251 (D.D.C. 2002) .............................................................................................. 19

*Vitamins Antitrust Litig.*,
    No. 99–197, 1999 WL 1335318 (D.D.C. Nov. 23, 1999) ...................................................... 12

## Other Authorities

*Manual for Complex Litigation,* Third, §30.41 (1999) ................................................................ 12

*Newberg on Class Actions,* §11:25 (4th ed. 2010) ..................................................................... 12

*Newberg on Class Actions*, §11:41 (4th ed. 2002) ..................................................................... 14

## Rules

Fed. R. Civ. P. 23(a) ................................................................................................................. 18

Fed. R. Civ. P. 23(a)(1) ............................................................................................................. 18

Fed. R. Civ. P. 23(a)(2) ............................................................................................................. 18

Fed. R. Civ. P. 23(a)(3) ............................................................................................................. 19

Fed. R. Civ. P. 23(a)(4) ............................................................................................................. 19

Fed. R. Civ. P. 23(b) ................................................................................................................. 18

Fed. R. Civ. P. 23(b)(1)(B)(2) ................................................................................................... 20

Fed. R. Civ. P. 23(b)(2) ...................................................................................................... 2, 18, 20

Fed. R. Civ. P. 23(b)(3) .................................................................................................... 4, 6, 13, 15

Fed. R. Civ. P. 23(c)(2)(B) ........................................................................................................ 21

Fed. R. Civ. P. 23(e) ................................................................................................................. 23

Fed. R. Civ. P. 23(e)(1) ............................................................................................................. 21

Fed. R. Civ. P. 23(e)(2) ............................................................................................................. 22

Federal Rule of Civil Procedure 23 ..................................................................................... 18, 21

## I.    INTRODUCTION

This action arises out of Plaintiffs'[1] allegations that Defendant L'Oréal USA, Inc. ("L'Oréal" or "Defendant") falsely and deceptively labeled its Matrix Biolage, Redken, Kérastase, and Pureology products (the "Products") as available exclusively in salons (collectively, "salon-only") when the Products can be purchased in non-salons.[2]   After conducting arm's-length negotiations and engaging in multiple mediation sessions, Plaintiffs and L'Oréal have reached a fair, reasonable and adequate settlement in the above-captioned action (the "Proposed Settlement"). In the Proposed Settlement of this nationwide class action, L'Oréal has agreed to remove the allegedly false and deceptive language from the labeling of its Products. (Exhibit 1, Settlement Agreement.)  This is an excellent result because the Proposed Settlement provides the Settlement Class members with meaningful relief, while taking into account the significant risks Plaintiffs would face if the litigation progressed.

The Proposed Settlement was reached after the filing of two putative nationwide class action complaints, the exchange of documents, and multiple mediation sessions, assisted by an experienced and skilled neutral mediator.   Accordingly, counsel for Plaintiffs and Defendant were fully informed of the factual and legal issues of the case.   Given counsels' intimate knowledge of the facts and legal issues, as well as their substantial experience in nationwide class actions involving consumers, Plaintiffs and Defendant (the "Parties") submit that the Proposed Settlement achieves an excellent result and is in the best interests of the class.

---

[1] Alexis Richardson, Jay Sandler, Lubna Peshimam, Tracey Ann Bertrand, Mollie Krengel, and Nancie Ligon (collectively, "Plaintiffs").

[2] Specifically, each of the Products contains one or more of the following representations, "for sale only in professional beauty salons," "exclusive salon distribution," "exclusive to Kérastase consultant salons," "only professional," "only in salon," "sold exclusively in salons," "available only at fine salons and spas," and "available only at fine salons."

1

Plaintiffs' counsel conducted significant factual discovery and legal research to determine the best and most attainable settlement for the members of the Class. During the course of that work, it became clear to Plaintiffs and their counsel that the most viable resolution of their claim on a class-wide basis would consist of injunctive relief, achieved through a class certified under Fed. R. Civ. P. 23(b)(2). There is significant variability in the prices salons charge consumers for L'Oréal Products. Sometimes non-salon retailers' prices are higher than salon prices and sometimes lower. Also, if this matter were to proceed, L'Oréal would likely present evidence that many factors influence a consumer's purchase of the Products, thereby creating highly individualized damage calculations that could potentially defeat predominance. Plaintiffs' counsel further learned that L'Oréal does not know the quantifiable value, if any, of the salon-only claims for each individual consumer nor has it assigned any particular value to the salon-only claim when it sets the Manufacturer's Suggested Retail Price ("MSRP").

Accordingly, Plaintiffs' counsel sought to obtain injunctive relief — an attainable and valuable remedy for the Class. The Proposed Settlement requires L'Oréal to modify its business practices to ensure that customers are made fully aware of the Products' characteristics at the point of purchase. The Parties contend that the Proposed Settlement falls well within the range of reasonableness in light of: (1) Defendant's potential defenses; (2) the costs and risks of prosecuting this action to trial; and (3) the significant recovery achieved.

Accordingly, the Parties respectfully request the Court grant preliminary approval of the Proposed Settlement so that notice can be provided to the members of the Settlement Class and a Fairness Hearing can be scheduled to consider final approval of the Proposed Settlement.

## II.   FACTUAL AND PROCEDURAL BACKGROUND

### A.   L'Oréal's Labeling Practices

L'Oréal manufactures, advertises, sells and distributes professional hair care products throughout the United States for consumer purchase. (¶2.[3]) L'Oréal's Matrix Biolage, Redken Kérastase, and Pureology hair care products are respectively labeled as salon-only although consumers can purchase these products in major retail outlets throughout the United States where professional salon services are not available. (¶1.)

The Complaint alleges that L'Oréal has created a demand and cachet for its products by labeling and advertising them as salon-only, and that these representations are an important aspect of the Products' claimed nature, characteristics, and qualities as they allow Defendant to demand a premium for the Products. (¶27.)  Plaintiffs further allege that the salon-only label implies a superior quality product that is available only through professionals in hair care and allows L'Oréal to differentiate the products from those sold only by mass retailers. (*Id.*)

Despite   L'Oréal's   claims   that   Matrix,   Kérastase,   Pureology   and   Redken professional/salon-only hair care products are sold only in salons, these products are, in fact, sold throughout the country in drug stores, grocery stores, and other mass merchandise retail stores, including Target, Kmart and Walgreens. (¶29.)  The sale of professional or salon-only products through stores that do not have a salon on the premises is known in the industry as "diversion." (¶30.) L'Oréal has developed an anti-diversion campaign for each of the product lines at issue in this litigation. (*See* ¶¶31–37.)

Regardless of L'Oréal's anti-diversion efforts, Plaintiffs allege that L'Oréal's labeling, and its print and internet advertising of its professional products as available only in salons, are

---

[3] Hereinafter, all paragraph (¶) references are to the Complaint filed on April 15, 2013 (ECF No. 1), unless otherwise noted.

deceptive and misleading.  (¶46.) Plaintiffs assert that these representations are likely to cause confusion among consumers and to deceive them as to the affiliation, connection or association of L'Oréal's Products with professional salons.

**B.      Procedural History, Plaintiffs' Due Diligence and Case Analysis**

This matter was originally filed on August 30, 2012, on behalf of Plaintiff Ligon, in the Northern District of California, Court File No. 3:12-cv-04585-JST.  During the time that the parties were engaging in discovery and mediation, five additional Plaintiffs were added. Plaintiffs voluntarily dismissed the Northern District of California action and, on April 15, 2013, filed the present action on behalf of all six Plaintiffs who reside in the District of Columbia, California, Illinois, New Jersey, Florida and Minnesota in this Court.

After the initial California filing, the parties engaged in extensive pre-mediation negotiations to discuss Plaintiffs' theory of the case and L'Oréal's potential defenses. (Declaration of Clayton Halunen ("Halunen Decl."), ¶4.)  At that time, L'Oréal provided Plaintiffs with extensive documents and information regarding its anti-diversion and labeling practices. (Halunen Decl., ¶4.)  Furthermore, Plaintiffs' counsel examined the prices charged in salons and non-salons and analyzed the varying potential motivations for consumers' purchase of the Products.  (Halunen Decl., ¶5.) Plaintiffs' counsel conducted additional legal and factual research to determine the most appropriate and attainable resolution for the class members. (Halunen Decl., ¶6.)  From Plaintiffs' counsel's research and the discovery received from L'Oréal, it became apparent that it would be challenging, if not impossible, to determine class-wide monetary damages.  (*Id.*)

Based upon the pre-mediation negotiations with L'Oréal, during review of L'Oréal documents and further research, Plaintiffs' counsel recognized the challenges they would face in certifying a Fed. R. Civ. P. 23(b)(3) nationwide class of purchasers of L'Oréal Products.

Additionally, in connection with the Settlement, L'Oréal representatives provided sworn testimony that confirmed Plaintiffs' concerns regarding the significant risk they would face in proceeding with the litigation. L'Oréal witnesses attested that it "does not sell L'Oréal Products to mass-market, non-salon retailers or otherwise divert L'Oréal Products, nor does the diversion of L'Oréal Products occur with L'Oréal's permission or acquiescence." (Declaration of Christopher Lyden ("Lyden Decl."), Ex. B, ¶4.) L'Oréal also informed Plaintiffs that it "has been working aggressively to combat diversion, and in 2008, L'Oréal created Brand Equity Protection to spearhead" its diversion efforts. (Lyden Decl., ¶8.) "Two of Brand Equity Protection's major anti-diversion initiatives are the 'National Sample Buy Program' and 'Quality Assurance Product Coding Program.'" (Lyden Decl., ¶8.) Through its National Sample Buy Program, L'Oréal is able to analyze the prices at which the Products are sold. Specifically, L'Oréal compares the MSRP for such products with the prices at which the Products are sold at non-salon retailers. (Lyden Decl., ¶12.) For example, "salons are not obligated to follow the MSRP, and L'Oréal believes that there is variability in the prices that salons charge consumers for L'Oréal Products." (Lyden Decl., ¶14.) Furthermore, L'Oréal has determined that "on average, consumers who purchase L'Oréal Products from non-salon retailers pay more for those products than the MSRP." (Lyden Decl., ¶15.) That being said, "non-salon retailers' prices are sometimes much higher than the MSRP and sometimes much lower." (Lyden Decl., ¶15.) "Even a single mass-market, non-salon retailer will sell the same product at different prices in different geographical regions. Further, even within the same geographical area, different non-salon retailers charge vastly different prices for L'Oréal Products." (Lyden Decl., ¶15.)[4]

---

[4] *See* Lyden Decl., Ex. B for analysis of pricing data for eight different hair care products that were well-represented in the Sample Buy database.

Accordingly, based on information provided during discovery, and given the variables described above, it would be difficult to ascertain a principled formula for assessing the value of an individual consumer's monetary damages claim.  For example, are those who purchased the Products in a mass-retailer more or less damaged than those who purchased in a salon? And what if the purchaser at a mass-retailer, in fact, paid less than the salon purchaser?  In addition to the individualized questions of monetary damages based on the varying purchase prices, Plaintiffs' counsel determined it would be extremely difficult to quantify the premium price associated with the salon-only representation.

To that end, L'Oréal explained that it has "never sought to determine whether its use of the [salon-only] Claims in connection with the L'Oréal Products has any quantifiable value to consumers." (Declaration of Patrick Parenty ("Parenty Decl."), Ex. C, ¶12.)  Furthermore, L'Oréal does not have "an understanding of how any such value could be determined or measured." (Parenty Decl., ¶12.)  L'Oréal is unsure if the salon-only claims "have any particular value to consumers, or whether L'Oréal's use of the [salon-only] Claims impacts the amount consumers are willing to pay for L'Oréal Products." (Parenty Decl., ¶12.)

Accordingly, the injunctive relief achieved in this case — the removal of the salon-only labeling and representations — effectively remedies the allegations in the Complaint.  Plaintiffs determined that the certainty in obtaining the value of the injunctive relief outweighed the massive uncertainty and cost in proceeding on behalf of a Fed. R. Civ. P. 23(b)(3) class.

## C.      Mediation and Settlement Negotiations

On December 5, 2012, the Parties attended an in-person mediation before the Honorable Ronald M. Sabraw (Ret.). (Halunen Decl., ¶7.)  Through an all-day session, the parties were able to achieve, in large part, the injunctive relief for the Class. (Halunen Decl., ¶7.)  In the

weeks following the mediation, through numerous telephonic mediation sessions, the Parties finalized the terms of the injunctive relief. (Halunen Decl., ¶7.)

After finalizing injunctive relief to the Class, the parties attended a second in-person mediation with Judge Sabraw on January 25, 2013, to negotiate attorneys' fees and costs. (Halunen Decl., ¶8.) The Parties were unable to reach a settlement that day, but continued to engage in settlement discussions with the assistance of Judge Sabraw.  (Halunen Decl., ¶8.) Several weeks later, the Parties reached the Proposed Settlement, which reflects careful consideration by the parties of the benefits, burdens, and risks associated with continued litigation of this case.

## III.    OVERVIEW OF THE SETTLEMENT AGREEMENT

The complete terms of the Proposed Settlement, summarized below, are set forth in the concurrently filed Settlement Agreement (Exhibit 1):

### A.    The Settlement Class

The "Settlement Class" includes all consumers nationwide who purchased L'Oréal Products for personal, family or household use on or after August 30, 2008.  The Settlement Class excludes (i) purchasers of L'Oréal Products for re-sale, stylists and salon owners; (ii) L'Oréal, its officers, directors and employees; and its affiliates and affiliates' officers, directors and employees; (iii) Plaintiffs' Counsel and their employees; and (iv) judicial officers and their immediate family members and associated court staff assigned to this action.  (Settlement Agreement, §1.13.)

### B.    Injunctive Relief

The Proposed Settlement requires L'Oréal to remove the following phrases from its Matrix®, Kérastase®, Redken®, and/or Pureology® brands of hair care products: "for sale only in professional beauty salons;" "exclusive salon distribution;" "exclusive to Kérastase consultant

salons;" "only professional;" "only in salon;" "sold exclusively in salons;" "available only at fine salons and spas;" "available only at fine salons;" or similar claims in English or Spanish which may be read as suggesting availability for purchase exclusively in professional hair salons, except,

       **(a)**    L'Oréal shall remove the Claims from labeling on the L'Oréal Products for United States distribution and from advertising for the L'Oréal Products in the United States, <u>except</u>:

       **(i)**    As to those L'Oréal Products that are sold or distributed under the Redken or Kérastase brand names in European countries as well as the United States using the same packaging, L'Oréal will be permitted to include the phrase "Resérvé aux distributeurs agréés" or its equivalent in other languages, on labeling or other marketing materials.

       **(b)**    L'Oréal shall not use the Claims in connection with the labeling, marketing or advertising of the L'Oréal Products in the United States for a minimum period of five (5) years from the Effective Date.

       **(c)**    After the minimum five-year term, L'Oréal may resume using the Claims in connection with the labeling, marketing or advertising in the United States of any of the L'Oréal Products whose mass market sales in the United States as reported in A.C. Nielsen/IRI data have been reduced from 2012 reported mass market sales by 60%.

L'Oréal will cease all manufacturing of labels for the L'Oréal Products for U.S. distribution containing the Claims within sixty (60) days following the Effective Date.  New labels for U.S. distribution of the L'Oréal Products that omit the Claims will begin to be implemented by L'Oréal in the ordinary course following the Effective Date as new

manufacturing runs of product packaging are made.   No product labeling containing the Claims

will be shipped by L'Oréal for U.S. distribution after one (1) year from the Effective Date.

Furthermore, L'Oréal will remove the Claims from all websites and promotional

materials for the L'Oréal Products available in the U.S. within thirty (30) days of the Effective

Date.

### C.      Incentive Awards

Defendant further agrees to not oppose a petition for an incentive award of no more than

$1,000 for each of the named Plaintiffs. (Settlement Agreement, §2.5.)

### D.      Notice to Class Members

In connection with the Proposed Settlement, Plaintiffs and L'Oréal have agreed to a

proposed Notice Plan that is reasonably calculated to reach Class members.  (Ex. A, §3.1.)

L'Oréal does not have records reflecting — and cannot identify — the vast majority of

consumers who have purchased the Products or when and where such purchases were made.[5]

(*See* Parenty Decl., ¶¶4-7.) Accordingly, the Parties agree that the publication notice described

below is the best and most practicable notice method available under the circumstances.  (*See*

Parenty Decl.)

---

[5] The volume of sales for each of the Products differs, as does the method of sales.  Among the Products, Matrix and Redken are far and away the largest-selling. L'Oréal does not sell Matrix products directly to consumers.  L'Oréal therefore has no records reflecting and cannot identify any consumers who have purchased Matrix products.  Other than those walk-in sales that are made to consumers at the Redken Gallerie store in New York City, which make up less than 0.3% of Redken's overall sales, L'Oréal does not sell Redken products directly to consumers.  The Pureology brand sells many fewer units than either Redken or Matrix.  Of even that small percentage of sales, only 0.3% are made directly to consumers, again through walk-in sales at the Redken Gallerie store in New York City.  Similarly, Kérastase sales make up a far smaller portion of L'Oréal's overall sales of the Products.  Of those sales, only 6-10% are made directly to consumers.  In sum, direct-to-consumer sales make up approximately only 1% of L'Oréal's overall, combined sales of the Products.

The parties have agreed to a proposed Summary Notice ("Short-Form Notice") and Class Notice ("Long-Form Notice") for which they seek Court approval. Within 14 days after entry of the Preliminary Approval Order, L'Oréal will submit the insertion order for the Short-Form Notice to be published in the legal notices section of *USA Today* for one week in the Monday through Thursday editions at a size of 1/8 page. (Ex. A., §3.1.) The Short-Form Notice will refer purported Class members to a comprehensive, dedicated website paid for and supported by L'Oréal, which will contain additional information regarding the action, including a copy of the Settlement Agreement and the Long-Form Notice. The website will be available for a period of 30 days following publication of the Short-Form Notice. The website will make accessible all pertinent settlement information, including: (1) a copy of the Long-Form Notice, which provides instructions regarding objections to the Proposed Settlement; (2) a copy of the Short-Form Notice; and (3) relevant pleadings (*i.e.*, Complaint, Settlement Agreement, Preliminary Approval Order). (Settlement Agreement, §3.2.)

Settlement Class members with objections to the Proposed Settlement must file a written objection with the Court and serve copies on Plaintiffs' Counsel and L'Oréal's Counsel no fewer than 30 days prior to the Fairness Hearing. (Settlement Agreement, §3.3.)

### E.     Release

In exchange for the above benefits, Plaintiffs and Class Members have agreed to release certain claims. Upon the Court's entry of the Fairness Hearing Order and Final Judgment, each of the Plaintiffs and Class members will release and forever discharge Defendant from liability for any and all actions or claims of any nature, arising out of or in any way relating to conduct that was or could have been alleged in this Action. (Settlement Agreement, §4.6.) However, Class members do not release L'Oréal with respect to any individual, as opposed to class-wide,

claims for monetary relief arising from or related to L'Oréal's use of the Claims in connection with its labeling, advertising and/or marketing of the L'Oréal Products in the United States. (*Id.*)

### F.      Attorneys' Fees and Costs

The parties negotiated their agreement with respect to attorneys' fees, costs and expenses after they negotiated and agreed to the substantive terms of the settlement, including the injunctive relief to the Class Members. (*See* Halunen Decl., ¶8.) L'Oréal agreed not to oppose or object to Class Counsel's application for attorneys' fees, costs and expenses in an amount up to $950,000. (Ex. A, §2.6.) The $950,000 award includes all fees, costs and expenses for all Plaintiffs' and Class members' counsel (and their employees, consultants, experts and other agents) who performed work in connection with this action. (*See id.*)

Over the course of the action, Class Counsel performed significant research over a period of one year prior to filing suit, drafted two complaints in this matter, briefed and researched key issues for the Court's consideration, represented Plaintiffs at two mediation sessions, reviewed significant discovery in connection with the settlement, and drafted the present motion for preliminary approval. Accordingly, the attorneys' fees and costs award is appropriate and proportional to the time and expense invested in the action and the relief obtained for the Class.

## IV.     THE PROPOSED SETTLEMENT SHOULD BE PRELIMINARILY APPROVED

### A.      Standard for Preliminary Approval

As a matter of public policy, settlement is a strongly favored method for resolving disputes, especially in complex class actions. *Freeport Partners, LLC v. Allbritton*, No. Civ. A. 04-2030(GK), 2006 WL 627140, at *8 (D.D.C. Mar. 13, 2006) ("Public policy in this Circuit favors settlement of class actions . . . ."); *In re Vitamins Antitrust Litig.* ("*Vitamins II*"), 305 F. Supp. 2d 100, 103 (D.D.C. 2004) (noting "long-standing judicial attitude favoring class action settlements").

11

Generally, preliminary approval of a class action settlement will be granted if it appears to fall "within the range of possible approval" and "does not disclose grounds to doubt its fairness or other obvious deficiencies, such as unduly preferential treatment of class representatives or of segments of the class, or excessive compensation for attorneys." *Newberg on Class Actions,* §11:25 (4th ed. 2010) (quoting *Manual for Complex Litigation,* Third, §30.41 (1999)); *In re Vitamins Antitrust Litig.,* No. 99–197, 1999 WL 1335318, at *5 (D.D.C. Nov. 23, 1999). "In evaluating a proposed settlement, the Court's primary role is to evaluate the relief provided in the settlement against the relative strength of plaintiffs' case, including their ability to obtain recovery at trial." *Trombley v. Nat'l City Bank,* 759 F. Supp. 2d 20, 24 (D.D.C. 2011); *Equal Rights Ctr. v. Washington Metro. Area Transit,* 573 F. Supp. 2d 205, 211 (D.D.C. 2008) (citing *Thomas v. Albright,* 139 F.3d 227, 231 (D.C. Cir. 1998)); *Blackman v. District of Columbia,* 454 F. Supp. 2d 1, 8 (D.D.C. 2006).

This case is now at the first step of the process. At this stage, the questions presented are whether the Proposed Settlement (1) "appears to be the product of serious, informed, non-collusive negotiations," (2) "has no obvious deficiencies," (3) "does not improperly grant preliminary preferential treatment to class representatives or segments of the class," and (4) "falls within the range of possible judicial approval." *In re Vitamins Antitrust Litig.* ("*Vitamins I*"), No. MISC. 99-197(TFH), 2001 WL 856292, at *4 (D.D.C. July 25, 2001)[6]; *accord In re Tableware Antitrust Litig.,* 484 F. Supp. 2d 1078, 1079 (N.D. Cal. 2007). The Parties' Proposed Settlement meets these criteria.

---

[6] Here, as elsewhere, all citations, internal quotations and alterations are omitted, unless otherwise noted.

**B.    The Proposed Settlement Is the Product of Serious, Informed and
Non-Collusive Negotiations**

The Proposed Settlement was the product of fully-informed, arm's-length negotiations.
(Halunen Decl., ¶9.) Both Parties were fully informed of the factual and legal issues because they
engaged in extensive negotiations and discovery.   Plaintiffs were provided with documents
relating to L'Oréal's anti-diversion and labeling practices and analyzed inconsistencies in pricing
at salons and mass retailers. (Halunen Decl., ¶¶4-5.)  In addition, prior to reaching a settlement,
Plaintiffs recognized the difficulty they would have in proving monetary damages for a class of
consumers.[7]  (Halunen Decl., ¶6.)  Following extensive legal research on class certification,
Plaintiffs' counsel was thoroughly familiar with the risks of pursuing a Rule 23(b)(3) class
settlement and the chances of obtaining court approval.   Defendant also had analyzed and
understood the risks in proceeding with the litigation.  Accordingly, both Parties were fully
informed of the key factual and legal issues of the case when they reached the Proposed
Settlement.

The judgment of experienced trial counsel weighs in favor of settlement approval.
Plaintiffs' counsel has substantial experience with consumer class actions. (Halunen Decl., ¶10.)
Similarly, Defendant's counsel has significant experience defending putative class actions
alleging violations of consumer fraud laws. (*See* Patterson Belknap Webb & Tyler website,
located at www.pbwt.com/warder_frederick_bio/ (last visited May 7, 2013)).  Because the
Parties' counsel are experienced and informed about the facts of the case, their support of the
Proposed Settlement is entitled to considerable weight.  *See Lorazepam v. Mylan Labs., Inc.*,
Nos. MDL 1290 (TFH), 99MS276 (TFH), 2003 WL 22037741, at *6 (D.D.C. June 16, 2003)

---

[7] Counsel obtained "sufficient information, through adequate discovery, to reasonably assess the
risks of litigation vis-à-vis the probability of success and range of recovery." *See Radosti v.
Envision EMI*, 717 F. Supp. 27 37, 62 (D.D.C. 2010).

(stating the opinion of experienced counsel "should be afforded substantial consideration by a court in evaluating the reasonableness of a proposed settlement").

Also supporting preliminary approval of the Proposed Settlement is the Parties' engagement in deliberate, arm's-length negotiations under the supervision and guidance of an experienced mediator, Hon. Ronald A. Sabraw. (*See* Halunen Dec., ¶¶7-8.) The Proposed Settlement was reached only after two separate rounds of formal mediation. This provides good reason to presume the fairness of the settlement. *In re Lorazepam & Clorazepate Antitrust Litig.*, 205 F.R.D. 369, 375-76 (D.D.C. 2002); *see also In re Indep. Energy Holdings PLC Sec. Litig.*, No. 00 Civ. 6689, 2003 WL 22244676, at *4 (S.D.N.Y. Sept. 29, 2003) ("[T]he fact that the Settlement was reached after exhaustive arm's-length negotiations, with the assistance of a private mediator experienced in complex litigation, is further proof that it is fair and reasonable."); *Newberg on Class Actions*, §11:41 (4th ed. 2002) ("There is usually an initial presumption of fairness when a proposed class settlement, which was negotiated at arm's length by counsel for the class, is presented for court approval.").

## C. The Proposed Settlement Contains No Obvious Deficiencies and Is Within the Range of Possible Approval

In light of the claims asserted by Plaintiffs and the nature of the litigation, the terms of the Proposed Settlement are reasonable and well within the range of possible approval. The essence of Plaintiffs' case is that Defendant marketed and sold the Products with false and misleading statements that the Products are available only in salons. The Proposed Settlement directly addresses these allegations by requiring L'Oréal to remove all such statements from each of its Products. This injunctive relief is meaningful to the Class as consumers will now purchase L'Oréal's products with full knowledge and understanding of the Products' availability. The Proposed Settlement is more than adequate under the circumstances and contains no deficiencies.·

14

Furthermore, because the Proposed Settlement resolves the alleged false and deceptive behavior through the injunctive relief and preserves individual claims for monetary relief arising from or related to L'Oréal's use of the Claims in connection with its labeling, advertising and/or marketing of the L'Oréal Products in the United States, the Proposed Settlement is within the range of possible approval.

### 1. Plaintiffs and the Class Face a Risk Seeking Certification of a Rule 23(b)(3) Class

Plaintiffs' claims are based on consumer fraud and deception under various state consumer fraud acts. Defendant has indicated that, should this matter proceed, it will challenge the case on the grounds that individualized issues preclude class certification. These include varied reasons for purchasing the products and purchase of the products in both salons and non-salon retailers and for varied prices. Facts like these can be used to challenge adequacy and predominance, thereby posing a significant threat of defeating class certification.

Because Plaintiffs face a substantial risk that they may not succeed with their claims (whether at the class certification stage, summary judgment stage, or at trial), preliminary approval of the Parties' Proposed Settlement is appropriate.[8]  *See In re Gen. Instrument Sec. Litig.*, 209 F. Supp. 2d 423, 431 (E.D. Pa. 2001) ("'The fact that a proposed settlement constitutes a relatively small percentage of the most optimistic estimate does not, in itself, weigh against the settlement: rather, the percentage should be considered in light of the strength of the claims.'"). Furthermore, Class members will not lose their right to pursue individual claims for

---

[8] Examination of the strength and weaknesses of the claims should not become a trial on the merits. *See United States v. District of Columbia*, 933 F. Supp. 42, 47 (D.D.C. 1996) ("'It is precisely the desire to avoid protracted examination of the parties' legal rights which underlies consent decrees.'" "And 'it is therefore inappropriate for the judge to measure the remedies in the decree as if they were fashioned after trial.'"). Moreover, "'complaining that a settlement should be 'better' is not a valid objection.'" *O'Brien v. Brain Research Labs*, No. 12-201, 2012 WL 3242365, at *15 (D.N.J. Aug. 9, 2012).

monetary relief arising from or related L'Oréal's use of the Claims in connection with its labeling, advertising and/or marketing of the L'Oréal Products in the United States. Given these considerations, preliminary approval of the Proposed Settlement is warranted to avoid the uncertainties and risks of continued litigation.

> **2.      If the Litigation Proceeds, It May Be Years before the Class Recovers, If at All**

Also supporting approval of the settlement is the fact that absent a settlement, it would likely be years before the class obtained any relief — and Settlement Class members might ultimately get nothing. Prior to reaching judgment, in addition to discovery and trial-related preparations and motions, the Parties would have to litigate, at least: (a) L'Oréal's Motion to Dismiss; (b) a contested class certification motion; (c) summary judgment; (d) a trial on the merits; and (e) the issue of the amount of damages and/or penalties to award. As this Court recognized in *Lorazepam & Clorazepate*, avoiding future contentious litigation and the risk and delay that litigation entails favors settlement:

> [S]everal additional factors should be taken into consideration. Continued litigation of these lawsuits would undoubtedly require substantial additional pretrial preparation and expense, as the defendants have denied all liability. Such preparation would likely involve dozens of witnesses, including several experts, and thousands of pages of documents. Further litigation also entails substantial risks; given the defendants' denial of liability, monetary recovery certainly cannot be assumed.

205 F.R.D. at 377; *see also Perez v. Asurion Corp.*, 501 F. Supp. 2d 1360, 1381 (S.D. Fla. 2007) ("With the uncertainties inherent in pursuing trial and appeal of this case, combined with the delays and complexities presented by the nature of the case, the benefits of a settlement are clear."); *Luevano v. Campbell*, 93 F.R.D. 68, 89 (D.D.C. 1981) ("[T]he delay in providing relief to the class if this case were to be litigated is a factor strongly supporting the compromise reached by the parties."). Accordingly, while there is a significant risk in proceeding with litigation, the injunctive relief provides an immediate good to the public.

### D.     The Proposed Settlement Treats All Class Members Equally

In addition to meeting the above criteria, the Proposed Settlement also avoids granting preferential treatment to Plaintiffs or segments of the Class.

The Plaintiffs and the entire Class are treated equally because they all receive the same relief: removal of the challenged language without giving up their right to individual monetary relief.[9]

The Proposed Settlement provides for modest incentive awards to the Plaintiffs in recognition of the efforts expended by them on behalf of the putative Class and the risks they undertook in bringing this lawsuit. It is well recognized that payment of incentive awards under such circumstances is acceptable. *See Lorazepam & Clorazepate*, 205 F.R.D. at 400 (stating that courts routinely approve incentive awards to "'compensate named plaintiffs for the services they provided and the risks they incurred during the course of the class action litigation'"); *Radosti v. Envision EMI, LLC*, 760 F. Supp. 2d 73, 79 (D.D.C. 2011) ("[I]ncentive awards are not uncommon in common fund-type class actions and are used to compensate plaintiffs for the services they provided and the risks they incurred during the course of the class action litigation.").

In sum, the Proposed Settlement should be preliminarily approved because the answer to each of the four questions relevant to approval is "yes." A procedurally proper process was used to achieve the Proposed Settlement; it is free of obvious deficiencies and within the range of reasonableness; and the Plaintiffs and Class members are treated equally.

---

[9] As the relief obtained for the Class provides all Class Members with the same relief, settlement on a nationwide basis is appropriate.

## V. THE SETTLEMENT CLASS SHOULD BE CERTIFIED

When presented with a proposed settlement prior to a decision on class certification, the Court must also determine whether the proposed settlement class satisfies the requirements for class certification under Federal Rule of Civil Procedure 23. The practice of certifying a class "for settlement purposes only" has been "increasingly common." *See Radosti v. Envision EMI, LLC*, 717 F. Supp. 2d 37, 50 (D.D.C. 2010) (citing *Amchem Prods, Inc. v. Windsor*, 521 U.S. 591, 614 (1997)). Pursuant to Fed. R. Civ. P. 23(a), a class can only be certified if there is numerosity, commonality, typicality, and adequacy of representation. Additionally, at least one of the requirements of Fed. R. Civ. P. 23(b) must be satisfied. In certifying a class for settlement purposes only, the court need not determine "whether the case, if tried, would present intractable management problems . . . for the proposal is that there be no trial." *Amchem*, 521 U.S. at 620. Here, for purposes of settlement, the requirements of Fed. R. Civ. P. 23(a) and (b)(2) have been met.

To satisfy the numerosity requirement of Rule 23(a)(1), "the class [must be] so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1). This requirement is easily met. In the Complaint, Plaintiffs assert that there are thousands of members in the Class. (¶54.)

To satisfy the commonality requirement of Rule 23(a)(2), there must be at least one question of law or fact common to the class. Fed. R. Civ. P. 23(a)(2). "Commonality requires the plaintiff to demonstrate that the class members 'have suffered the same injury,' "which 'does not mean merely that they have all suffered a violation of the same provision of law.'" *Wal-Mart Stores, Inc. v. Dukes*, 131 S.Ct. 2541, 2551 (2011). The "claims must depend on a common contention" and "[t]hat common contention . . . must be of such a nature that it is capable of classwide resolution – which means that determination of its truth or falsity will resolve an issue

18

that is central to the validity of each one of the class claims in one stroke." *Id.* "What matters to class certification . . . is not the raising of common 'questions' – even in droves – but, rather the capacity of a classwide proceeding to generate common answers apt to drive the resolution of the litigation." *Id.*

With respect to the request for injunctive relief, common questions articulated in the Complaint (¶55) include whether the salon-only claims are literally false and whether L'Oréal knew or should have known of the falsity or misleading nature of those claims.

To satisfy the typicality requirement of Rule 23(a)(3), the claims of the class representatives must be "typical of the claims or defenses of the class." "The requirement for 'typicality' is satisfied 'if each class member's claim arises from the same course of events that led to the claims of the representative parties and each class member makes similar legal arguments to prove the defendant's liability.'" *Lorazepam & Clorazepate*, 202 F.R.D. at 27, Nos. MDL 1290 (TFH), 99MS276 (TFH), Civ. 99-0790 (TFH) (D.D.C. July 2, 2001) (quoting *Pigford v. Glickman*, 182 F.R.D. 341, 349 (D.D.C. 1998)). The facts and claims of the class members do not need to be identical. *See Daskalea v. Wash. Humane Soc'y*, 275 F.R.D. 346, 358 (D.D.C. 2011). Courts deem the typicality requirement satisfied if class representatives "suffered injuries in the same general fashion as absent class members." *In re Vitamins Antitrust Litig.*, 209 F.R.D. 251, 260 (D.D.C. 2002). With respect to the request for injunctive relief, there is a nexus between Plaintiffs' claims or defenses and the common question of fact or law (whether the salon-only claims are false and/or misleading) that unites this case.

To satisfy the adequacy requirement of Rule 23(a)(4), two components must be met: (1) Plaintiffs (as class representatives) must have no interests antagonistic to the class, and (2) Class Counsel must possess the competence to undertake the litigation. *Twelve John Does v. District of Columbia*, 117 F.3d 571, 575 (D.C. Cir. 1997). Plaintiffs are adequate to serve as class

19

representatives.  All Settlement Class members will benefit equally from the injunctive relief provided by the Proposed Settlement and each Settlement Class member retains the right to pursue his or her individual damages claims.

Class Counsel is also adequate.  It has extensive experience handling complex class actions and has demonstrated a willingness to vigorously prosecute class claims.  (Halunen Decl., ¶10.)  Over the course of the action, Class Counsel performed significant research over a period of one year prior to filing suit, drafted two complaints in this matter, briefed and researched key issues for the Court's consideration, represented Plaintiffs at two mediation sessions, reviewed significant discovery in connection with the settlement, and drafted the present motion for preliminary approval.

The fact that this settlement provides injunctive relief only does not suggest that Class Counsel or the Class representatives failed to vigorously obtain relief for the Class.  Rather, Plaintiffs' counsel recognized the risk and likelihood of achieving anything more than injunctive relief if the class case proceeded, and the Proposed Settlement preserves individual class members' ability to seek monetary relief.  Accordingly, Plaintiffs' counsel has adequately represented the interests of the Class.

Under Fed. R. Civ. P. 23(b)(2), a class may be maintained if "the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole." Fed. R. Civ. P. 23(b)(1)(B)(2).  The Complaint involves claims for injunctive relief and allegations that L'Oréal has acted or refused to act on grounds that apply generally to the class.  (¶¶17–48; Prayer for Relief, ¶¶ A, B, C.) Accordingly, all of Plaintiffs' claims stem from the same alleged conduct applicable to the entire class and the proposed injunctive relief is appropriate for the class as a whole.

20

## VI.   THE PROPOSED NOTICE SATISFIES THE REQUIREMENTS OF FED. R. CIV. P. 23.

### A.   Legal Standard for Approval of a Notice Plan

"The court must direct notice in a reasonable manner to all Settlement Class Members who would be bound by the [settlement] proposal." Fed. R. Civ. P. 23(e)(1). Notice must be "reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them the opportunity to present their objections." *Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306, 315 (1950). If approved, the notice plan set forth in the Proposed Settlement will achieve these requirements.

Within 14 days after entry of the Preliminary Approval Order, L'Oréal will submit a court-approved Short-Form Notice for publication in the legal notices section of *USA Today* for one week in the Monday through Thursday editions at a size of 1/8 page. The Short-Form Notice refers purported class members to a website paid for and supported by L'Oréal, which will contain additional information regarding the action, including a copy of the Settlement Agreement and a court-approved Long-Form Notice. The website will be available for a period of 30 days following publication of the Summary Notice. (Settlement Agreement, §3.1.) It will contain copies of all relevant documents and information, including, but not limited to: (1) a copy of the Short-Form Notice, (2) a copy of the Long-Form Notice, which contains instructions on how to object to the Proposed Settlement; and (3) relevant pleadings (*i.e.*, Complaint, Settlement Agreement, Preliminary Approval Order). (Settlement Agreement, §3.1.) The notice plan set forth in the Proposed Settlement is structured to reasonably apprise interested persons about the action and provide them an opportunity to object, thereby satisfying the requirements of Rule 23(e)(1).

### B.     The Content of the Notice Is Appropriate

This notice complies with Rule 23 and due process because, among other things, it informs the Settlement Class of: (1) the nature of the action; (2) the essential terms of the settlement, including the definition of the Settlement Class and claims asserted; (3) the binding effect of a judgment if the Settlement Class member does not request exclusion; (4) the process for objection, including the time and method for objecting and that Settlement Class members may make an appearance through counsel; (5) information regarding the named plaintiffs' request for an incentive award and reimbursement of their attorneys' fees and costs; and (6) how to contact Class Counsel to make inquiries. Fed. R. Civ. P. 23(c)(2)(B).  As such, the Court should approve Exhibits A and D to the Proposed Settlement Agreement (Exhibit 1).

### C.     The Manner of Providing Notice Is Appropriate

Here, Rule 23's notice requirement is satisfied by the proposed notice plan, which includes (i) publication of the Short-Form Notice in the legal notices section of *USA Today* for one week in the Monday through Thursday editions at a size of 1/8 page, and (ii) publication notice through a comprehensive, dedicated website.  Because, as described above, L'Oréal sells only a miniscule amount of L'Oréal Products directly to Settlement Class members, and therefore, does not have mailing or email addresses for the vast majority of Class Members, the Parties agree that the publication notice described above is the best and most practicable notice method available under the circumstances.

## VII.   THE COURT SHOULD SCHEDULE THE FAIRNESS HEARING

The last step in the settlement approval process is a Fairness Hearing at which the Court may hear all evidence and argument necessary to make its settlement evaluation. Fed. R. Civ. P. 23(e)(2).  Proponents of the settlement may offer argument in support of final approval.  In addition, Settlement Class members who have properly objected to the Proposed Settlement may

also be heard. The Court will determine after the Fairness Hearing whether the Proposed Settlement should be approved, and whether to enter a judgment and order of dismissal under Rule 23(e).[10]

The Parties request that the Court set a date for a hearing on final approval at the Court's convenience, no less than eighty-six (86) calendar days after the Court's preliminary approval of the Proposed Settlement. This provides adequate time for the following to occur:

- preparation for and transmittal of notice to the Settlement Class (14 calendar days),

- receipt of notice by the Settlement Class and, if desired, the filing of objections to the Proposed Settlement (45 calendar days),

- submission by the Parties of briefs in support of approval of the Proposed Settlement at the Fairness Hearing, including a response to any objections (20 calendar days), and

- review by the Court of Party submissions prior to the Fairness Hearing (7 calendar days).

---

[10] Once the Proposed Settlement reaches the third step of the process, the factors the Court will investigate at the Fairness Hearing are: "(a) whether the settlement is the result of arms-length negotiations; (b) the terms of the settlement in relation to the strength of plaintiffs' case; (c) the stage of the litigation proceedings at the time of settlement; (d) the reaction of the class; and (e) the opinion of experienced counsel." *Lorazepam & Clorazepate*, 205 F.R.D. at 375.

## VIII.   CONCLUSION

For the reasons stated above, the Parties respectfully request that the Court grant this

motion for preliminary approval of the class action settlement.

Respectfully submitted,

MEHRI & SKALET, PLLC

/s/ Michael Lieder
MICHAEL LIEDER (D.C. Bar No. 444273)
1250 Connecticut Avenue NW
Suite 300
Washington, DC 20036
Telephone: 202/822-5100
Fax:  202/822-4997
mlieder@findjustice.com

Local Counsel for Plaintiffs and the [Proposed]
Class

HALUNEN & ASSOCIATES
CLAYTON HALUNEN
SUSAN M. COLER
MELISSA W. WOLCHANSKY
1650 IDS Center
80 South Eighth Street
Minneapolis, MN  55402
Telephone:  612/605-4098
Fax:  612/605-4099
halunen@halunenlaw.com
coler@halunenlaw.com
wolchansky@halunenlaw.com

THE MEHDI FIRM
AZRA Z. MEHDI
One Market
Spear Tower, Suite 3600
San Francisco, CA  94105
Telephone:  415/293-8039
Fax:  415/293-8001
azram@themehdifirm.com

Attorneys for Plaintiffs and the [Proposed] Class

24

**ECF CERTIFICATION**

The filing attorney attests that he has obtained concurrence regarding the filing of this document from the signatories to this document.

Dated: MAY 15, 2013                         By:    /s/ Michael Lieder
                                                   MICHAEL LIEDER

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that, on May 15, 2013, a copy of the foregoing Memorandum In Support of Motion for Preliminary Approval of Settlement, Certification of Settlement Class, Approval of the Notice Plan, and Scheduling a Date for a Final Fairness Hearing was served on all counsel of record via electronic case filing notification.

/s/ Michael Lieder
MICHAEL LIEDER (D.C. Bar No. 444273)
MEHRI & SKALET, PLLC
1250 Connecticut Avenue NW
Suite 300
Washington, DC 20036
Telephone: 202/822-5100
Fax:  202/822-4997
mlieder@findjustice.com