**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| ALEXIS RICHARDSON,<br>    2701 Connecticut Avenue NW, Apt. 100<br>    Washington DC, 20008;<br><br>JAY SANDLER,<br>    33 W Huron Street, Apt. 511<br>    Chicago, IL 60654;<br><br>LUBNA PESHIMAM,<br>    15 Eastern Drive<br>    West Windsor, NJ 08550,<br><br>TRACEY ANN BERTRAND,<br>    11301 NW 34th Place<br>    Sunrise, FL  33323,<br><br>MOLLIE KRENGEL,<br>    3420 W 29th Street<br>    Minneapolis, MN 55416,<br><br>and<br><br>NANCIE LIGON,<br>    64 Woodworth Lane<br>    Sonoma, CA 95476,<br><br>Individually and on Behalf of All Others<br>Similarly Situated,<br><br>                Plaintiffs,<br><br>        v.<br><br>L'OREAL USA, INC.,<br><br>                Defendant. | Case No. 13-CV-00508-JDB |

# EXHIBIT 1

# SETTLEMENT AGREEMENT

THIS SETTLEMENT AGREEMENT AND RELEASE (together with all exhibits hereto, the "Agreement" or "Settlement Agreement") is entered into by and between plaintiffs ALEXIS RICHARDSON, NANCIE LIGON, JAY SANDLER, TRACEY ANN BERTRAND, LUBNA PESHIMAM, and MOLLIE KRENGEL ("Plaintiffs" or "Class Representatives"), individually and in their representative capacity on behalf of the Settlement Class as defined herein, and defendant L'ORÉAL USA, INC. ("L'Oréal") (collectively, the "Parties").

## RECITALS

**A.** On or about August 30, 2012, Plaintiff Nancie Ligon filed a complaint against L'Oréal in the United States District Court for the Northern District of California entitled *Ligon v. L'Oréal*, Case No. 12-CV-4585 (the "California Action").

**B.** The California Action asserted causes of action against L'Oréal for alleged violation of California Business and Professions Code § 17200 *et seq.* (Unfair Competition Law); violation of California Business and Professions Code § 17500 *et seq.* (False Advertising Law); violation of California Consumers Legal Remedies Act, California Civil Code § 1750 *et seq.* (Consumers Legal Remedies Act; and unjust enrichment. Plaintiff Ligon brought these causes of action in her individual capacity and as the representative of a purported nationwide class of similarly situated persons. The California Action generally asserted that L'Oréal's Matrix® brand of hair care products was falsely and misleadingly labeled, marketed and advertised as for sale only in professional beauty salons when consumers can purchase these products in major retail outlets throughout the United States where professional salon services are not available.

**C.** After filing the California Action, Plaintiffs' Counsel, as defined below, informed L'Oréal's Counsel, as defined below, that they intended to assert additional class claims outside of California against L'Oréal on behalf of additional class representatives who had purchased additional products that had allegedly been incorrectly marketed as being available for sale only in professional salons. The Parties subsequently engaged in several mediation sessions. On December 5, 2012 in San Francisco, California, on January 25, 2013 in New York, New York, and on multiple dates thereafter via telephone, the Parties participated in mediation before Hon. Ronald M. Sabraw (Ret.). A tentative agreement towards resolution of all of Plaintiffs' claims against L'Oréal conditioned upon certain key settlement terms was reached at the conclusion of the mediation sessions and subsequent negotiations.

**D.** During the mediation, the Parties tentatively agreed that, for purposes of this Settlement, Plaintiff Ligon would voluntarily dismiss the California Action and that Plaintiffs would file a consolidated complaint against L'Oréal in the federal District Court for the District of Columbia that encompasses all of Plaintiffs' claims and causes of action against L'Oréal and all of the claims and products as to which this Settlement Agreement shall apply ("D.C. Action").

**E.** On April 15, 2013, pursuant to the tentative agreement the Parties reached during mediation, Plaintiff voluntarily dismissed the California Action and filed the D.C. Action against L'Oréal. The D.C. Action is pending before the Honorable John D. Bates and has been assigned

Page 1

docket number 13-CV-508 (D.D.C). This Settlement Agreement resolves all of the claims brought in the California Action and the D.C. Action (collectively, the "Actions").

**F.**     L'Oréal denies the allegations raised in the Actions, and any wrongdoing.

**G.**     Plaintiffs' Counsel has conducted an investigation of the facts and has analyzed the relevant legal issues with regard to the claims and defenses asserted in the Actions. Plaintiffs and Plaintiffs' Counsel, as defined below, believe that the claims asserted in the Actions have merit. L'Oréal and L'Oréal's Counsel, as defined below, believe that the claims asserted in the Actions are without merit and that L'Oréal has complete factual and legal defenses thereto. The Parties also have each weighed the uncertainties of trial and the benefits to be obtained under the proposed Settlement and have considered the costs, risks, and delays associated with the continued prosecution of this complex and time-consuming litigation and the likely appeals of any rulings in favor of either Plaintiffs or L'Oréal.

**H.**     Accordingly, it is now the intention of the Parties and the objective of this Agreement to avoid the costs of trial and settle and dispose of, fully and completely and forever, any and all claims and causes of action raised in the Actions.

     **1.**     **DEFINITIONS.** Unless otherwise indicated herein, the following shall be defined terms for purposes of this Agreement. Some of the definitions in this section use terms that are defined later in the section. All defined terms are capitalized.

          **1.1**     As used herein, the term "Claims" means the following phrases used by L'Oréal in its labeling, marketing and/or advertising for its Matrix®, Kérastase®, Redken®, and/or Pureology® brands of hair care products: "for sale only in professional beauty salons"; "exclusive salon distribution"; "exclusive to Kérastase consultant salons"; "only professional"; "only in salon"; "sold exclusively in salons"; "available only at fine salons and spas"; "available only at fine salons;" or similar claims in English or other languages which may be read as suggesting availability for purchase exclusively in professional salons.

          **1.2**     As used herein, the term "Class Notice" means the full legal notice of the terms of the proposed Settlement, as approved by Plaintiffs' Counsel, L'Oréal's Counsel, and the Court. The Class Notice shall be substantially in the form attached as Exhibit A hereto.

          **1.3**     As used herein, the term "Court" means the federal District Court for the District of Columbia in which the D.C. Action has been commenced.

          **1.4**     As used herein, the term "Dispute" means any current or potential dispute between the Parties concerning any or all of the Claims as set forth in the Actions.

          **1.5**     As used herein, the term "Effective Date" means the effective date of this Agreement, which shall be the first day after all of the following events and conditions of this Agreement have been met or have occurred: (a) all Parties, either themselves or through their counsel, have executed this Agreement; (b) the Court has entered the Final Order and Judgment, as defined herein, approving the Agreement; and (c) the Final Order and Judgment has become final in that the time for appeal or writ has expired or, if an appeal and/or petition for review is

taken, the Final Order and Judgment is affirmed and the time period during which further petition for hearing, appeal, or writ of certiorari can be taken has expired. If the Final Order and Judgment is set aside, modified, or overturned by the Court or on appeal and is not fully reinstated on further appeal, the Final Order and Judgment shall not become "final" as required for this Agreement's effectuation.

1.6    As used herein, the term "Execution Date" means the last date of execution of this Settlement Agreement by all of the undersigned representatives.

1.7    As used herein, the term "Fairness Hearing" means the hearing at or after which the Court will make a final decision whether to approve this Agreement as fair, reasonable and adequate.

1.8    As used herein, the term "Final Order and Judgment" means the order finally certifying the Settlement Class, as defined herein, for settlement purposes only and approving the Settlement and this Agreement. In order to meet this definition for the effectuation of this Agreement, the order and/or judgment must, at a minimum:

(a)    determine that this Agreement is fair, adequate and reasonable; and in the best interests of the Settlement Class;

(b)    dismiss with prejudice the D.C. Action;

(c)    bar and enjoin all Class Members (as defined herein) from asserting any of the Released Claims (as defined herein);

(d)    release the Released Parties (as defined herein) from the Released Claims which any Class Member has, had, or may have in the future; and

(e)    reserve the Court's continuing and exclusive jurisdiction over the Parties to this Agreement, including L'Oréal and all Class Members, to administer, supervise, construe and enforce this Agreement in accordance with its terms for the mutual benefit of the Parties. The proposed Final Order and Judgment submitted for the Court's consideration shall be substantially in the form attached as Exhibit B hereto.

1.9    As used herein, the term "Plaintiffs' Counsel" or "Class Counsel" means collectively the law firms of Halunen & Associates and The Mehdi Firm.

1.10   As used herein, the term "Preliminary Approval Order" means the order concerning notice and setting the Fairness Hearing. The proposed Preliminary Approval Order submitted for the Court's consideration shall be substantially in the form attached as Exhibit C hereto.

1.11   As used herein, the term "the L'Oréal Products" refers to any and all shampoo, conditioner and styling products for in-home use by consumers that are manufactured, marketed or sold by L'Oréal under the Matrix®, Kérastase®, Redken®, and Pureology® brand names.

6134930v.1

**1.12**    As used herein, the term "Settlement" means the settlement of the Actions and related claims as effectuated by this Agreement.

**1.13**    As used herein, the terms "Settlement Class" means all consumers nationwide who purchased the L'Oréal Products for personal, family or household use on or after August 30, 2008. The Settlement Class excludes (i) purchasers of the L'Oréal Products for re-sale, stylists and salon owners; (ii) L'Oréal, its officers, directors and employees; and its affiliates and affiliates' officers, directors and employees; (iii) Plaintiffs' Counsel and their employees; and (iv) judicial officers and their immediate family members and associated court staff assigned to the D.C. Action.

**1.14**    As used herein, the term "Class Member" means any person who is included in the Settlement Class.

**1.15**    As used herein, the term "Summary Notice" means the short form notice of the terms of the proposed settlement, as approved by Plaintiffs' Counsel, L'Oréal's Counsel, and the Court. The Summary Notice shall be substantially in the form attached as Exhibit D hereto.

**1.16**    As used herein, the term "L'Oréal's Counsel" means collectively the law firms of Patterson Belknap Webb & Tyler LLP and Farella Braun + Martel LLP.

**2.    SETTLEMENT TERMS.**

**2.1    Dismissal of the California Action.** Pursuant to the tentative agreement the Parties reached during mediation, Plaintiff Ligon voluntarily dismissed the California Action on April 15, 2013.

**2.2    D.C. Action.** Pursuant to the tentative agreement the Parties reached during the mediation and for the purposes of the Settlement and the proceedings contemplated herein, Plaintiffs commenced the D.C. Action on April 15, 2013. The D.C. Action (i) was filed on behalf of all of the Plaintiffs, both individually and as representatives of the Settlement Class; (ii) asserts claims for unjust enrichment and breach of express warranty against L'Oréal on behalf of a nationwide class; (iii) asserts claims under the consumer protection statutes of each Plaintiff's home state on behalf each individual Plaintiff and a purported class of individuals from that Plaintiff's home state; and (iv) is based on L'Oréal's use of the Claims in its labeling, advertising and/or marketing materials for the L'Oréal Products. As soon as practicable after the Execution Date, Plaintiffs shall seek approval by the Court of the Settlement as described herein.

**2.3    Certification of the Class.** Plaintiffs will seek certification of the Settlement Class seeking injunctive relief under Federal Rule of Civil Procedure 23(b)(2). Plaintiffs will not seek monetary relief for the Settlement Class. For the purposes of Settlement and the proceedings contemplated herein only and as consideration for this Settlement, L'Oréal shall not object to the following:

**(a)**    certification of the Settlement Class under Federal Rule of Civil Procedure 23(b)(2) in accordance with the definition contained in Paragraph 1.13 of this Agreement;

6134930v.1

(b)     Plaintiffs' representation of the Settlement Class for settlement purposes; or

(c)     Plaintiffs' Counsel's appointment as counsel for the Settlement Class.

      **2.4     Class Relief.**  For purposes of the Settlement only, the Parties agree and shall not object to entry by the Court of an order providing for the following affirmative relief for the Settlement Class:

(a)     L'Oréal shall remove the Claims from labeling on the L'Oréal Products for United States distribution and from advertising for the L'Oréal Products in the United States, <u>except</u>:

      (i)     As to those L'Oréal Products that are sold or distributed under the Redken or Kérastase brand names in European countries as well as the United States using the same packaging, L'Oréal will be permitted to include the phrase "Reservé aux distributeurs agréés", or its equivalent in other languages, on labeling or other marketing materials.

(b)     L'Oréal shall not use the Claims in connection with the labeling, marketing or advertising of the L'Oréal Products in the United States for a minimum period of five (5) years from the Effective Date.

(c)     After the minimum 5 year term, L'Oréal may resume using the Claims in connection with the labeling, marketing or advertising in the United States of any of the L'Oréal Products whose mass market sales in the United Sates as reported in A.C. Nielsen/IRI data have been reduced from 2012 reported mass market sales by 60%.

      (i)     The credibility and reliability of the A.C. Nielsen/IRI data for this purpose will be attested to by a L'Oréal representative in the form of a declaration to be submitted to the Court.

(d)     (i)     L'Oréal will cease all manufacturing of labels for the L'Oréal Products for United States distribution containing the Claims within sixty (60) days following the Effective Date.

      (ii)     New labels for United States distribution of the L'Oréal Products that omit the Claims will begin to be implemented by L'Oréal in the ordinary course following the Effective Date as new manufacturing runs of product packaging are made.

      (iii)     No product labeling containing the Claims will be shipped by L'Oréal for United States distribution after one (1) year from the Effective Date.

(e)     No L'Oréal Products or product packaging in L'Oréal's inventory need be destroyed.

**(f)**    No L'Oréal Products that have been sold by L'Oréal need be recalled or repurchased.

**(g)**    L'Oréal will remove the Claims from all websites and promotional materials for the L'Oréal Products available in the United States within thirty (30) days of the Effective Date.

**(h)**    L'Oréal may undertake anti-diversion efforts, including consumer education, but will not include the Claims in any such efforts or education except as provided under Paragraph 2.4(c) above.

**2.5    Incentive Award to Plaintiffs.** L'Oréal agrees not to object to an award to each of the six named Plaintiffs in an amount no greater than $1,000 for his/her efforts in pursuing this litigation and conferring a benefit to the Settlement Class, which, subject to Court approved, is payable to Plaintiffs' Counsel by L'Oréal within 21 days of the Effective Date.

**2.6    Attorneys' Fees. (a)** L'Oréal agrees not to object to award to Plaintiffs' Counsel of attorneys' fees and costs in an amount no greater than $950,000.00, which, subject to Court approval, is payable to Plaintiffs' Counsel by L'Oréal within 14 days of the Effective Date. Plaintiffs' Counsel agrees not to request payment, or to seek approval by the Court of payment, exceeding $950,000.00 for attorneys' fees and costs. The Parties agree that Plaintiffs and Plaintiffs' Counsel will not be entitled to legal fees or expenses for monitoring compliance with the Settlement Agreement after the Effective Date.

**(b)**    Plaintiffs' Counsel will file their application for an award of attorneys' fees, expenses and costs no later than 20 days before the close of the objection period.

**(c)**    The payment by L'Oréal of any fees, expenses and costs to Plaintiffs' Counsel is separate from and in addition to the other relief afforded the Class Members in this Agreement. The Court's award of any fees, expenses and costs to Plaintiffs' Counsel shall be separate from its determination of whether to approve the Settlement. In the event that Court approves the Settlement, but declines to award fees, expenses or costs in the amount requested by Plaintiffs' Counsel, the Settlement will nevertheless be binding on the Parties and the Class Members.

**2.7    Cost of Notice.** L'Oréal shall bear all costs of providing notice to the Settlement Class in the manner prescribed in Paragraph 3.2 of this Agreement. L'Oréal shall also bear all costs of providing notice in any manner prescribed by any mutually agreed-upon revisions or amendments to the notice provisions of this Agreement.

**2.8    Disclosures by L'Oréal.** In addition to the documents and other information already provided by L'Oréal to Plaintiffs' Counsel, L'Oréal shall provide Plaintiffs' Counsel with the following disclosures, to the extent such information exists and is requested by Plaintiffs' Counsel in order to assist them in preparing to seek court approval of the Parties' Settlement terms.

6134930v.1

(i) Sworn testimony (by declaration) from the person most knowledgeable describing the anticipated timing and process of effecting the labeling changes referenced in Paragraph 2.4 above.

(ii) Sworn testimony (by declaration) regarding price paid by consumers for diverted Products purchased in mass market retailers during the Class Period.

(iii) Sworn testimony (by declaration) regarding suggested retail price for Products sold in salons.

(iv) Information in L'Oréal's possession, if any, regarding length of time during which hair care products labelled or intended for salon sale, such as the L'Oréal Products, have been available for purchase in mass market retailers.

(v) Information in L'Oréal's possession, if any, regarding consumer awareness of diversion and/or of availability of hair care products labelled or intended for salon sale, such as the L'Oréal Products, for purchase in mass market retailers.

(vi) Information in L'Oréal's possession, if any, regarding reasons consumers purchase hair care products, such as the L'Oréal Products, and/or regarding effect of Claims on purchase decisions.

(vii) Information in L'Oréal's possession, if any, regarding materiality of the Claims to consumers.

(viii) Sworn testimony (by declaration) regarding L'Oréal's inability to identify Settlement Class Members, retailers from which Settlement Class Members purchased the L'Oréal Products, or date on which Settlement Class Members purchased the L'Oréal Products.

(ix) Sworn testimony (by declaration) regarding channels of trade into which L'Oréal sells/distributes the L'Oréal Products.

(x) Sworn testimony (by declaration) regarding L'Oréal's consumer-directed anti-diversion educational efforts.

(xi) Information in L'Oréal's possession, if any, regarding reasons why consumers make repeat purchases of hair care products, such as the L'Oréal Products.

2.9 **Plaintiffs' Right to Request Additional Disclosures.** Upon review of the documents and information provided by L'Oréal pursuant to the foregoing paragraph, Plaintiffs reserve the right to request additional document disclosures from L'Oréal that Plaintiffs believe are reasonably necessary for Plaintiffs to meet their due diligence obligation for Court approval. The Parties agree that any Party may seek Court intervention if the Parties cannot reach agreement as to the necessity of additional document disclosure.

2.10 **Confidentiality of Disclosures.** Plaintiffs agree to enter into a protective agreement with L'Oréal to ensure the confidentiality of the information referenced in the

Page 7

foregoing two paragraphs, which agreement shall include a requirement that Plaintiffs obtain L'Oréal's prior approval should Plaintiffs wish to use any such information directly or indirectly (e.g., through a summary or expert declaration) in seeking Court approval of the Settlement.

3.   **CLASS SETTLEMENT PROCEDURES.**

**3.1   Settlement Approval.** As soon as practicable after the Execution Date, Plaintiffs shall file a motion for a Preliminary Approval Order, preliminarily approving this Settlement Agreement as fair, reasonable and adequate, approving the Summary Notice and Class Notice as described in Paragraph 3.2, and setting the date and time of the Fairness Hearing.

**3.2   Notice.** Subject to Court approval, the Parties agree that L'Oréal will provide the Settlement Class with notice of the proposed Settlement by publication in a form substantially similar to the Summary Notice attached hereto as Exhibit D. Within 14 days after entry of the Preliminary Approval Order, L'Oréal will submit the insertion order for the Summary Notice to be published in the legal notices section of USA Today for one week in the Monday-Thursday edition at a size of 1/8 page. The Summary Notice shall refer purported Class Members to one or more websites paid for and supported by L'Oréal, which will contain additional information regarding the D.C. Action, including a copy of this Agreement and the Class Notice. The website shall be available for a period of 30 days following publication of the Summary Notice. Because L'Oréal does not sell the L'Oréal Products directly to Settlement Class Members, have mailing or email addresses for each Class Member or have a list of members of the Settlement Class, the Parties agree that the publication notice described above is the best and most practicable notice method available under the circumstances.

**3.3   Proof of Notice.** No later than 7 days before the Fairness Hearing, L'Oréal will file with the Court and serve upon Plaintiffs' Counsel a declaration confirming compliance with Paragraph 3.2 of this Agreement.

**3.4   CAFA Notice.** The Parties agree that L'Oreal shall serve notice of the proposed settlement that meets the requirements of CAFA, 28 U.S.C. Section 1715, on the appropriate federal and state officials no later than 10 days after this Settlement Agreement is filed with the Court. A proposed form of the CAFA Notice, without the accompanying attachments, is attached as Exhibit E.

**3.5   Objections.** Any Class Member who wishes to object to the Settlement must file a written objection with the Court, and serve copies on Plaintiffs' Counsel and L'Oréal's Counsel, no fewer than 30 days prior to the Fairness Hearing. The objection must set forth, in clear and concise terms, the legal and factual arguments supporting the objection. Unless otherwise requested by the Court, Class Members shall not be entitled to speak at the Fairness Hearing unless they have submitted a timely written objection pursuant to this paragraph.

4.   **DISMISSAL OF ACTION AND RELEASES.**

**4.1   Approval of This Agreement.** As soon as practicable after the Execution Date, counsel for all Parties will jointly take all necessary and appropriate steps to secure the Court's approval of this Agreement.

**4.2    Final Order.** At or before the Fairness Hearing, Plaintiffs' Counsel shall move for issuance of the Final Order.

**4.3    Effect of Agreement If Settlement Is Not Approved.** This Agreement was entered into only for the purpose of settlement. In the event that the Court does not approve the Settlement and/or <u>any</u> of this Agreement's individual terms, and/or in the event that the Final Order is for any reason not entered or is overturned after entry, then this Agreement may be declared null and void upon written notice by Class Counsel on behalf of the Class to L'Oréal's Counsel, or by L'Oréal to Class Counsel, which notice shall render the Agreement null and void *ab initio*. Should the Court decline to approve the Settlement, or should the Settlement be approved but then reversed on appeal, then the Parties shall be restored to their pre-settlement posture and no statement by the Parties in support of the Settlement or finding by the Court in approving/disapproving the Settlement shall be admissible for any other purpose in the litigation. L' Oréal reserves all rights to contest certification of any proposed class outside the context of this settlement proposal.

**4.4    Continuation of Action If Settlement Is Not Approved.** Should the Court decline to approve the Settlement as outlined herein, the Parties agree that the D.C. Action will remain pending in that Court for purposes of further proceedings.

**4.5    Dismissal of the D.C. Action with Prejudice.** The Court's Final Order granting approval of this Agreement shall include provisions for the dismissal of the D.C. Action with prejudice and the entry of a final judgment of dismissal.

**4.6    Plaintiffs' and Class Members' Release of L'Oréal.** Upon the Effective Date, Plaintiffs and Class Members of the Settlement Class and each of their respective successors, assigns, legatees, heirs, and personal representatives (collectively, the "Releasing Parties") shall be deemed to have fully, finally and forever released, relinquished and discharged against L'Oréal and its direct and indirect parents, subsidiaries, affiliated and related entities, predecessors, successors and assigns, partners, privities, and any of L'Oréal's present and former shareholders, agents, attorneys, employees, consultants, officers and directors, representatives, and all persons acting by, through, under or in concert with L'Oréal (collectively, the "Released Parties") all manner of action, causes of action, claims, demands, rights, suits, obligations, debts, contracts, agreements, promises, liabilities, damages, charges, penalties, losses, costs, expenses and attorneys' fees, of any nature whatsoever, known or unknown claims, in law or equity, fixed or contingent, which the Releasing Parties have or may have against the Released Parties arising out of or relating to any of the acts, omissions or other conduct related L'Oréal's use of the Claims in connection with its labeling, advertising and/or marketing of the L'Oréal Products (the "Released Claims"), except that Class Members do not release L'Oréal with respect to any individual, as opposed to class-wide, claims for monetary relief arising from or related L'Oréal's use of the Claims in connection with its labeling, advertising and/or marketing of the L'Oréal Products in the United States. Each Class Member releases and waives any right to assert Released Claims on behalf of any entity, group or class, and/or on behalf of any individual other than himself or herself.

Plaintiffs and Class Members expressly and knowingly waive and relinquish, to the fullest extent · permitted by law, all rights and benefits that they have under California Civil Code section 1542,

Page 9

or any similar provision under federal or state law in any other jurisdiction in the United States, which provides:

> **A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS WHICH THE CREDITOR DOES NOT KNOW OR SUSPECT TO EXIST IN HIS FAVOR AT THE TIME OF EXECUTING THE RELEASE, WHICH IF KNOWN BY HIM MUST HAVE IMMEDIATELY AFFECTED HIS SETTLEMENT WITH THE DEBTOR.**

The Releasing Parties fully understand that the facts on which this Settlement Agreement is executed may be different from the facts now believed by the Releasing Parties and their counsel to be true, and they expressly accept and assume the risk of this possible difference in facts and agree that this Settlement Agreement remains effective despite any difference in facts. Further, the Releasing Parties agree that this waiver is an essential and material term of this release and the Settlement that underlies it and that without such waiver the Settlement would not have been agreed to by the Parties.

**4.7   Plaintiffs' Counsel to Use Best Efforts.** Plaintiffs' Counsel will use best efforts to fully explain to their clients the legal effect of this Agreement and the release provided for in Paragraph 4.6 above and that the Settlement and compromise stated herein is final and conclusive forthwith and obtain appropriate releases from Plaintiffs.

**5.   ADDITIONAL PROVISIONS.**

**5.1   No Admission of Liability.** This Agreement reflects the compromise and settlement of disputed claims among the Parties. Its constituent provisions, and any and all drafts, communications and discussions relating thereto, shall not be construed as or deemed to be evidence of an admission or concession of any point of fact or law (including, but not limited to, matters respecting class certification) by any person, including L'Oréal, and shall not be offered or received in evidence or requested in discovery in the D.C. Action or any other action or proceeding as evidence of an admission or concession.

**5.2   Enforcement of Settlement Agreement.** Notwithstanding Paragraph 5.1 above, this Settlement Agreement may be pleaded as a full and complete defense to any action, suit or other proceeding against L'Oréal that has been or may be instituted, prosecuted or attempted with respect to any of the Released Claims and may be filed, offered and received into evidence and otherwise used for such defense.

**5.3   Public Statements:** The Parties may not make statements to the public at large including, but not limited to, press releases or statements to the media regarding the Settlement Agreement and/or the Actions, except that Plaintiffs' counsel may make statements on its website(s) after the Effective Date to the extent that such statements are consistent with the Summary Notice and/or public Court documents. Each Party will refrain from making any statement regarding the Settlement Agreement or the Action that disparages the other party either explicitly or by implication.

**5.4   Real Parties in Interest.** In executing this Agreement, the Parties warrant and represent that they, including Plaintiffs in their representative capacity on behalf of the

6134930v.1

Settlement Class and the general public, are the only persons having any interest in any of the claims that are described or referred to herein, or in any of the pleadings, records, and papers in the Actions, and, except as provided herein, neither said claims nor any part thereof have been assigned, granted or transferred in any way to any other person, firm or entity.

      **5.5   Voluntary Agreement.**  This Agreement is executed voluntarily and without duress or undue influence on the part of or on behalf of the Parties, or of any other person, firm or entity.

      **5.6   Binding on Successors.**  This Agreement shall bind and inure to the benefit of the respective successors, assigns, legatees, heirs, and personal representatives of each of the Parties.

      **5.7   Parties Represented by Counsel.**  The Parties hereby acknowledge that they have been represented in negotiations for and in the preparation of this Agreement by independent counsel of their own choosing, that they have read this Agreement and have had it fully explained to them by such counsel, and that they are fully aware of the contents of this Agreement and of its legal effect.

      **5.8   Authorization.**  Each Party warrants and represents that there are no liens or claims of lien or assignments in law or equity or otherwise of or against any of the claims or causes of action released herein and, further, that each Party is fully entitled and duly authorized to give this complete and final general release and discharge.

      **5.9   Construction and Interpretation.**  Neither Party nor any of the Parties' respective counsel shall be deemed the drafter of this Agreement for purposes of interpreting any provision hereof in any judicial or other proceeding that may arise between or among them. This Settlement Agreement shall be construed and interpreted to effectuate the intent of the Parties, which is to provide, through this Settlement Agreement, for a complete and final resolution of the Released Claims.

      **5.10   Headings.**  The various headings used in this Agreement are solely for the convenience of the Parties and shall not be used to interpret this Agreement.

      **5.11   Exhibits.**  The exhibits to this Agreement are integral parts of the Agreement and Settlement and are hereby incorporated and made a part of this Agreement.

      **5.12   Amendments and Waiver.**  This Settlement Agreement shall not be modified in any respect except by a writing executed by all Parties hereto, and the waiver of any rights conferred hereunder shall be effective only if made by written instrument of the waiving Party. The waiver by any Party of any breach of this Settlement Agreement shall not be deemed or construed as a waiver of any other breach, whether prior, subsequent or contemporaneous, of this Settlement Agreement.

      **5.13   Governing Law.**  This Agreement is entered into in accordance with the laws of the District of Columbia and shall be governed by and interpreted in accordance with those laws without regard to its choice of law or conflict of laws principles.

**5.14    Supersession and Integration.**  This Agreement supercedes any prior agreements and understandings between the Parties that in any way relate to the Dispute. This Agreement contains an entire, complete integrated statement of each and every term and provision agreed to by and between the Parties.

**5.15    Further Assurances.**  The Parties hereto shall execute and deliver any and all additional papers, documents and other assurances and shall do any and all acts or things reasonably necessary in connection with the performance of their obligations hereunder to carry out the express intent of the Parties hereto.

**5.16    Consent to Jurisdiction.**  The Parties, and their respective counsel, hereby irrevocably submit to the exclusive jurisdiction of the Court only for the specific purpose of any suit, action, proceeding or dispute arising out of or relating to this Settlement Agreement, the applicability of this Settlement Agreement or any issue related to fees and costs.

**5.17    Continuing Jurisdiction.**  Any disputes between or among the Parties and/or any Class Member concerning matters contained in this Settlement Agreement shall, if they first cannot be resolved by negotiation and agreement, be submitted to the Court. Notwithstanding the dismissal of the Action, the Parties stipulate that the Court shall retain jurisdiction to interpret, effectuate and enforce this Agreement.

**5.18    Counterparts.**  This Agreement may be executed in counterparts, each of which shall constitute an original, but all of which together shall constitute one and the same instrument.    The several signature pages may be collected and annexed to one or more documents to form a complete counterpart.  Facsimile signatures and photocopies of executed copies of this Agreement shall be treated as originals.

**5.19    Severability.**  Should any paragraph, sentence, clause or provision of this Agreement be held invalid or unenforceable in any proceeding subsequent to the Effective Date, such provision shall be ineffective to the extent of such invalidity or unenforceability, without invalidating the remainder of such provision or the remaining portions of this Agreement.

**IN WITNESS WHEREOF,** the Parties hereto, acting by and through their respective counsel of record, have so AGREED.

Dated: _5/9/13_

Plaintiffs Alexis Richardson, Nancie Ligon, Jay Sandler, Tracey Ann Bertrand, Lubna Peshiman, and Mollie Krengel, individually and as representatives of the Settlement Class

By: _____
Clayton D. Halunen, Esq.
Halunen & Associates

By: _____
Azra Z. Mehdi, Esq.
The Mehdi Firm

Dated: _5.7.13_

L'Oréal USA, Inc.

By: _____

Name: _Patrick T Parenty_

Title: _President PPD_

# Exhibit A

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

RICHARDSON ET AL. v. L'ORÉAL USA, INC., CASE NO. 13-CV-508

**THERE IS A PROPOSED CLASS ACTION SETTLEMENT BETWEEN L'ORÉAL USA, INC. AND
CERTAIN PURCHASERS OF MATRIX®, KÉRASTASE®, REDKEN® AND PUREOLOGY® HAIR
CARE PRODUCTS. THE LAWSUIT IS RELATED TO L'ORÉAL'S MARKETING OF THESE
PRODUCTS ON OR AFTER AUGUST 30, 2008.**

A settlement ("Settlement") has been proposed in a class action lawsuit about L'Oréal USA, Inc.'s ("L'Oréal")
marketing of shampoo, conditioner and styling products for in-home use by consumers that are manufactured,
marketed or sold by L'Oréal under the Matrix®, Kérastase®, Redken®, and Pureology® brand names ("the
L'Oréal Products") using one or more "Claims," as defined below, which may be read as suggesting availability
for purchase exclusively in professional salons when consumers can purchase these products in major retail
outlets where professional salon services are not available.

## YOUR LEGAL RIGHTS AND OPTIONS IN THIS SETTLEMENT:

| Object | Write to the Court about why you do not like the Settlement. |
|---|---|
| Go to a Hearing | Ask to speak in Court about the fairness of the Settlement. |
| Do Nothing | If the Settlement is approved by the Court, then you cannot bring a new class action lawsuit regarding L'Oréal's marketing of the L'Oréal Products using a Claim which may be read as suggesting availability for purchase exclusively in professional salons. You will release all equitable claims that this Settlement resolves. However, you will <u>not</u> give up your right to file an individual lawsuit to recover your own monetary damages, if any. |

## BASIC INFORMATION

### Does this Notice apply to me?

This Notice applies to you if you are a member of the "Settlement Class," which consists of all consumers
nationwide who purchased the L'Oréal Products for personal, family or household use on or after August 30,
2008.

### What is this lawsuit about?

Plaintiffs contend that the L'Oréal Products were falsely and misleadingly marketed using a claim which may
be read as suggesting availability for purchase exclusively in professional salons when consumers can purchase
these products in major retail outlets where professional salon services are not available.

*L'Oréal denies any wrongdoing and any liability whatsoever. L'Oréal contends that the L'Oréal Products
are manufactured and marketed with the intent that they be sold exclusively through professional salons and
other authorized channels.*

### Why is this a class action?

6134905v.1

In a class action, one or more persons called Class Representatives or Plaintiffs (in this action, the six Class Representatives are Alexis Richardson, Nancie Ligon, Jay Sandler, Tracey Ann Bertrand, Lubna Peshimam and Mollie Krengel) sue for all the people who have similar claims. All of these people are called a "Class" or "Class Members." The Court decides the issues for all Class Members.

## Why is there a Settlement?

The Court did not decide which side was right. There was no trial. The issuance of this Notice is not an expression of the Court's opinion on the merit or lack of merit of Plaintiffs' claims in this action. Plaintiffs and L'Oréal agreed to the Settlement to avoid the costs and risks of a trial.

## WHO IS IN THE SETTLEMENT?

## How do I know if I am part of the Settlement?

The "Settlement Class" consists of all consumers nationwide who purchased the L'Oréal Products for personal, family or household use on or after August 30, 2008.

## THE SETTLEMENT BENEFITS

## What benefits does the Settlement provide?

L'Oréal has agreed to remove from the labeling on the L'Oréal Products for United States distribution and from advertising for the L'Oréal Products in the United States, including websites and promotional materials, the following "Claims":

- "for sale only in professional beauty salons";
- "exclusive salon distribution";
- "exclusive to Kérastase consultant salons";
- "only professional";
- "only in salon";
- "sold exclusively in salons";
- "available only at fine salons and spas";
- "available only at fine salons"; and
- similar claims in English or other languages which may be read as suggesting availability for purchase exclusively in professional salons.

Plaintiffs will seek certification of the Settlement Class under Federal Rule of Civil Procedure 23(b)(2) for the above-mentioned injunctive relief but no monetary relief for the Settlement Class.

## What am I giving up in exchange for this benefit?

If the Settlement is approved by the Court, then Settlement Class members will release all equitable claims that this Settlement resolves, and they cannot bring a new class action lawsuit against L'Oréal about the Claims described above. The Court's Order will apply to Settlement Class members even if they have objected. However, Settlement Class members will not give up their right to file an individual lawsuit for their own for monetary damages, if any.

## Can I exclude myself from the Settlement?

Because the Settlement will benefit all Class members equally, you cannot exclude yourself from the Settlement Class or this Settlement.

## OBJECTING TO THE SETTLEMENT

You can tell the Court that you do not agree with all or some part of the Settlement.

### How do I tell the Court that I object to the Settlement?

If you are a Class member, you can object to the Settlement and give reasons why you think the Court should not approve it. To object to the Settlement, a Settlement Class Member must timely file a written statement of objection ("Objection") with the Court. The Objection must set forth:

    a.  title of the action [Richardson, et al., v. L'Oréal USA, Inc.];

    b.  the objector's full name, address, and telephone number;

    c.  all reasons for the objection;

    d.  the names of all attorneys representing the objector, if any;

    e.  the names of all attorneys representing the objector who will appear at the Fairness Hearing;

    f.  a list of all people the objector will call to testify at the Fairness Hearing, if any;

    g.  a statement stating whether the objector will appear and/or testify at the Final Fairness Hearing; and

    h.  the objector's signature or the signature of the objector's duly authorized attorney or other duly authorized representative (along with documentation setting forth such representations).

To be timely, the Objection in appropriate form must be filed with the Clerk of the United States District Court for the District of Columbia, twenty-one (21) days prior to the date of the Fairness Hearing ("Objection Deadline"), and also served on (i) Class Counsel: Clayton Halunen, Halunen & Associates, 80 South Eighth Street, Minneapolis, Minnesota 55402; and (ii) L'Oréal USA, Inc.'s Counsel: Frederick B. Warder III, Patterson Belknap Webb & Tyler LLP, 1133 Avenue of the Americas, New York, New York 10036. The Objection must be postmarked no later than Objection Deadline, or the Objection will not be valid and will not be considered by the Court.

## THE LAWYERS REPRESENTING YOU

The Court has approved the request of the following law firm to represent you and the other Class members: Halunen & Associates. These lawyers are called Class Counsel. If you want to be represented by your own lawyer, you may hire one at your expense.

### How will the lawyers be paid?

Class Counsel will request from the Court an award of attorneys' fees, costs and expenses, in an amount to be paid entirely by L'Oréal and not to exceed $950,000.00, for their work on this case. The $950,000.00 award shall include all fees, costs, and expenses for Class Counsel (and their employees, consultants, experts, and other agents) for the work performed in connection with this action. You will not be obligated to pay any attorneys' fees or costs to Class Counsel as a Class Member.

## How will the six Class Representatives be compensated?

Class Counsel will request that the Court approve payments to the Class Representatives in an amount not to exceed $1,000.00 for each Class Representative to reimburse the Class Representatives for their participation in this case on behalf of all Class Members.

## THE COURT'S HEARING TO CONSIDER APPROVAL OF THE SETTLEMENT

### When and where will the Court hold its hearing?

The Court will hold a Fairness Hearing to decide whether to approve the Settlement. You may attend and you may ask to speak at the hearing, but you do not have to do so. The Court will hold the hearing on _____ at __:__ __.m. in Courtroom ___ at the United States District Court for the District of Columbia, 333 Constitution Avenue, N.W., Washington, DC 20001. At the hearing, the Court will consider whether the Settlement is fair, reasonable and adequate.  If there are objections that were received by the Objection Deadline, the Court will then consider them.  If you submit a timely Objection, the Court will also listen to you speak at the hearing, if you so request.

### Do I have to attend the hearing?

No. If you send an objection, then you can, but are not obligated to, come to Court to discuss it. You may also pay your own lawyer to attend or discuss your objection, but that is not necessary.

### May I speak at the hearing?

You may ask the Court to speak at the hearing. To do so, you must send a letter saying that it is your "Notice of Intention to Appear" in Richardson et al. v. L'Oréal USA, Inc., Case No. 13-CV-508. Include your name, address, telephone number and signature. Your Notice of Intention to Appear must be postmarked no later than the Objection Deadline, and must be sent to the Clerk of Court, Class Counsel and L'Oréal USA, Inc.'s Counsel at their addresses above. You cannot speak at the hearing if your Notice of Intention to Appear is late.

## MORE INFORMATION

### How can I get more information?

This Notice summarizes the proposed Settlement. More details are available in the Settlement Agreement, which is available through a link on this website (www.lorealsettlement.com). You may also examine the Settlement Agreement and other documents related to the Settlement in the Court's file in the Clerk's Office at the United States District Court for the District of Columbia, 333 Constitution Avenue N.W., Washington, D.C. 20001, for more complete information about the details of the lawsuit and the proposed Settlement.

## ATTACHMENT TO NOTICE OF CLASS ACTION SETTLEMENT
## TERMS OF RELEASE

Upon the Effective Date, Plaintiffs and Class Members of the Settlement Class and each of their respective successors, assigns, legatees, heirs, and personal representatives (collectively, the "Releasing Parties") shall be deemed to have fully, finally and forever released, relinquished and discharged against L'Oréal and its direct and indirect parents, subsidiaries, affiliated and related entities, predecessors, successors and assigns, partners, privities, and any of L'Oréal's present and former shareholders, agents, attorneys, employees, consultants, officers and directors, representatives, and all persons acting by, through, under or in concert with L'Oréal (collectively, the "Released Parties") all manner of action, causes of action, claims, demands, rights, suits, obligations, debts, contracts, agreements, promises, liabilities, damages, charges, penalties, losses, costs, expenses and attorneys' fees, of any nature whatsoever, known or unknown claims, in law or equity, fixed or contingent, which the Releasing Parties have or may have against the Released Parties arising out of or relating to any of the acts, omissions or other conduct related L'Oréal's use of the Claims in connection with its labeling, advertising and/or marketing of the L'Oréal Products (the "Released Claims"), except that Class Members do not release L'Oréal with respect to any individual, as opposed to class-wide, claims for monetary relief arising from or related L'Oréal's use of the Claims in connection with its labeling, advertising and/or marketing of the L'Oréal Products in the United States. Each Class Member releases and waives any right to assert Released Claims on behalf of any entity, group or class, and/or on behalf of any individual other than himself or herself.

Plaintiffs and Class Members expressly and knowingly waive and relinquish, to the fullest extent permitted by law, all rights and benefits that they have under California Civil Code section 1542, or any similar provision under federal or state law in any other jurisdiction in the United States, which provides:

**A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS WHICH THE CREDITOR DOES NOT KNOW OR SUSPECT TO EXIST IN HIS FAVOR AT THE TIME OF EXECUTING THE RELEASE, WHICH IF KNOWN BY HIM MUST HAVE IMMEDIATELY AFFECTED HIS SETTLEMENT WITH THE DEBTOR.**

The Releasing Parties fully understand that the facts on which this Settlement Agreement is executed may be different from the facts now believed by the Releasing Parties and their counsel to be true, and they expressly accept and assume the risk of this possible difference in facts and agree that this Settlement Agreement remains effective despite any difference in facts. Further, the Releasing Parties agree that this waiver is an essential and material term of this release and the Settlement that underlies it and that without such waiver the Settlement would not have been agreed to by the Parties.

The precise definitions of the capitalized terms in the paragraph above can be found in the Settlement Agreement, which is available through a link on this website (www.lorealsettlement.com) and in the Court's file in the Clerk's Office at the United States District Court for the District of Columbia, 333 Constitution Avenue N.W., Washington, D.C. 20001.

# Exhibit B

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| ALEXIS RICHARDSON,<br>   2701 Connecticut Avenue NW, Apt. 100<br>   Washington DC, 20008;<br><br>JAY SANDLER,<br>   33 W Huron Street, Apt. 511<br>   Chicago, IL 60654;<br><br>LUBNA PESHIMAM,<br>   15 Eastern Drive<br>   West Windsor, NJ 08550,<br><br>TRACEY ANN BERTRAND,<br>   11301 NW 34th Place<br>   Sunrise, FL  33323,<br><br>MOLLIE KRENGEL,<br>   3420 W 29th Street<br>   Minneapolis, MN 55416,<br><br>and<br><br>NANCIE LIGON,<br>   64 Woodworth Lane<br>   Sonoma, CA 95476,<br><br>Individually and on Behalf of All Others<br>Similarly Situated,<br><br>       Plaintiffs,<br><br>   v.<br><br>L'OREAL USA, INC.,<br><br>       Defendant. | Case No. 13-CV-00508-JDB |

## FINAL ORDER AND JUDGMENT

Upon careful consideration of the Settlement Agreement, Plaintiffs' motion for final

approval of the class action settlement, Plaintiffs' motion for an award of attorneys' fees and

reimbursement of expenses to Class Counsel, and incentive awards to the Class Representatives, the various memoranda and other submissions to the Court, the Fairness Hearing held before this Court on _____ and the entire record herein, [and for the reasons explained in the accompanying Memorandum Opinion issued on this date,] the Court grants final approval of the Settlement as set forth in the parties' Settlement Agreement and upon the terms and conditions set forth in this Final Order and Judgment.

On _____, the Court entered an Order of Preliminary Approval that, among other things, (a) preliminarily certified a plaintiff class for settlement purposes only (the "Settlement Class") in accordance with the terms of the Settlement Agreement and with Fed. R. Civ. P. 23; (b) approved the form of notice to Settlement Class Members and the method of dissemination, and directed that appropriate notice of the Settlement be given to the Settlement Class; and (c) set a Fairness Hearing.

The notice to the Settlement Class ordered by the Court in its _____ Order has been provided, as attested to in the declaration of _____ filed with the Court on _____. On _____, a Fairness Hearing was held on whether the Settlement set forth in the Settlement Agreement was fair, reasonable, and adequate to the Settlement Class.  Having reviewed and considered the submissions with respect to the Settlement set forth in the Settlement Agreement, the various memoranda and other submissions to the Court, and the record in these proceedings, and having heard and considered the evidence presented by the parties, [and the objectors, and the arguments of counsel,] it is hereby

**ORDERED, ADJUDGED,** and **DECREED** that:

1.      Capitalized terms and phrases in this Final Order and Judgment shall have the same meaning as defined in the Settlement Agreement, unless otherwise defined herein.

2

2.    The Court has jurisdiction over this action, the parties, and all claims asserted in the action pending before this Court.

3.    The form, content, and method of dissemination of notice given to the Settlement Class were in full compliance with the Court's _____ Order of Preliminary Approval, the requirements of Fed. R. Civ. P. 23(e), and due process. The notice was adequate and reasonable, and constituted the best notice practicable under the circumstances. In addition, adequate notice of the proceedings and an opportunity to participate in the Fairness Hearing were provided to the Settlement Class.

4.    The Settlement Class is hereby certified. Pursuant to Rule 23 and the Court's _____ Order granting preliminary approval, the Settlement Class is defined as:

> all consumers nationwide who purchased L'Oréal Products for personal, family or household use on or after August 30, 2008. The Settlement Class excludes (i) purchasers of L'Oréal Products for re-sale, stylists and salon owners; (ii) L'Oréal, its officers, directors and employees; and its affiliates and affiliates' officers, directors and employees; (iii) Plaintiffs' Counsel and their employees; and (iv) judicial officers and their immediate family members and associated court staff assigned to the D.C. Action.

5.    Class Representatives and Class Counsel fairly and adequately represented the interests of the Settlement Class in connection with the Settlement set forth in the Settlement Agreement

6.    [All objections to the Settlement set forth in the Settlement Agreement have been carefully considered. With regard to those objections, they have been found either to be mooted by the Settlement or are rejected. The Court concludes that the Settlement is in all respects fair, adequate, and reasonable under the circumstances.]

7.    The Parties shall consummate the Settlement according to the terms of the Settlement Agreement, [including any modifications to the Settlement Agreement that have been

3

agreed upon by the Parties as set forth in the Settlement Agreement and submitted to this Court.] The Settlement Agreement, each and every term and provision thereof, and the ensuing modifications, shall be deemed incorporated herein as if explicitly set forth herein and shall have the full force and effect of an order of this Court.

8.    All claims in this action are hereby dismissed in their entirety and with prejudice upon entry of this Final Order and Judgment, with each side to bear its own fees and costs, except as otherwise provided for in the Settlement Agreement.

9.    The Court has considered the representations and arguments made at the Fairness Hearing, and reviewed Class Counsel's motion for attorneys' fees, costs, and expenses, and incentive awards to Class Representatives, [as well as the memoranda filed by objectors], and hereby awards attorneys' fees in the amount of $_____; costs and expenses in the amount of $_____; and incentive awards to Class Representatives in the amount of $1,000.00 each to Alexis Richardson, Nancie Ligon, Jay Sandler, Tracey Ann Bertrand, Lubna Peshimam, and Mollie Krengel. These amounts will be distributed in accordance with the terms of the Settlement Agreement. The Court authorizes Class Counsel to allocate and distribute said funds. Any dispute concerning said allocations shall be under the jurisdiction of this Court.

10.    Without affecting the finality of this Final Order and Judgment in any way, the Court retains continuing jurisdiction over the Parties and the Settlement Class for the administration, consummation, and enforcement of the terms of the Settlement Agreement.

11.    In the event the Effective Date set forth in the Settlement Agreement does not occur, this Final Order and Judgment shall be rendered null and void and shall be vacated and, in such event, as provided in the Settlement Agreement, this Final Order and Judgment and all orders entered in connection herewith shall be vacated and null and void.

4

**SO ORDERED**


DATED:_____, 2013          _____

                                        Honorable John D. Bates U.S.D.J.

5

6134913v.1

# Exhibit C

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| ALEXIS RICHARDSON,<br>    2701 Connecticut Avenue NW, Apt. 100<br>    Washington DC, 20008;<br><br>JAY SANDLER,<br>    33 W Huron Street, Apt. 511<br>    Chicago, IL 60654;<br><br>LUBNA PESHIMAM,<br>    15 Eastern Drive<br>    West Windsor, NJ 08550,<br><br>TRACEY ANN BERTRAND,<br>    11301 NW 34th Place<br>    Sunrise, FL  33323,<br><br>MOLLIE KRENGEL,<br>    3420 W 29th Street<br>    Minneapolis, MN 55416,<br><br>and<br><br>NANCIE LIGON,<br>    64 Woodworth Lane<br>    Sonoma, CA 95476,<br><br>Individually and on Behalf of All Others<br>Similarly Situated,<br><br>            Plaintiffs,<br><br>        v.<br><br>L'OREAL USA, INC.,<br><br>            Defendant. | Case No. 13-CV-00508-JDB |

## ORDER OF PRELIMINARY APPROVAL OF SETTLEMENT, CERTIFICATION OF SETTLEMENT CLASS, APPROVAL OF THE NOTICE PLAN, AND SCHEDULING A DATE FOR A FINAL FAIRNESS HEARING

1

Upon consideration of Plaintiffs' motion for preliminary approval, Plaintiffs' memorandum, [the motion hearing before this Court on _____,] and the entire record herein, [and for the reasons explained in the accompanying Memorandum Opinion issued on this date,] the Court will grant preliminary approval to the Settlement contained in the parties' Settlement Agreement upon the terms and conditions set forth in this Order. Capitalized terms and phrases in this Order shall have the same meaning as defined in the Settlement Agreement. Accordingly, it is hereby **ORDERED** that:

1.      Having made the findings set forth below, the Court hereby preliminarily certifies a plaintiff class for settlement purposes only in accordance with the terms of the Settlement Agreement (the "Settlement Class"). The Settlement Class is hereby defined for purposes of this action as:

> all consumers nationwide who purchased L'Oréal Products for personal, family or household use on or after August 30, 2008. The Settlement Class excludes (i) purchasers of L'Oréal Products for re-sale, stylists and salon owners; (ii) L'Oréal, its officers, directors and employees; and its affiliates and affiliates' officers, directors and employees; (iii) Plaintiffs' Counsel and their employees; and (iv) judicial officers and their immediate family members and associated court staff assigned to this action.

As provided for in the Settlement Agreement, if the Court does not grant final approval of the Settlement set forth in the Settlement Agreement, or if the Settlement set forth in the Settlement Agreement is terminated in accordance with its terms, then the Settlement Agreement, and the certification of the Settlement Class provided for herein, will be vacated and this action shall proceed as though the Settlement Class had never been certified, without prejudice to any party's position on the issue of class certification or any other issue.

2.      The Settlement Class is so numerous that joinder of all members is impracticable.

2

3.     The Court preliminarily finds, based on the terms of the Settlement described in the Settlement Agreement, that:

     a.  There are questions of law and fact common to the Settlement Class;

     b.  The claims of Class Representatives are typical of the claims of the members of the Settlement Class;

     c.  The Class Representatives and Class Counsel will fairly and adequately represent the interests of the Settlement Class.  There are no conflicts of interest between the Class Representatives and members of the Settlement Class;

     d.  Plaintiffs' claims challenge the L'Oréal Product labels, and the Complaint primarily seeks injunctive relief.  Plaintiffs are asserting that L'Oréal has acted or refused to act on grounds that apply generally to the class. Final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole.

4.     Accordingly, the Court hereby preliminarily certifies the Settlement Class, for settlement purposes only, pursuant to Fed. R. Civ. P. 23.

5.     The Court preliminarily approves the Settlement set forth in the Settlement Agreement as being within the range of fair, reasonable, and adequate, within the meaning of Rule 23 and the Class Action Fairness Act of 2005 ("CAFA"), subject to final consideration at the Fairness Hearing provided for below.

6.     The Court appoints Halunen & Associates and The Mehdi Firm as counsel for the Settlement Class ("Class Counsel").

7.     Alexis Richardson, Nancie Ligon, Jay Sandler, Tracey Ann Bertrand, Lubna Peshimam, and Mollie Krengel are appointed as Class Representatives.

8.    A hearing (the "Fairness Hearing") shall be held before this Court on _____ at __:__ __.m., in Courtroom __ of the United States Courthouse, Washington, D.C. to determine: (a) whether the Settlement set forth in the Settlement Agreement is fair, reasonable, adequate, and in the best interests of the Settlement Class; (b) whether a Final Order and Judgment, as provided for in the Settlement Agreement, should be entered granting final approval of the Settlement; and (c) whether, and in what amount, attorneys' fees, costs, and expenses, and Representative Plaintiff incentive awards should be paid to the Class Counsel for distribution. The Court may adjourn and/or continue the Fairness Hearing without further notice to Class Members.

9.    The Court approves as to form and content the notice provisions as set forth in the Settlement Agreement.

10.   L'Oréal has complied with the obligation to give notice under CAFA, 28 U.S.C. § 1715, in connection with the proposed Settlement.

11.   As soon as is possible and in any event within 14 days after entry of this Order, L'Oréal will submit the insertion order for the Summary Notice to be published in the legal notices section of USA Today. Notice shall be issued consistent with the provisions set forth in the Settlement Agreement.

12.   The Court finds that compliance with the notice provisions set forth in the Settlement Agreement is the best notice practicable under the circumstances, and constitutes due and sufficient notice of this Order to all persons entitled thereto and is in full compliance with the requirements of Rule 23, applicable law, and due process.

13.   Prior to the Fairness Hearing, the Parties shall cause to be filed with the Court an appropriate affidavit or declaration with respect to the completion of notice.

4

6134936v.1

14.    To object to the Settlement, the motion for final approval, the motion for attorneys' fees, costs, and expenses, or for an incentive award, a Settlement Class Member must timely file a written statement of objection ("Objection') with the Court. The Objection must set forth:

    a.   title of the action [Richardson, et al., v. L'Oréal USA, Inc.];

    b.   the objector's full name, address, and telephone number;

    c.   all reasons for the Objection;

    d.   the names of all attorneys representing the objector, if any;

    e.   the names of all attorneys representing the objector who will appear at the Fairness Hearing;

    f.   a list of all people the objector will call to testify at the Fairness Hearing, if any;

    g.   a statement stating whether the objector will appear and/or testify at the Fairness Hearing; and

    h.   the objector's signature or the signature of the objector's duly authorized attorney or other duly authorized representative (along with documentation setting forth such representations).

15.    To be timely, the Objection in appropriate form must be filed with the Clerk of the United States District Court for the District of Columbia, twenty-one (21) days prior to the date of the Fairness Hearing ("Objection Deadline"), and also served on (i) Class Counsel: Clayton Halunen, Halunen & Associates, 80 South Eighth Street, Minneapolis, Minnesota 55402; and (ii) L'Oréal USA, Inc.'s Counsel: Frederick B. Warder III, Patterson Belknap Webb & Tyler LLP, 1133 Avenue of the Americas, New York, New York 10036. The Objection must

5

be postmarked no later than Objection Deadline, or the Objection will not be valid and will not be considered by the Court.

16.     All discovery and pretrial proceedings in this litigation, other than the disclosures provided for in the Settlement Agreement, are stayed and suspended until further order of the Court.

17.     Neither the Settlement Agreement nor the Settlement contained therein, nor any act performed or document executed pursuant to or in furtherance of the Settlement Agreement or the Settlement: (a) is or may be deemed to be, or may be used as an admission of, or evidence of, the validity or lack thereof of any Released Claims, or of any wrongdoing or liability of L'Oréal; or (b) is or may be deemed to be, or may be used as an admission of, or evidence of, any fault or omission of L'Oréal, in any civil, criminal, or administrative proceeding in any court, administrative agency, or other tribunal

18.     In the event the Court does not grant final approval of the Settlement Agreement or the Settlement set forth in the Settlement Agreement is terminated in accordance with its terms, the Parties shall be restored to their respective positions in the litigation, except that all scheduled litigation deadlines shall be reasonably extended so as to avoid prejudice to any Party or litigant.  In such event, the terms and provisions of the Settlement Agreement shall have no further force and effect with respect to the Parties and shall not be used in the litigation or in any other proceeding for any purpose, and any judgment or order entered by the Court in accordance with the terms of the Settlement Agreement shall be treated as vacated, *nunc pro tunc.*

19.     The Court sets the following schedule for the Fairness Hearing and the actions which must precede it:

6

a.  Within 14 days after entry of this Order, L'Oréal will submit the insertion order for the Summary Notice to be published in the legal notices section of USA Today for one week in the Monday-Thursday edition at a size of 1/8 page.

b.  Representative Plaintiffs shall file their Motion for Final Approval, Motion for Attorneys' Fees, Costs and Expenses, and Motion for Incentive Award by no later than _____.

c.  Settlement Class Members must file any objections to the Settlement, the motion for final approval, the motion for attorneys' fees, costs and expenses and/or the motion for incentive award by no later than _____.

d.  Reply briefs may be filed in response to any objections by no later than _____.

e.  The Fairness Hearing will take place on _____ at __:__ _.m. at the United States District Court for the District of Columbia, in Courtroom____.

**SO ORDERED**

DATED: _____, 2013          _____
                                           Honorable John D. Bates, U.S.D.J.

7

# Exhibit D

## LEGAL NOTICE OF PROPOSED CLASS ACTION SETTLEMENT

**This notice may concern you and your legal rights if you purchased hair care products from one or more of the following L'Oréal USA, Inc. brands: Matrix®, Kérastase®, Redken®, and Pureology®**

United States District Court for the District of Columbia
Richardson et al. v. L'Oréal USA, Inc., Case No. 13-CV-508
There is a proposed class action settlement ("Settlement") between L'Oréal USA, Inc. ("L'Oréal") and certain purchasers of hair care products for in-home use that are manufactured, marketed or sold by L'Oréal under the Matrix®, Kérastase®, Redken® and Pureology® brand names ("the L'Oréal Products").

### WHAT IS THE LAWSUIT ABOUT?

Plaintiffs allege that the L'Oréal Products were falsely and misleadingly marketed as suggesting availability for purchase only in professional salons when consumers can purchase these products in retail outlets where salon services are not available.

*L'Oréal denies any wrongdoing and any liability whatsoever, and the issuance of this Notice is not an expression of the Court's opinion on the merit or lack of merit of Plaintiffs' claims in this action.*

### WHAT ARE THE SETTLEMENT TERMS?

L'Oréal has agreed to remove from its U.S. labeling and advertising claims suggesting the L'Oréal Products are available for purchase only in professional salons (the "Claims"). Plaintiffs will seek certification of a Federal Rule of Civil Procedure 23(b)(2) class seeking injunctive relief but no monetary relief for the Settlement Class.

### WHO IS INCLUDED?

The "Settlement Class" includes all consumers nationwide who purchased the L'Oréal Products for in-home use on or after August 30, 2008. Plaintiff-named Class Representatives include: Alexis Richardson, Nancie Ligon, Jay Sandler, Tracey Ann Bertand, Lubna Peshimam, and Mollie Krengel.

### WHO REPRESENTS ME?

The Court has appointed Class Counsel to represent the Class. Class Counsel will request from the Court an award of attorneys' fees, costs and expenses, in an amount to be paid by L'Oréal and not to exceed $950,000, for their work on this case. Class Counsel will request that the Court approve payments to the Class Representatives in an amount not to exceed $1,000 each.

### WHAT AM I GIVING UP IN EXCHANGE FOR THIS BENEFIT?

If the Court approves the Settlement, you cannot bring a new class action lawsuit regarding the Claims, and the Court's order will bind you even if you have objected. You will release all equitable claims that this Settlement resolves, but you will not give up your right to file an individual lawsuit for your own monetary damages, if any. More details on the terms of the release are available at www.lorealsettlement.com.

### WHAT ARE YOUR OPTIONS?

If you are a Class Member, you can object to the Settlement by sending an objection to the Court, L'Oréal's counsel and Class Counsel pursuant to the instructions provided in the Full Notice, available at www.lorealsettlement.com. To be considered, your objection must be postmarked no later than _____.

### WILL THE COURT APPROVE THE PROPOSED SETTLEMENT?

The Court granted preliminary approval of the Settlement and will hold a Fairness Hearing on _____ in the District Court for the District of Columbia at 333 Constitution Avenue N.W., Washington, D.C. 20001 to consider whether the proposed Settlement is fair, reasonable and adequate and to consider Class Counsel's request for attorneys' fees, costs and expenses, and payments to Class Representatives.

### WHERE CAN I OBTAIN MORE INFORMATION?

You can view the court file in the Court Clerk's Office at the address above or visit www.lorealsettlement.com. Please Do Not Contact The Court Or The Clerk Of The Court Concerning This Notice. By Order of the Court Dated: _____

THE HONORABLE JOHN D. BATES
United States District Court Judge for the District of Columbia

# Exhibit E

# Patterson Belknap Webb & Tyler LLP

1133 Avenue of the Americas    New York, NY 10036-6710    212.336.2000    fax 212.336.2222    www.pbwt.com

[Date]

Frederick B. Warder III
Partner
(212) 336-2121
fbwarder@pbwt.com

By Certified Mail

> Re:  ***Richardson et al. v. L'Oréal USA, Inc.*, Case No. 13-CV-508—Class Action Settlement Notification**

Dear Mr./Madam Attorney General:

I write on behalf of L'Oréal USA, Inc. ("L'Oréal") to provide notice, pursuant to the Class Action Fairness Act of 2005, 28 U.S.C. § 1711 *et seq.*, of a proposed class action settlement between plaintiffs and defendant L'Oréal in the above-referenced litigation. The proposed settlement contemplates injunctive relief only pursuant to FRCP 23(b)(2), with no monetary payments to class members. The proposed settlement was submitted for preliminary approval to the District Court for the District of Columbia (the "Court") on [date].

Pursuant to 28 U.S.C. § 1715(b), I have enclosed the following materials:

- Complaint: Richardson et al. v. L'Oréal USA, Inc., No. 13-cv-508 (JGB) (D. D.C.) (Filed April 15, 2013).

- Motion for Preliminary Approval of Settlement, including Settlement Agreement and Legal Notices of Proposed Settlement of Class Action to class members (Filed [date]).

- Attorney's Declaration in Support of Motion for Preliminary Approval of Settlement (Filed [date]).

- Proposed Order Granting Preliminary Approval of Proposed Class Settlement (Filed [date]).

- At present, there are no scheduled judicial hearings on the proposed settlement.  [to be confirmed]

For purposes of the proposed settlement, the class members are purchasers of shampoo, conditioner and styling products for in-home use that were manufactured, marketed or sold by L'Oréal under the Matrix®, Kérastase®, Redken® and Pureology® brand names ("the L'Oréal Products") from August 30, 2008 to the present. For reasons discussed in further detail in the aforementioned materials and below, L'Oréal is unable to provide, pursuant to § 1715(b)(7), the names of class members who reside in each State or a reasonable estimate of the number of class members residing in each State.

6134956v.1

\_\_\_, 2013
Page 2

Only approximately 1% of L'Oréal's sales of the L'Oréal Products are made directly to consumers (i.e., potential class members). The vast majority of L'Oréal's sales of the L'Oréal Products are made to distributors and distributor stores, which sell the L'Oréal Products to professional salons and stylists for in-salon use or for resale to consumers. Because the vast majority of L'Oréal's sales of the L'Oréal Products are not to consumers, L'Oreal is unable either to provide the names of potential class members residing in each State or to estimate how many potential class members reside in each State. L'Oréal's inability to identify or estimate numbers of class members residing in each State is also a product of its inability to determine the extent to which sales of the L'Oréal Products are to first time purchasers versus repeat purchasers. Finally, because the proposed settlement contemplates injunctive relief only, with no payments to class members (other than incentive payments to the six named class representatives), L'Oréal is unable to provide the estimated proportionate share of the value of the claims of each class member in relation to the settlement.

Please do not hesitate to contact me if you require additional information.

Best regards,

Frederick B. Warder III

**The Hon. Eric H. Holder, Jr.**
Attorney General of the United States
U.S. Department of Justice
950 Pennsylvania Avenue, NW
Washington, DC 20530-0001

**The Hon. Luther J. Strange**
Attorney General of Alabama
P.O. Box 300152
Montgomery, AL 36130

**The Hon. Michael C. Geraghty**
Attorney General of Alaska
P.O. Box 110300
Juneau, AK 99811-0300

**The Hon. Afoa Leulumoega Lutu**
Attorney General of American Samoa
Executive Office Building, 3rd Floor
P.O. Box 7
Pago Pago, American Samoa 96799

\_\_\_, 2013
Page 3

**The Hon. Thomas C. Horne**
Attorney General of Arizona
1275 West Washington St.
Phoenix, AZ  85007

**The Hon. Dustin McDaniel**
Attorney General of Arkansas
323 Center Street, Suite 200
Little Rock, AR 72201-2610

**The Hon. Kamala D. Harris**
Attorney General of California
1300 "I" Street
Sacramento, CA  95814-2919

**The Hon. John W. Suthers**
Attorney General of Colorado
1525 Sherman Street, 7th Floor
Denver, CO  80203

**The Hon. George C. Jepsen**
Attorney General of Connecticut
55 Elm Street
Hartford, CT  06106

**The Hon. Irvin B. Nathan**
Attorney General of the District of Columbia
441 4th Street NW
Washington, DC  20001

**The Hon. Joseph R. Biden, III**
Attorney General of Delaware
Carvel State Office Building
820 North French Street
Wilmington, DE  19801

**The Hon. Pamela J. Bondi**
Attorney General of Florida
The Capitol
Plaza Level One
Tallahassee, FL  32399-1050

6134956v.1

_____, 2013
Page 4

**The Hon. Samuel S. Olens**
Attorney General of Georgia
40 Capitol Square, SW
Atlanta, GA  30334

**The Hon. Leonardo M. Rapadas**
Attorney General of U.S. Territory of Guam
287 West O'Brien Drive
Hagatna, GU  96910

**The Hon. David M. Louie**
Attorney General of Hawaii
425 Queen Street
Honolulu, HI  96813

**The Hon. Lawrence G. Wasden**
Attorney General of Idaho
700 W. Jefferson Street, Suite 210
P.O. Box 83720
Boise, ID  83720-0010

**The Hon. Lisa Madigan**
Attorney General of Illinois
100 West Randolph Street
Chicago, IL 60601

**The Hon. Gregory F. Zoeller**
Attorney General of Indiana
Indiana Government Center South
302 West Washington Street, 5th Floor
Indianapolis, IN  46204

**The Hon. Thomas J. Miller**
Attorney General of Iowa
1305 E. Walnut Street
Des Moines, IA  50319

**The Hon. Derek Schmidt**
Attorney General of Kansas
120 Southwest 10th Ave., 2nd Floor
Topeka, KS  66612

\_\_\_, 2013
Page 5

**The Hon. Jack Conway**
Attorney General of Kentucky
Capitol Suite 118
700 Capitol Avenue
Frankfort, KY  40601-3449

**The Hon. James D. Caldwell**
Attorney General of Louisiana
P.O. Box 94095
Baton Rouge, LA  70804-9005

**The Hon. Janet T. Mills**
Attorney General of Maine
6 State House Station
Augusta, ME  04333

**The Hon. Douglas F. Gansler**
Attorney General of Maryland
200 Saint Paul Place
Baltimore, MD  21202-2022

**The Hon. Martha Coakley**
Attorney General of Massachusetts
ATTN:  CAFA Coordinator/General Counsel's Office
1 Ashburton Place
Boston, MA  02108-1518

**The Hon. William D. Schuette**
Attorney General of Michigan
G. Mennen Williams Building, 7th Floor
525 W. Ottawa St.
P.O. Box 30212
Lansing, MI  48909

**The Hon. Lori R. Swanson**
Attorney General of Minnesota
1400 Bremer Tower
445 Minnesota Street
St. Paul, MN  55101

6134956v.1

\_\_\_, 2013
Page 6

**The Hon. James Matthew Hood**
Attorney General of Mississippi
P.O. Box 220
Jackson, MS 39205

**The Hon. Chris Koster**
Attorney General of Missouri
Supreme Court Building
207 W. High St.
P.O. Box 899
Jefferson City, MO  65102

**The Hon. Tim Fox**
Attorney General of Montana
215 N. Sanders
P.O. Box 201401
Helena, MT  59620-1401

**The Hon. Jon Bruning**
Attorney General of Nebraska
2115 State Capitol
Lincoln, NE  68509

**The Hon. Catherine Cortez Masto**
Attorney General of Nevada
100 North Carson Street
Carson City, NV  89701-4717

**The Hon. Michael A. Delaney**
Attorney General of New Hampshire
Department of Justice
33 Capitol Street
Concord, NH  03301

**The Hon. Jeffrey S. Chiesa**
Attorney General of New Jersey
Richard J. Hughes Justice Complex
25 Market Street
P.O. Box 080
Trenton, NJ  08625

____, 2013
Page 7

**The Hon. Gary K. King**
Attorney General of New Mexico
P.O. Drawer 1508
Santa Fe, NM  87504-1508

**The Hon. Eric T. Schneiderman**
Attorney General of New York State
The Capitol
Albany, NY  12224-0341

**The Hon. Roy A. Cooper**
Attorney General of North Carolina
9001 Mail Service Center
Raleigh, NC  27699-9001

**The Hon. Wayne Stenehjem**
Attorney General of North Dakota
State Capitol
600 East Boulevard Avenue, Department 125
Bismarck, ND  58505

**The Hon. Joey Patrick San Nicolas**
Acting Attorney General Northern Mariana Islands
Administrative Building
P.O. Box 10007
Saipan MP, Northern Mariana Islands  96950-8907

**The Hon. Richard Michael DeWine**
Attorney General of Ohio
30 East Broad Street
14th Floor
Columbus, OH  43215

**The Hon. E. Scott Pruitt**
Attorney General of Oklahoma
313 Northeast 21st Street
Oklahoma City, OK  73105

**The Hon. Ellen F. Rosenblum**
Attorney General (Interim) of Oregon
Department of Justice
1162 Court Street, NE
Salem, OR  97301-4096

6134956v.1

____, 2013
Page 8


**The Hon. Kathleen Kane**
Attorney General of Pennsylvania
Strawberry Square
16th Floor
Harrisburg, PA  17120

**The Hon. Luis Sánchez Betances**
Attorney General Justice Department
Office of the Governor
Commonwealth of Puerto Rico
G.P.O. Box 902192
San Juan, PR  00902-9192

**The Hon. Peter F. Kilmartin**
Attorney General of Rhode Island
150 South Main Street
Providence, RI 02903

**The Hon. Alan McCrory Wilson**
Attorney General of South Carolina
P.O. Box 11549
Columbia, SC  29211

**The Hon. Martin J. Jackley**
Attorney General of South Dakota
1302 East Highway 14, Suite 1
Pierre, SD  57501-8501

**The Hon. Robert E. Cooper, Jr.**
Attorney General of Tennessee
P.O. Box 20207
Nashville, TN  37202-0207

**The Hon. Greg Abbott**
Attorney General of Texas
P.O. Box 12548
Austin, TX  78711-2548

**The Hon. John Swallow**
Attorney General of Utah
PO Box 142320
Salt Lake City, UT  84114-2320

_____, 2013
Page 9


**The Hon. William H. Sorrell**
Attorney General of Vermont
Pavilion Office Building
109 State Street
Montpelier, VT  05609-1001

**The Hon. Vincent F. Frazier**
Attorney General, Virgin Islands of the U.S.
GERS Building, 2nd Floor
34-38 Kronprindsens Gade
St. Thomas, VI  00802

**The Hon. Kenneth T. Cuccinelli, II**
Attorney General of Virginia
900 East Main Street
Richmond, VA  23219

**The Hon. Bob Furguson**
Attorney General of Washington
1125 Washington Street SE
PO Box 40100
Olympia, WA  98504-0100

**The Hon. Patrick Morrisey**
Attorney General of West Virginia
State Capitol Complex
1900 Kanawha Boulevard, East
Charleston, WV  25305

**The Hon. J.B. Van Hollen**
Attorney General of Wisconsin
P.O. Box 7857
Madison, WI  53707-7857

**The Hon. Gregory A. Phillips**
Attorney General of Wyoming
123 Capitol Building
200 W. 24th Street
Cheyenne, WY  82002


Enclosures