UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| ALEXIS RICHARDSON, et al., individually and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>L'ORÉAL USA, INC.,<br><br>Defendant. | Civil Action No. 13-508  (JDB) |

## MEMORANDUM OPINION

In this case, plaintiffs allege that defendant L'Oréal USA, Inc., falsely and deceptively labeled several products as available exclusively in salons. The parties have moved for preliminary approval of a proposed settlement and preliminary certification of the settlement class. After careful consideration of the supporting memorandum and the accompanying exhibits, the Court will grant the motion for preliminary approval of the settlement and preliminary certification of the settlement class.

## BACKGROUND

Plaintiffs filed this action on April 15, 2013, alleging that defendant L'Oréal falsely and deceptively labeled its Matrix Biolage, Redken, Kérastase, and Pureology products as available only in salons when the products can be purchased in non-salon retail establishments including Target, Kmart, and Walgreens. See Compl. [Docket Entry 1] ¶¶ 1, 29 (Apr. 15, 2013). Plaintiffs allege that the salon-only label implies a superior quality product and builds a cachet that allows L'Oréal to demand a premium price. See id. ¶ 27. Plaintiffs acknowledge that L'Oréal has developed a campaign to fight the diversion—i.e., the sale of salon-only products through stores

1

that do not have a salon—for each of the product lines at issue in this litigation. See id. ¶¶ 30-37. But plaintiffs allege that, despite L'Oréal's efforts, the products are available in non-salon establishments, and argue that L'Oréal's labeling and advertising for these products is hence deceptive and misleading. See id. ¶ 46.

Soon after filing this case, the parties filed a motion for preliminary approval of their proposed settlement. The terms of the proposed Settlement Agreement include the following:

- Settlement Class: A Settlement Class of "all consumers nationwide who purchased the L'Oréal Products for personal, family or household use on or after August 30, 2008." The Class excludes a few specific categories of consumers, such as those who purchased the products for resale, stylists, salon owners, those employed by L'Oréal or by plaintiffs' counsel, and Court staff connected to this action. See Proposed Settlement Agreement [Docket Entry 9-2] ¶ 1.13 (May 15, 2013).

- Relief: The settlement provides for injunctive relief only. L'Oréal will remove the contested claims from U.S. advertising and from labeling on products for U.S. distribution, except for certain products also sold or distributed in European countries using the same packaging; L'Oréal will not use the claims for at least five years, and, after five years, it may resume using the claims in markets with a 60% reduction from 2012 levels of non-salon sales; L'Oréal will cease manufacturing labels for U.S. products that carry the claims and will remove the claims from websites and promotion materials shortly after the agreement becomes effective, but it will not destroy products or product packaging in its inventory. Id. ¶ 2.4.

- Treatment of Class Representatives: Class representatives will petition for an incentive award of no more than $1000 each. Id. ¶ 2.5.

- Attorneys' Fees: L'Oréal will not oppose an application by plaintiffs' counsel for attorneys' fees, costs, and expenses up to $950,000. The Agreement provides that the award of fees is separate from settlement; if the Court approves only a lower fee award, the remainder of the settlement will remain binding. Id. ¶ 2.6.

- Notice: Because L'Oréal lacks records to identify the vast majority of consumers who purchased the relevant products and where such purchases were made, the parties will publish a short-form notice in the legal notices section of USA Today for one week in the Monday-Thursday edition. The notice will refer proposed class members to a comprehensive website that will contain additional information, including a copy of the proposed agreement. Objections by class members will have to be filed no fewer than 30 days prior to the Fairness Hearing. Id. ¶¶ 3.2, 3.5.

- Release: Upon final approval of the settlement, class members will release L'Oréal from liability for the alleged conduct or any related conduct, except as to individual (as opposed to class-wide) claims for monetary relief. Id. ¶ 4.6.

## ANALYSIS

### I. Preliminary Approval of Proposed Settlement

"Preliminary approval of a proposed settlement to a class action lies within the sound discretion of the court." See In re Vitamins Antitrust Litig., No. 99-197, 1999 WL 1335318, at *5 (D.D.C. Nov. 23, 1999). The Court will generally grant preliminary approval of a class action settlement if it appears to fall "within the range of possible approval" and "does not disclose

grounds to doubt its fairness or other obvious deficiencies, such as unduly preferential treatment of class representatives or of segments of the class, or excessive compensation for attorneys." Trombley v. Nat'l City Bank, 759 F. Supp. 2d 20, 23 (D.D.C. 2011) (internal quotation marks omitted); see also Newberg on Class Actions, § 11:25 (4th ed. 2013). The Court will consider (1) whether the proposed settlement appears to be "the product of serious, informed, non-collusive negotiations," (2) whether it falls within the range of possible judicial approval, and (3) whether it has any obvious deficiencies, such as granting unduly preferential treatment. See In re Vitamins Antitrust Litig., No. 99-197, 1999 WL 1335318, at *5 (internal quotation marks omitted).

      The Court will first consider the process that resulted in the proposed agreement. "When a settlement is negotiated prior to class certification . . . it is subject to a higher degree of scrutiny in assessing its fairness." D'Amato v. Deutsche Bank, 236 F.3d 78, 85 (2d Cir. 2001); see also In re Vitamins Antitrust Litig., 305 F. Supp. 2d 100, 105 (D.D.C.2004) (observing that settlement must not "come too early to be suspicious"). These considerations pose no obstacle here. Although the action's history in this Court has been short, the litigation history between these parties as to these claims is substantial, and has allowed time for meaningful arm's-length negotiations. The plaintiffs originally filed some of these claims in the Northern District of California. See Ligon v. L'Oréal USA, Inc., No. 12-4585 (N.D. Cal. Aug. 30, 2012). They then engaged in negotiations. See Halunen Decl. [Docket Entry 9-3] ¶ 4 (May 15, 2013). In the course of those negotiations, L'Oréal provided plaintiffs with extensive documents and information relating to its anti-diversion and labeling practices. Id. Plaintiffs' counsel examined prices charged and conducted legal and factual research to determine the most reasonable and attainable resolution. Id. ¶¶ 5-6. The parties attended an in-person mediation session before the Honorable

Ronald Sabraw and finalized the agreement's details in telephonic mediation sessions over the ensuing weeks. Id. ¶ 7. They worked out attorneys' fees and costs through a second in-person mediation session and additional settlement discussions. Id. ¶ 8. Pursuant to the tentative agreement, plaintiffs voluntarily dismissed the California action and filed their claims in this Court. See Settlement Agreement ¶¶ D-E. Based on this process, the Court finds that informal discovery gave counsel "sufficient information . . . to reasonably assess the risks of litigation vis-à-vis the probability of success and range of recovery," Trombley, 759 F. Supp. 2d at 26 (internal quotation marks omitted), and that the proposed Settlement Agreement is "the product of serious, informed, non-collusive negotiations," In re Vitamins Antitrust Litig., No. 99-197, 1999 WL 1335318, at *5 (internal quotation marks omitted).

   Turning, then, to the substance of the agreement, the Court asks whether it falls within the range of possible approval. Both parties recognize substantial risks of proceeding with the litigation, and substantial costs, in terms of both time and money, in doing so. Although the proposed settlement provides only for equitable relief, plaintiffs assert that this limit reflects the risk they face in attempting to certify a damages class. First, assessing the value of the salon-only claims to consumers would be difficult, and L'Oréal has never attempted to do so. Second, assessing damages on a class-wide basis would be even more difficult—the information provided during the negotiation process revealed substantial price variations among retailers and in different regions, and indicated that non-salon retailers often sell the products at a lower price than do salon retailers, making damages to those purchasing the product in non-salon establishments difficult to analyze. Due to the valuation difficulty, plaintiffs' counsel represents that proving monetary damages for a class of consumers would be challenging. "Opinion of . . . experienced and informed counsel should be afforded substantial consideration by a court in

evaluating the reasonableness of a proposed settlement." In re Lorazepam & Clorazepate Antitrust Litig., No. 99-0790, 2003 WL 22037741, *6 (D.D.C. June 16, 2003). The Court affords counsel's assessment such deference here. And class members will retain their right to seek damages in individual actions, dispelling many concerns about foregone payments. In these circumstances, an equitable-relief-only settlement may be approved. The equitable relief that is contemplated, moreover, directly addresses plaintiffs' allegations by resolving the allegedly false and deceptive behavior. The Court hence finds that the proposed settlement lies within the range of possible approval.

Finally, the agreement has no obvious deficiencies. The nominal incentive payments of up to $1000 for the lead plaintiffs appear reasonable. See Radosti v. Envision EMI, LLC, 760 F. Supp. 2d 73, 79 (D.D.C. 2011) ("[I]ncentive awards are not uncommon in common-fund-type class actions and are used to compensate plaintiffs for the services they provided and the risks they incurred during the course of the class action litigation."). The proposed maximum award of $950,000, for attorneys' fees, costs, and expenses, while high, is not outside the range of possible approval given the parties' agreement as to the amount. Nor is approval of the full fee figure a condition of the settlement—pursuant to the agreement's terms, if the Court finds a reduced fee award appropriate, the remainder of the settlement will continue to bind the parties and class members. See Settlement Agreement ¶ 2.6(c). The Settlement Agreement hence passes muster under preliminary review.

## CONCLUSION

For the reasons stated above, the Court will preliminarily approve the proposed settlement and class certification. The Court will also set a Fairness Hearing for October 11, 2013, at 9:00 a.m. A separate Order will be issued on this date.

                                                /s/  
                                      JOHN D. BATES  
                                United States District Judge

Dated: June 27, 2013