**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| ALEXIS RICHARDSON, JAY SANDLER, LUBNA PESHIMAM, TRACEY ANN BERTRAND, MOLLIE KRENGEL, AND NANCIE LIGON, Individually and on Behalf of All Others Similarly Situated | Case No. 13-CV-00508-JDB<br><br>The Honorable John D. Bates |
| Plaintiffs, | |
| v. | DATE:   October 11, 2013<br>TIME:    9:00 a.m.<br>JUDGE:  Honorable John D. Bates |
| L'OREAL USA, INC., | |
| Defendant. | |

<u>**PLAINTIFFS' MEMORANDUM OF LAW IN SUPPORT OF UNOPPOSED MOTION FOR AN AWARD OF ATTORNEYS' FEES, REIMBURSEMENT OF EXPENSES TO CLASS COUNSEL AND INCENTIVE AWARD PAYMENTS TO THE CLASS REPRESENTATIVES**</u>

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ...................................................................................... ii

I.    INTRODUCTION .................................................................................... 1

II.   FACTUAL BACKGROUND AND PROCEDURAL HISTORY .................................. 5

    A.   L'Oréal's Salon-Only Labeling ................................................................. 5

    B.   Procedural History and Discovery ............................................................ 6

    C.   The Parties Engaged in Protracted, Arm's-Length Negotiations ............................ 10

III.  THE COURT SHOULD AWARD PLAINTIFFS THE FULL AMOUNT OF ATTORNEYS' FEES AS NEGOTIATED IN CONJUNCTION WITH THE SETTLEMENT ...................................................................................... 12

    A.   Applicable Standard of Law ...................................................................... 12

    B.   The Number of Hours Expended by Class Counsel is Reasonable ......................... 14

    C.   The Hourly Rate Used by Class Counsel Is Reasonable ................................... 15

    D.   Class Counsel's Multiplier is Reasonable and Merited ..................................... 18

IV.   PLAINTIFFS' EXPENSES ARE REASONABLE AND WERE NECESSARILY INCURRED TO ACHIEVE THE BENEFIT OBTAINED ON BEHALF OF THE CLASS ...................................................................................... 21

V.    THE COURT SHOULD APPROVE THE INCENTIVE AWARDS OF $1,000 FOR EACH NAMED PLAINTIFF .................................................................... 21

VI.   CONCLUSION .................................................................................... 23

ECF CERTIFICATION .......................................................................................... 25

i

# TABLE OF AUTHORITIES

**Page**

## CASES

*Bezio v. Gen. Elec. Co.*,
  655 F. Supp. 2d 162, 168 (N.D.N.Y. 2009)............................................................ 13

*Blum v. Stenson*,
  465 U.S. 886, 897 (1984) ...................................................................................... 18

*Boeing Co. v. Van Germert*,
  444 U.S. 472, 478 (1980). .................................................................................... 12

*Cantor v. Detroit Edison Co.*,
  86 F.R.D. 752, 757-58 (E.D. Mich. 1980)............................................................ 19

*Cobell v. Norton*,
  407 F. Supp. 2d 140, 177 (D.D.C. 2005).............................................................. 13

*Cobell v. Salazar*,
  679 F.3d 909, 922 (D.C. Cir. 2012)...................................................................... 22

*Cohen v. Warner Chilcott Pub. Ltd., Co.*,
  522 F. Supp. 2d 105, 124 (D.D.C. 2007).......................................................... 4, 22

*Copeland v. Marshall*,
  641 F.2d. 880, 907 (D.C. Cir. 1980) .................................................................... 19

*Covington v. D.C.*,
  57 F.3d 1101, 1107 (D.C. Cir. 1995).................................................. 3, 13, 14, 16

*Ebbert v. Nassau Cty.*,
  No. CV-05-5445(AKT), 2011 WL 6826121, AT *14 (E.D.N.Y Dec. 22, 2011) .................. 13

*Hensley v. Eckerhart*,
  461 U.S. 424, 433 (1983) .............................................................................. 13, 18

*In re Arizona Escrow Fee Antitrust Litig*,
  Case No. 80-840A PHX CAM, 1982 WL 1938 (D. Ariz. Sept. 22, 1982) ............. 19

*In re Bann Co. Sec. Litig.*,
  288 F. Supp. 2d 14, 19-20 (D.D.C. 2003) ............................................................ 20

*In re Corrugated Container Antitrust Litig.*,

643 F.2d 195, 225 (5th Cir. 1981) ............................................................................ 13

*In re InPhonic, Inc.*,
674 F. Supp. 2d 273, 280 (D.D.C. 2009) ................................................................. 14

*In re LivingSocial Mtkg. & Sales Practice Litig.*,
Misc. Action No. 11-mc-0472(ESH), 2013 WL 1181489,
at *15 (D.D.C. Mar. 22, 2013) ................................................................................. 19

*In re Lorazepam & Clorazepate Antitrust Litig.*,
205 F.R.D. 369 (D.D.C. 2002) ................................................................................ 22

*In re Lorazepam & Clorazepate Antitrust Litig. Advocate Health Care*,
No. MDL 1290(TFH), 99MS276(TFH), Civ. No. 99-0790(TFH),
2003 WL 22037741, at *9 (D.D.C. June 16, 2003) ................................................ 20

*Interfaith Cmty. Org. v. Honeywell Int'l Inc.*,
Nos. 11-3813 & 11-3814, 2013 WL 3481510, at *10 (3rd Cir. July 11, 2013) ...... 17

*Maley v. Del Global Tech. Corp.*,
186 F. Supp. 2d 358, 369 (S.D.N.Y. 2002) ............................................................ 21

*McKesson Corp. v. Islamic Republic of Iran*,
Civil Case No. 82-220(RJL), 2013 WL 1224808 at *4
(D.D.C. Mar. 27, 2013) .................................................................................... 16, 17

*Michigan v. E.P.A.*,
254 F.3d 1087, 1090 (D.C. Cir. 2001) .................................................................... 14

*New Jersey v. E.P.A.*,
703 F.3d 110, 113 (D.C. Cir. 2012) ........................................................................ 14

*Pray v. Lockheed Aircraft Corp.*,
644 F. Supp. 1289, 1290 (D.D.C. 1986) ................................................................ 13

*Ricks v. Barnes*,
 Civil Case No. 05-1756 HHK/DAR, 2007 WL 956940,
at *5-6 (D.D.C. Mar. 28, 2007) .............................................................................. 17

*Roberts v. Texaco, Inc.*,
979 F. Supp. 185, 197 (S.D.N.Y. 1997) ................................................................. 21

*Salazar v. D.C.*,
123 F. Supp. 2d 8, 14 (D.D.C. 2000) ...................................................................... 17

*Save Our Cumberland Mountains, Inc. v. Hodel*,

857 F.2d 1516, 1517 (D.C. Cir. 1988) ........................................................................ 14

*Smith v. D.C.*,
466 F. Supp. 2d 151, 156 (D.D.C. 2006) ................................................................. 17

*Staton v. Boeing*,
327 F.3d 938, 974 (9th Cir. 2003) ........................................................................... 19

*Trombley v. Nat'l City Bank*,
826 F. Supp. 2d 179, 206 (D.D.C. 2011) ............................................................. 4, 12

*Wells v. Allstate Ins. Co.*,
557 F. Supp. 2d 1, 9 (D.D.C. 2008) ..................................................................... 4, 22

## STATUTES, RULES AND REGULATIONS

28 U.S.C. § 1712(b)(2) and (c) .................................................................................... 18

Fed. R. Civ. P. 23(b)(3) ...................................................................................... 7, 8, 10

Fed. R. Civ. P. 23(h) ........................................................................................... 12, 21

## OTHER AUTHORITIES

Theodore Eisenberg & Geoffrey P. Miller, *Incentive Awards to Class Action Plaintiffs: An Empirical Study*, 53 U.C.L.A. L. Rev. 1303 (2006) ................................................. 22

## MEMORANDUM OF LAW

Plaintiffs Alexis Richardson, Jay Sandler, Lubna Peshimam, Tracey Ann Bertrand, Mollie Krengel, and Nancie Ligon (collectively, "Plaintiffs" or "Class Representatives")[1] on behalf of themselves and each of the Settlement Class Members, by and through their Class Counsel, respectfully submit this memorandum of law in support of their Plaintiffs' Unopposed Motion for an Award of Attorneys' Fees, Reimbursement of Expenses to Class Counsel and Incentive Award Payments to the Class Representatives for their hard work and skill in prosecuting the Actions and securing a very favorable settlement for Plaintiffs and the Settlement Class.

## I.    INTRODUCTION

After many months of negotiations, which included extensive teleconferences and correspondence, two in-person mediation sessions and months of confirmatory discovery and negotiation over the various components of the Settlement Agreement, Class Counsel have achieved a comprehensive class settlement that resolves the litigation of a lawsuit filed on behalf of six Plaintiffs against L'Oréal USA, Inc. ("L'Oréal") for its allegedly deceptive labeling of its Matrix Biolage, Redken, Kérastase and Pureology hair care products ("Products") as salon-only.[2]

The Parties, through their experienced Counsel, achieved the Settlement only after approximately seven months of case development that included detailed research of the legal issues in the case, reviewing documents produced by L'Oréal, engaging in pre-mediation adversarial negotiations and two hard fought arm's-length negotiations under the supervision of

---

[1] All capitalized terms herein have the same meaning as in the Settlement Agreement "Settlement Agreement" filed with the Court on May 15, 2013 (Dkt. No. 9-2).

[2] Specifically, each of the Products contains one or more of the following representations, "for sale only in professional beauty salons," "exclusive salon distribution," "exclusive to Kérastase consultant salons," "only professional," "only in salon," "sold exclusively in salons," "available only at fine salons and spas," and "available only at fine salons" (collectively, "salon-only" or "Claims").

an experienced mediator, the Honorable Ronald A. Sabraw (Ret.). Recognizing the highly individualized reliance and damages questions in this case that could likely defeat predominance—prohibiting class certification of a Rule 23(b)(3) class—Plaintiffs achieved robust injunctive relief on behalf of the Settlement Class, namely the removal of the deceptive salon-only language: "for sale only in professional beauty salons;" "exclusive salon distribution;" "exclusive to Kérastase consultant salons;" "only professional;" "only in salons;" "sold exclusively in salons;" "available only at fine salons and spas;" "available only at fine salons;" or similar claims in English or Spanish which may be read as suggesting availability for purchase exclusively in professional hair salons.

The injunctive relief achieved on behalf of the Class completely cures the allegations of deception in the Complaint and is the best relief practicable. As discussed below, Class Counsel determined that class-wide monetary relief would have been difficult, if not impossible, to establish. However, the decision to settle for injunctive relief is a significant achievement given the magnitude of the deception that existed in the labeling of the Products as salon-only. The injunctive relief removes the deception from the Products' labels and allows the consumer to make an informed decision at the point of purchase. There need not be class-wide monetary damage for there to be harm to consumers. There was significant harm alleged here in the deception perpetrated by the salon-only language. That harm has been eliminated.

Accordingly, for achieving substantial injunctive relief on behalf of Class Members nationwide, Plaintiffs respectfully request a reasonable award of attorneys' fees and expenses. The injunctive relief, incentive awards to the Plaintiffs and the attorneys' fees and costs were achieved through contentious, arm's-length negotiations under the supervision and guidance of Judge Sabraw. Ultimately, and only after Plaintiffs provided a detailed itemization of the fees

2

and expenses to date and a conservative projection of the fees and costs to final approval, Defendant agreed to pay fees and expenses to Plaintiffs not to exceed $950,000.

The requested fee is fair and reasonable using the lodestar/multiplier approach, which is the preferable method for calculation of attorneys' fees and costs in this District when the settlement does not produce a common fund. *See Covington v. D.C.*, 57 F.3d 1101, 1107 (D.C. Cir. 1995) (applying lodestar-multiplier methodology). Class Counsel agreed to litigate this case on a contingency, expended a reasonable number of hours on the litigation at a reasonable hourly rate, and therefore believe that a modest multiplier of 1.14 is merited and reasonable to compensate Class Counsel for the work performed to date and to be performed in the future in monitoring Defendant's performance.

The requested fee award is warranted given the complexity of the litigation, the substantial risks faced by Plaintiffs and Class Counsel, and the valuable injunctive relief provided under the Settlement. Also considered in determining the reasonableness of Plaintiffs' attorneys' fee award are Class Counsel's hard work, skill and ultimate success in achieving a valuable settlement on behalf of the Class Members. Class Counsel persisted in their efforts to advance the litigation, despite the substantial risk of nonpayment due to the uncertain outcome and risks involved. Notably, the requested fee does not contemplate the substantial work that Class Counsel must shoulder going forward, such as preparing for the final approval hearing, responding to Class Member communications, and responding to any objections and related appeals – further substantial work benefitting the Settlement Class that could easily last for many months, and for which Class Counsel will not receive any compensation in addition to the requested fee and expense award sought here. Furthermore, the award of attorneys' fees does

not affect or diminish the relief for the Class and was negotiated only after the injunctive relief was finalized.

Given the exemplary results achieved through the Settlement, Plaintiffs' request for $950,000 is fair and reasonable. *See Trombley v. Nat'l City Bank*, 826 F. Supp. 2d 179, 206 (D.D.C. 2011) ("It is well established that when a representative party has conferred a substantial benefit upon a class, counsel is entitled to . . . attorneys' fees based upon the benefit obtained," (internal citation omitted)). Critically, the payment of attorneys' fees and costs will not be drawn from any relief achieved for the Class.

Additionally, pursuant to the Settlement, Defendants have agreed to pay incentive awards of $1,000 to each Class Representative for his or her time and effort in participating in this Action. (Settlement Agreement, §2.5[3].) The total service award amount of $6,000 is entirely reasonable given the commitment and efforts undertaken by the Class Representatives on behalf of the Settlement Class. *See Trombley,* 826 F. Supp. 2d at 207 (approving incentive awards of $5,000 each for named plaintiffs); *Cohen v. Warner Chilcott Pub. Ltd., Co.*, 522 F. Supp. 2d 105, 124 (D.D.C. 2007) (approving incentive awards of $7,500 each to named plaintiffs); *Wells v. Allstate Ins. Co.*, 557 F. Supp. 2d 1, 9 (D.D.C. 2008) (approving incentive awards of $10,000 each to named plaintiffs).

The requested award of attorneys' fees and expenses and incentive awards is fair and reasonable. In light of the comprehensive Settlement relief achieved on behalf of millions of Class Members nationwide, Plaintiffs respectfully ask the Court to fully award their fees and expenses pursuant to the agreed-upon terms of Settlement.

---

[3] All section (§) references in this Memorandum are to the Settlement Agreement filed with the Court on May 15, 2013 (Dkt. No. 9-2).

## II.    FACTUAL BACKGROUND AND PROCEDURAL HISTORY

### A.    L'Oréal's Salon-Only Labeling

L'Oréal manufactures, advertises, sells and distributes Matrix Biolage, Redken, Kérastase, and Pureology professional hair care products throughout the United States for consumer purchase that are labeled as salon-only although consumers can purchase these products in major retail outlets where professional salon services are not available. (Complaint, ¶¶1-2.[4])  Plaintiffs allege L'Oréal has created a demand and cachet for its products by labeling and advertising them as salon-only, and these representations are an important aspect of the Products' claimed nature, characteristics, and qualities as they allow Defendant to demand a premium for the Products. (¶27.)  Plaintiffs contend that the salon-only label implies a superior quality product that is available only through professionals in hair care and allows L'Oréal to differentiate the Products from those sold only by mass retailers. (¶28.)

Despite L'Oréal's claims that Matrix, Kérastase, Pureology and Redken professional/salon-only hair care products are sold only in salons, these products are, in fact, sold throughout the country in drug stores, grocery stores, and other mass merchandise retail stores, including Target, Kmart and Walgreens.  (¶29.)  The sale of professional or salon-only products through stores that do not have a salon on the premises is known in the industry as "diversion." (¶30.) L'Oréal has developed an anti-diversion campaign for each of the product lines at issue in this litigation.  (*See* ¶¶31–37.)

Regardless of L'Oréal's anti-diversion efforts, Plaintiffs allege that L'Oréal's labeling, and its print and internet advertising of its professional products as available only in salons, are deceptive and misleading.  (¶46.) Plaintiffs assert that these representations are likely to cause

---

[4] Hereinafter, all paragraph (¶) references are to the Complaint filed on April 15, 2013 (Dkt. No. 1), unless otherwise noted.

confusion among consumers and to deceive them as to the affiliation, connection or association of L'Oréal's Products with professional salons.  (*Id.*)

### B.      Procedural History and Discovery

A complete factual and procedural history is provided in Plaintiffs' Memorandum in Support of Motion for Final Approval of the Class Action Settlement.   For the Court's convenience, a summary of the relevant history for purposes of the present Motion is provided below.

This matter was originally filed on August 30, 2012, on behalf of Plaintiff Ligon, in the Northern District of California, Court File No. 3:12-cv-04585-JST. (Declaration of Clayton Halunen (Halunen Decl., ¶10.)) Prior to the filing of the California Action, Plaintiffs' Counsel conducted research, investigation and analysis into the facts relating to the Action. (*Id.*., ¶8.) Plaintiffs' Counsel spent approximately seven months researching the complex factual and legal issues in this case.  (*Id.*)   Exercising due diligence and contemplating a nationwide action, Plaintiffs' Counsel researched and analyzed consumer laws in various states as applicable to the issues in this case.  (*Id.*)  In addition to the detailed legal analysis, Plaintiffs' Counsel engaged in extensive fact discovery regarding the Claims.  This included the interview of potential witnesses and a detailed analysis of AC Nielsen data relating to diverted Products.  Plaintiffs' Counsel spent approximately 400 hours achieving a thorough understanding of diversion, anti-diversion campaigns and the alleged deception surrounding the Products' labeling prior to filing the California Complaint.  (*Id.*)

Plaintiffs' Counsel's investigation included an examination of L'Oréal's diversion campaign, the confusion among consumers as to the affiliation of the Products, sales data relating to the Products, and a detailed legal analysis relative to whether the allegations in the Complaint could be the subject of a class action. (*Id.*)  During the time that the parties were

engaging in discovery and mediation, five additional Plaintiffs were added and the case was expanded to include L'Oreal's allegedly deceptive Claims relating to its Redken, Kérastase and Pureology products. (*Id.*, ¶14.) Upon the retention of additional Plaintiffs who reside in the District of Columbia, California, Illinois, New Jersey, Florida, and Minnesota, Plaintiffs voluntarily dismissed the Northern District of California action and, on April 15, 2013, filed the present action on behalf of all six Plaintiffs in this Court. (*Id.*)

After the initial California filing, the parties engaged in extensive pre-mediation negotiations to discuss Plaintiffs' theory of the case and L'Oréal's potential defenses. (*Id.*, ¶¶15-19.) At that time, L'Oréal provided Plaintiffs with documents and information regarding its anti-diversion and labeling practices. (*Id.*, ¶16.) Furthermore, Plaintiffs' counsel undertook an examination of the prices charged in salons and non-salons and analyzed the varying potential motivations for consumers' purchase of the Products. (*Id.*) Plaintiffs' counsel conducted additional legal and factual research to determine the most appropriate and attainable resolution for the class members. (*Id.*, ¶17.) From Plaintiffs' counsel's research and the discovery received from L'Oréal, it became apparent that it would be challenging, if not impossible, to determine class-wide monetary damages. (*Id.*, ¶18.) As part of their efforts to determine whether class-wide monetary relief could be established, Plaintiffs' Counsel consulted with an expert economist. (*Id.*, ¶18.) Furthermore, Plaintiffs' counsel recognized the challenges they would face in certifying a Fed. R. Civ. P. 23(b)(3) nationwide class of purchasers of L'Oréal Products as L'Oréal would present evidence that many factors influence a consumer's purchase of the Products, thereby creating highly individualized challenges in proving detrimental reliance and damages that could potentially defeat predominance. (*Id.*, ¶19.)

As a condition to settlement, Plaintiffs required L'Oréal representatives to provide sworn testimony relating to issues surrounding certification of a Fed. R. Civ. P. 23(b)(3) class. (*Id.*, ¶20.) Specifically, L'Oréal representatives provided sworn testimony that that L'Oréal "does not sell L'Oréal Products to mass-market, non-salon retailers or otherwise divert L'Oréal Products, nor does the diversion of L'Oréal Products occur with L'Oréal's permission or acquiescence." (Declaration of Christopher Lyden ("Lyden Decl."), Dkt. No. 9-4, ¶4.)  L'Oréal also informed Plaintiffs that it "has been working aggressively to combat diversion, and in 2008, L'Oréal created Brand Equity Protection to spearhead" its diversion efforts.  (*Id.*, ¶8.)  "Two of Brand Equity Protection's major anti-diversion initiatives are the 'National Sample Buy Program' and 'Quality Assurance Product Coding Program.'"  (*Id.*, ¶8.)  Through its National Sample Buy Program, L'Oréal is able to analyze the prices at which the Products are sold.  Specifically, L'Oréal compares the Manufacturer's Suggested Retail Price ("MSRP") for such products with the prices at which the Products are sold at non-salon retailers.  (*Id.*, ¶12.)  L'Oréal has determined that "on average, consumers who purchase L'Oréal Products from non-salon retailers pay more for those products than the MSRP."  (*Id.*, ¶15.)  That being said, "non-salon retailers' prices are sometimes much higher than the MSRP and sometimes much lower."  (*Id.*, ¶15.) "Even a single mass-market, non-salon retailer will sell the same product at different prices in different geographical regions.  Further, even within the same geographical area, different non-salon retailers charge vastly different prices for L'Oréal Products."  (*Id.*, ¶15.)[5]  Accordingly, while Plaintiffs' Counsel, legally and factually, felt strongly that there was class-wide deception in L'Oreal's use of the Claims, it became clear that it would be difficult, if not impossible, to ascertain or recover monetary damages on a class-wide basis. (Halunen Decl., ¶21.)

---

[5] *See* Lyden Decl., Ex. B for analysis of pricing data for eight different hair care products that were well-represented in the Sample Buy database.

Based on information provided during discovery, and given the variables described above, Plaintiffs concluded that it would have been difficult to ascertain a principled formula for assessing the value of an individual consumer's monetary damages claim. (*Id.*)  For example, is a consumer who purchased the Products from a mass-retailer—who may have paid more than a salon purchaser—more or less damaged than those who purchased the products from a salon— believing that the Products were only sold there? And what if the purchaser at a mass-retailer, in fact, paid less than the salon purchaser?  In addition to the individualized questions of monetary damages based on the varying purchase prices, Plaintiffs' Counsel determined it would be extremely difficult to quantify the premium price associated with the salon-only representation for purposes of a monetary class settlement. (*Id.*, ¶19.) Notwithstanding the issues related to monetary recovery for Class Members, there was undoubtedly a deception that would have continued without Plaintiffs' efforts to halt the behavior.  Plaintiffs, however, concluded that the deception did not have a quantifiable and recoverable value to Class Members. (*Id.*)  They further concluded that continued litigation could have resulted in no relief at all.  (*Id.*)

To that end, L'Oréal explained that it has "never sought to determine whether its use of the [salon-only] Claims in connection with the L'Oréal Products has any quantifiable value to consumers."   (Declaration of Patrick Parenty ("Parenty Decl."), Dkt. No. 9-5, ¶12.) Furthermore, L'Oréal does not have "an understanding of how any such value could be determined or measured."  (*Id.*, ¶12.)  L'Oréal is unsure if the salon-only claims "have any particular value to consumers, or whether L'Oréal's use of the [salon-only] Claims impacts the amount consumers are willing to pay for L'Oréal Products." (*Id.*)

Accordingly, as identified by Plaintiffs' counsel in the course of the settlement negotiations and confirmed in discovery, the injunctive relief achieved in this case—the removal

of the salon-only labeling and representations—effectively remedies the allegations in the Complaint. (Halunen Decl., ¶22.) Plaintiffs' determined that the certainty in obtaining the value of the injunctive relief outweighed the massive uncertainty and cost in proceeding on behalf of a Fed. R. Civ. P. 23(b)(3) class. (*Id.*, ¶23.) However, this was not a realization made overnight. To the contrary, that conclusion occurred only after Plaintiffs' counsel spent considerable time researching the relevant legal issues and analyzing information obtained from L'Oréal to ascertain the best outcome for the Class. (*Id.*, ¶24.) Plaintiffs' counsel is confident that the Settlement is fair, reasonable and adequately addresses the harm to Class Members.

### C.    The Parties Engaged in Protracted, Arm's-Length Negotiations

Early on in the litigation, the Parties agreed there were practical reasons for exploring the potential for early resolution of this matter. (*Id.*, ¶11) During that time, the Parties discussed their respective defenses to claims and dispositive motions, and L'Oréal agreed to provide pre-mediation discovery regarding its use of the salon-only claims. (*Id.*, ¶12.) The Parties exchanged extensive correspondence and held numerous teleconferences to discuss necessary components of any potential settlement. (*Id.*, ¶¶25-37.).

After review of documents produced by L'Oréal and several months of negotiations related to the Parties' respective contentions, on December 5, 2012, the Parties attended an in-person mediation before the Honorable Ronald M. Sabraw (Ret.). (*Id.*, ¶25.) Judge Sabraw, a former complex litigation judge in Alameda County, California, has handled hundreds of complex litigation matters, including numerous consumer class actions.[6] Through an all-day session, the parties were able to achieve, in large part, the injunctive relief for the Class. (*Id.*, ¶26.)

---

[6] *See* Hon. Ronald M. Sabraw (Ret.) biography, www.jamsadr.com, (last visited Aug. 9, 2013).

In the weeks following the mediation, through numerous telephonic mediation sessions, the Parties finalized the terms of injunctive relief. (*Id.*, ¶27.) With Judge Sabraw's assistance, Plaintiffs achieved robust injunctive relief on behalf of the Settlement Class, namely the removal of the deceptive salon-only language, "for sale only in professional beauty salons;" "exclusive salon distribution;" "exclusive to Kérastase consultant salons;" "only professional;" "only in salon;" "sold exclusively in salons;" "available only at fine salons and spas;" "available only at fine salons;" or similar claims in English or Spanish which may be read as suggesting availability for purchase exclusively in professional hair salons. (*Id.*, ¶29; §2.4(a).) The Settlement prohibits L'Oréal from using the Claims in connection with the labeling, marketing or advertising of the L'Oréal Products in the United States for a minimum period of five (5) years from the Effective Date. (§2.4(b).) After the minimum five-year term, L'Oréal may resume using the Claims on the L'Oréal Products if the mass market sales in the United States as reported in A.C. Nielsen/IRI data have been reduced from 2012 reported mass market sales by 60%. (*See* (§2.4(c).) [7]

The parties refrained from discussing any payment of attorneys' fees and costs until all other terms of the Settlement were set. (Halunen Decl., ¶28.) After finalizing injunctive relief to the Class, the parties attended a second in-person mediation with Judge Sabraw on January 25, 2013, to negotiate attorneys' fees and costs. (*Id.*, ¶29.) The negotiations included information about the amount of time and expense that Plaintiffs' Counsel would expend to obtain Court approval of the Settlement. (*Id.*, ¶30.) The Parties were unable to reach a settlement that day, but continued to engage in settlement discussions with the assistance of Judge Sabraw. (*Id.*, ¶31.) The maximum attorneys' fees and costs that Class Counsel could seek without opposition

---

[7] A complete summary of the Settlement is contained within Plaintiffs' Memorandum in Support of Motion for Final Approval of the Class Action Settlement.

from Defendants were ultimately determined based upon Plaintiffs' Counsel's time and expense to that date and a conservative projection of time and expense through final approval. (*Id.*, ¶32.) Based on that framework, the Parties reached the Proposed Settlement, which reflects careful consideration by the Parties of the benefits, burdens, and risks associated with continued litigation of this case. (*Id.*, ¶34.)

On June 27, 2013, the Court entered the Order of Preliminary Approval of Settlement, Certification of Settlement Class, Approval of the Notice Plan, and Scheduling a Date for a Final Fairness Hearing, (Dkt. No. 14), requiring notice to the Settlement Class and establishing the remaining deadlines for the litigation, including the final approval hearing scheduled for October 11, 2013. (*See* Halunen Decl., ¶40.)

## III.  THE COURT SHOULD AWARD PLAINTIFFS THE FULL AMOUNT OF ATTORNEYS' FEES AS NEGOTIATED IN CONJUNCTION WITH THE SETTLEMENT

### A.  Applicable Standard of Law

Federal Rules of Civil Procedure 23 provides, "[i]n a certified class action, the court may award reasonable attorneys' fees and nontaxable costs that are authorized by law or by the parties' agreement." Fed. R. Civ. P. 23(h).  Furthermore, the U.S. Supreme Court has recognized that when an attorney confers a benefit on parties, other than himself or his client, he is entitled to reasonable attorney's fees. *Boeing Co. v. Van Germert*, 444 U.S. 472, 478 (1980). *See Trombley*, 826 F. Supp. 2d at 206 ("It is well established that when a representative party has conferred a substantial benefit upon a class, counsel is entitled to . . . attorneys' fees based upon the benefit obtained." (internal citation omitted)).[8]

---

[8] While the settlements at issue in *Boeing* and *Trombley* included a common fund, whereas here the Settlement confers a benefit on the Class by virtue of the injunctive relief, both the spirit of class action litigation and the fee-shifting statutes at issue in the Complaint provide for recovery of reasonable attorneys' fees and expenses.

In a class action setting, "the court's primary purpose in reviewing a proposed settlement agreement is to protect the rights of absent class members who were not involved in the negotiations leading to settlement." *Pray v. Lockheed Aircraft Corp.*, 644 F. Supp. 1289, 1290 (D.D.C. 1986). However, the court need not "'act in a fiduciary role' to protect a defendant who negotiates a settlement." *Id.* (citing *In re Corrugated Container Antitrust Litig.*, 643 F.2d 195, 225 (5th Cir. 1981)). Whereas here, the attorneys' fees and expenses award does not come out of the relief to the class, "the Court's fiduciary role in overseeing the award is greatly reduced, because there is no conflict of interest between attorneys and class members." *Bezio v. Gen. Elec. Co.*, 655 F. Supp. 2d 162, 168 (N.D.N.Y. 2009); *see also Ebbert v. Nassau Cty.*, No. CV-05-5445(AKT), 2011 WL 6826121, at \*14 (E.D.N.Y Dec. 22, 2011) (noting that when the defendants agree to pay an amount pursuant to the settlement agreement and there will be no diminishment of the benefit to the class, the court's fiduciary role is greatly reduced).

It is well settled in this District that once the court has determined an appropriate reasonable hourly rate, it can be multiplied by the reasonable hours expended to calculate the "lodestar" figure per attorney. *See Cobell v. Norton*, 407 F. Supp. 2d 140, 177 (D.D.C. 2005. "A fee applicant's burden in establishing a reasonable hourly rate entails a showing of at least three elements: the attorneys' billing practices, the attorneys' skill, experience, and reputation; and the prevailing market rates in the relevant community." *Id.* (quoting *Covington*, 57 F.3d at 1107; *see also Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983) ("[t]he most useful starting point . . . is the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate. This calculation provides an objective basis on which to make an initial estimate of the value of a lawyer's services.").

In addition to determining: (1) the number of hours reasonably expended in litigation and (2) the reasonable hourly rate, the courts in this circuit have also encouraged the use of multipliers. *See Covington*, 57 F.3d at 1107 (quoting *Save Our Cumberland Mountains, Inc. v. Hodel*, 857 F.2d 1516, 1517 (D.C. Cir. 1988)).

**B.      The Number of Hours Expended by Class Counsel is Reasonable**

Class Counsel reasonably expended over 1,600 hours on this litigation. (*See* Halunen Decl., ¶46) To determine the reasonableness of hours expended, the court "must closely scrutinize billing entries in light of the 'reasonable' and 'appropriate standards set forth in the statute.'" *New Jersey v. E.P.A.*, 703 F.3d 110, 113 (D.C. Cir. 2012) (quoting *Michigan v. E.P.A.*, 254 F.3d 1087, 1090 (D.C. Cir. 2001) (internal quotations omitted)). Two principles are key to the analysis of reasonableness. *See In re InPhonic, Inc.*, 674 F. Supp. 2d 273, 280 (D.D.C. 2009). "First, the fee awarded on a successful claim 'must be reasonable in relation to the success achieved.'" *Id.*     Here, Class Counsel achieved the best injunctive relief possible—complete removal of the salon-only claims from all of the Products.  This comes at no small cost.  L'Oréal has agreed to change its labeling, which affects worldwide distribution of the Products. Accordingly, the injunctive relief is robust and an excellent result for the Settlement Class. Obtaining agreement to this injunctive relief took much time and effort on the part of Class Counsel and required significant research to substantiate the merits of the injunctive claims.  The injunctive relief obtained on behalf of the class will now allow Class Members to make completely informed decisions at the point of purchase.  Accordingly, as the injunctive relief confers a significant benefit on the Class, the hours submitted by Class Counsel are reasonable in relation to the success achieved for the class.

Plaintiffs' Counsel achieved significant injunctive relief for the Class with great efficiency and without duplication of work.  While The Mehdi Firm, PC was intimately involved

in the Settlement, there was no duplication of billing across the two firms.  The limited number of hours billed by Ms. Mehdi and the description of tasks performed demonstrate that there was no duplication. (Mehdi Decl., ¶¶6, 8; *see* Halunen Decl., ¶17.)  Additionally, while there was partner review of work when necessary, the attorney with the lowest billing rate completed the lion's share of the substantive work.  (*See* Halunen Decl., ¶47.)  In fact, there are only two attorneys who billed 100 hours or more on the case.[9]  (Mehdi Decl., ¶8; Halunen Decl., ¶47.) These facts support the reasonableness of the hours expended.

"The second governing principle is that a plaintiff may only recover fees 'for work related to the claim' on which the plaintiff was successful." *In re InPhonic,* at 281. The Class sought injunctive relief on all claims pled in the Complaint, and each claim related to the salon-only misrepresentations made on the L'Oréal Products. Class Counsel achieved injunctive relief on each claim by negotiating for the removal of the misrepresentations from all the L'Oréal Products. (§ 2.4(a).) By achieving relief on all claims in the litigation, Class Counsel should recover fees on all of the hours expended on the litigation. Taken as a whole, the hours submitted by Class Counsel are reasonable both in relation to the success achieved and the achievement of a Settlement on all claims.

### C.    The Hourly Rate Used by Class Counsel Is Reasonable

The hourly rates of Class Counsel, as detailed in their declarations, are reasonable. (*See* Halunen Decl., ¶53.; Mehdi Decl., ¶7.)  "[A] fee applicant's burden in establishing a reasonable hourly rate entails showing of at least three elements: the attorneys' billing practices; the attorneys' skill, experience, and reputation; and the prevailing market rates in the relevant community." *Covington*, 57 F.3d at 1107; *see McKesson Corp. v. Islamic Republic of Iran*, Civil Case No. 82-220(RJL), 2013 WL 1224808, at*4 (D.D.C. Mar. 27, 2013).

---

[9] Melissa Wolchansky billed 679.7 hours and Clayton Halunen billed 390.6 hours. (*See* Halunen Decl., at ¶47.)

To meet the first *Covington* element, the courts of this Circuit have accepted declarations by counsel avowing that the charged rates were in accord with their standard billing scales. *McKesson,* 2013 WL 1224808 at *4. Class Counsel have submitted such declarations here, stating that the charged rates are in accord with the standard billing scales charged in other class action litigations. (*See* Halunen Decl., ¶53.; Mehdi Decl., ¶7.) Therefore, Class Counsel have fulfilled the billing practice requirements.

To meet the second *Covington* element, ". . . prevailing parties must offer evidence to demonstrate their attorneys' experience, skill, reputation, and the complexity of the case they handled." *Covington,* 57 F.3d at 1108. Class Counsel are highly skilled and experienced class action litigators. (*See* Halunen Decl., ¶¶52, 54; Halunen Decl., Ex. 1.) They have litigated and served as lead counsel in many consumer class actions. (Halunen Decl., ¶54.)  Class Counsel conducted this litigation with skill and efficiency. As with all class actions, protracted litigation of the unique issues of this case could have ultimately delivered no recovery to the Class. Instead, Class Counsel efficiently negotiated substantial relief for the Class in a relatively short period of time.   To that end, Class Counsel expended considerable time and resources negotiating and effectuating the Settlement, and was always opposed by experienced and skillful counsel for L'Oréal. (*Id.*, ¶¶2, 5, 6, 42, 45.)  The Parties twice utilized the services of a skilled mediator to reach the material terms of the Settlement. (*Id.*, ¶29.)  However, coming to a final agreement on all details of the Settlement was challenging and time-consuming. With a finalized Settlement Agreement, Class Counsel sought and received preliminary approval for the Settlement. (*Id.*, ¶40.)  Accordingly, Class Counsel have the skills, experience, and reputation corresponding to their hourly rates.

16

To meet the third *Covington* element, "plaintiffs must produce data concerning the prevailing market rates in the relevant community for attorneys of reasonably comparable skill, experience, and reputation." *Covington,* 57 F.3d at 1108. "In order to demonstrate this third element, plaintiffs may point to such evidence as an updated version of the Laffey matrix or the U.S. Attorney's Office matrix, or their own survey of prevailing market rates in the community." *Id*. at 1109; *see McKesson,* 2013 WL 1224808 at *5. The rates charged by Class Counsel are adjusted based on the 2013 Adjusted Laffey Matrix, available at LaffeyMatrix.com. Laffey Mattrix. website, http://www.laffeymatrix.com/see.html (last visited Aug. 9, 2013).

The Adjusted Laffey Matrix purportedly provides the prevailing market rates for the District of Columbia.  Rates are set based upon the Department of Justice Laffey Matrix, recent District of Columbia court decisions and expert economist review.   The Adjusted Laffey Matrix calculates the rates by using "the legal services component of the [Consumer Price Index] . . . ." *Smith v. D.C.*, 466 F. Supp. 2d 151, 156 (D.D.C. 2006). The courts of this circuit, as well as the 3rd Circuit Court of Appeals, have accepted and applied the Adjusted Laffey Matrix as a measure of an attorney's reasonable hourly rate in the District of Columbia. *See id.*; *Interfaith Cmty. Org. v. Honeywell Int'l Inc.*, Nos. 11-3813 & 11-3814, 2013 WL 3481510, at *10 (3rd Cir. July 11, 2013) (We thus affirm the District Court's use of the LSI-updated Laffey Matrix to determine the prevailing rates in the Washington, D.C. market); *Ricks v. Barnes*, Civil Case No. 05-1756 HHK/DAR, 2007 WL 956940, at *5-6 (D.D.C. Mar. 28, 2007) (same); *Salazar v. D.C.*, 123 F. Supp. 2d 8, 14 (D.D.C. 2000) (same); *see also Covington,* F.3d at 1109.

Three attorneys for Class Counsel have the years of experience to qualify for the highest rate on the Adjusted Laffey Matrix. A fourth attorney for Class Counsel qualified for the second highest rate. A fifth attorney for Class Counsel charged the appropriate rate for her years of

experience. All other members of Class Counsel charged the appropriate Laffey support staff rate.

Class Counsel's billing rates are reasonable: Class Counsel used the proper billing practice; have the skill, experience, and reputation corresponding to their billing rates; and their billing rates are relevant and acceptable in the District of Columbia.

### D.   Class Counsel's Multiplier is Reasonable and Merited

As discussed, *infra*, Defendant agreed to a payment of attorneys' fees and costs based upon Class Counsel's estimation of time and expense through final approval.  The Class relief was negotiated before any discussion related to attorneys' fees and expenses.  Accordingly, the injunctive relief was not adversely affected by the attorneys' fees and expenses because they were negotiated after the injunctive relief was finalized.  As the award of attorneys' fees and costs will not come out of any fund for the Class, the relief to the Class will in no way be affected or diminished based upon the Court's award.  The only party that will be affected by the award of attorneys' fees and costs is Defendant, and it has agreed to pay up to $950,000 in attorneys' fees and costs.  Therefore, Plaintiffs ask the Court to award $950,000 in attorneys' fees and expenses as agreed to by the Parties.

The Supreme Court has acknowledged the utility of an enhanced award.  *Hensley*, 461 U.S. at 435; *Blum v. Stenson*, 465 U.S. 886, 897 (1984).  The Class Action Fairness Act that provides the basis for jurisdiction for the claims contemplated in this case envisions that a lodestar/multiplier analysis can be used in matters where injunctive relief is the primary remedy. *See* 28 U.S.C. § 1712(b)(2) and (c) ("Any attorney's fee under this subsection shall be subject to approval by the court and shall include an appropriate attorney's fee, if any, for obtaining equitable relief, including an injunction, if applicable. Nothing in this subsection shall be construed to prohibit application of a lodestar with a multiplier method of determining attorney's

fees"); *see also In re Arizona Escrow Fee Antitrust Litig*, Case No. 80-840A PHX CAM, 1982 WL 1938 (D. Ariz. Sept. 22, 1982) (using lodestar/multiplier analysis to award fees in injunctive relief settlement); *Cantor v. Detroit Edison Co.*, 86 F.R.D. 752, 757-58 (E.D. Mich. 1980) (lodestar/multiplier approach used to calculate attorneys' fee where injunctive relief and no monetary relief obtained).   Plaintiffs' Counsel collectively billed $809,872.50, and accordingly, seek a 1.14 multiplier, which is reasonable and appropriate given the substantial benefit provided to the class in injunctive relief, and the risk of nonpayment presented by this case.

Courts can consider the value of the injunctive relief in determining appropriate attorneys' fees.  *See In re LivingSocial Mtkg. & Sales Practice Litig.*, Misc. Action No. 11-mc-0472(ESH), 2013 WL 1181489, at *15 (D.D.C. Mar. 22, 2013) (quoting *Staton v. Boeing*, 327 F.3d 938, 974 (9th Cir. 2003)).   The courts in this district recognize the challenge in seeking nonmonetary relief:

> Where, as here, the relief sought is generally nonmonetary, a substantial fee is particularly important if that statutory purpose is to be fulfilled. It is relatively easy to obtain competent counsel when the litigation is likely to produce a substantial monetary award. It is more difficult to attract counsel where the relief sought is primarily nonmonetary. For this reason, fee awards in cases that produce substantial nonmonetary benefits must not be reduced simply because the litigation produced little cash.

*Copeland v. Marshall*, 641 F.2d. 880, 907 (D.C. Cir. 1980).   While the relief sought and achieved in this litigation was nonmonetary, the injunctive relief is substantial.  L'Oréal has consented to a complete re-label of the Products at issue, which comes at no small cost. (§2.4(a).) The allegedly deceptive language will be stricken from all Products, and consumers will now have the ability to make a completely informed purchasing decision.  This is an exceptional success for the Class, as well as all consumers. It is the success of the injunctive relief that warrants award of a modest multiplier to Class Counsel for their efforts in this case.

19

Additionally, there was a substantial risk of nonpayment. This litigation sought injunctive relief for a product sold in multiple jurisdictions, under multiple consumer protection laws. These varying state protection laws could readily pose a bar to class certification and Plaintiffs' counsel litigated this matter on a contingency basis. Class Counsel therefore assumed over three-quarters of a million dollars in fees and expenses in litigating this matter, without any guarantee of ultimate payment. (Halunen Decl., Ex. 1.) The fact of working on a contingency basis with no promise of recuperation of that time and expense should not be overlooked.

Furthermore, Class Counsel's work is not yet done.  Class Counsel still need to: (a) prepare for and attend the final approval hearing; (b) research, draft, and prepare any additional submissions requested by the Court, including responses to objections; (c) handle any resulting appeals; (d) complete the litigation and ensure implementation of the Settlement; and (e) disburse the Class Representative awards and attorneys' fees and expenses. (*Id.*, ¶44.)

Considering the magnitude of the injunctive relief, the risk of nonpayment assumed, and the efficiency and skill of Class Counsel, the multiplier of 1.14 sought by Class Counsel is merited and within the range of fair and reasonable. *See e.g.*, *In re Bann Co. Sec. Litig.*, 288 F. Supp. 2d 14, 19-20 (D.D.C. 2003) (finding "that a multiplier of 2.0 or less falls well within a range that is fair and reasonable"); *In re Lorazepam & Clorazepate Antitrust Litig. Advocate Health Care*, No. MDL 1290(TFH), 99MS276(TFH), Civ. No. 99-0790(TFH), 2003 WL 22037741, at *9 (D.D.C. June 16, 2003) ("In contrast to the multipliers of 1.15 or 1.36 in this case, multiples ranging up to 'four are frequently awarded in common fund cases when lodestar method is applied.'"); *Maley v. Del Global Tech. Corp.*, 186 F. Supp. 2d 358, 369 (S.D.N.Y. 2002) (a multiplier of 4.65 is ". . . well within the range awarded by courts in this Circuit and

courts throughout the country."); *Roberts v. Texaco, Inc.*, 979 F. Supp. 185, 197 (S.D.N.Y. 1997) (finding a multiplier of 5.5 reasonable).

Because the number of hours expended is reasonable, the hourly rate charged is reasonable, and a multiplier is merited and reasonable, the attorneys' fees requested by Class Counsel should be awarded.

## IV.   PLAINTIFFS' EXPENSES ARE REASONABLE AND WERE NECESSARILY INCURRED TO ACHIEVE THE BENEFIT OBTAINED ON BEHALF OF THE CLASS

As noted above, Federal Rules of Civil Procedure 23 provides for the award of costs if so authorized by the parties' agreement.  *See* Fed. R. Civ. P. 23(h).  The $950,000 sought by Plaintiffs to be awarded to Class Counsel includes more than $20,577.94 in expenses necessarily incurred in connection with the prosecution of this Action. (*See* Halunen Decl., ¶¶55, 56.) Class Counsel incurred reasonable costs during the course of the litigation, including expenses relating to mediation fees advanced by Class Counsel, filing fees, travel expenses, photocopies, and postage, among others detailed in the declarations submitted in support of this motion.  *See id.* Class Counsel has reviewed the expense records carefully and determined that the expenses listed were necessary to the successful prosecution of this litigation, and they reflect market rates for the various categories of expenses incurred. *See id.* Further, Class Counsel advanced these necessary and reasonable expenses without assurance that they would ever be recouped. Plaintiffs' request for these expenses is fair and reasonable.

## V.    THE COURT SHOULD APPROVE THE INCENTIVE AWARDS OF $1,000 FOR EACH NAMED PLAINTIFF

Finally, Plaintiffs respectfully request that the Court approve incentive awards in the amount of $1,000 each for Named Plaintiffs Richardson, Sandler, Peshimam, Bertrand, Krengel, and Ligon for a total of $6,000.

Incentive awards for class representatives are routinely provided to encourage individuals to undertake the responsibilities of representing the class and recognize the time and effort spent in the case. *See In re Lorazepam & Clorazepate Antitrust Litig.,* 205 F.R.D. 369 (D.D.C. 2002); Theodore Eisenberg & Geoffrey P. Miller, *Incentive Awards to Class Action Plaintiffs: An Empirical Study*, 53 U.C.L.A. L. Rev. 1303 (2006) (30% of class actions include incentive awards to class representatives). Courts have discretion to approve incentive awards based on the amount of time and effort spent, the duration of the litigation, any risk incurred and the personal benefit (or lack thereof) as a result of the litigation. *See Cobell v. Salazar*, 679 F.3d 909, 922 (D.C. Cir. 2012).

The six Class Representatives have dedicated their time assisting in the litigation of this Action. Among other things, they assisted Plaintiffs' Counsel in: (1) providing evidence and gathering facts for this case, as well as assisting in the preparation of the complaints that were filed; (2) collecting their documents; (3) staying abreast of the litigation and settlement negotiations; and (4) reviewing and approving the Settlement. (*See* Halunen Decl., ¶58.) The requested incentive awards are modest in comparison to other awards approved in this District. *See Trombley*, 826 F Supp. 2d at 207-08 (approving incentive awards of $5,000 each for named plaintiffs); *Cohen*, 522 F. Supp. 2d at 124 (approving incentive awards of $7,500 each to named plaintiffs); *Wells*, 557 F. Supp. 2d at 9 (approving incentive awards of $10,000 each to named plaintiffs).

The Class Representatives' efforts and time should not go unrecognized. Thus, Plaintiffs respectfully request that the Court approve the incentive award of $1,000 for each of the Class Representatives.

22

## VI.    CONCLUSION

For the reasons set forth above, Plaintiffs respectfully request that the Court enter an order approving: (1) $950,000 in attorneys' fees and expenses; and (2) an incentive award of $1,000 each to Class Representatives Richardson, Sandler, Peshimam, Bertrand, Krengel, and Ligon, for their time and effort as class representatives in this litigation.

Respectfully submitted,

MEHRI & SKALET, PLLC

Dated: August 21, 2013

/s/ Michael Lieder
MICHAEL LIEDER (D.C. Bar No. 444273)
1250 Connecticut Avenue NW
Suite 300
Washington, DC 20036
Telephone: 202/822-5100
Fax:  202/822-4997
mlieder@findjustice.com

Local Counsel for Plaintiffs and the [Proposed] Class

HALUNEN & ASSOCIATES
CLAYTON HALUNEN
SUSAN M. COLER
MELISSA W. WOLCHANSKY
1650 IDS Center
80 South Eighth Street
Minneapolis, MN  55402
Telephone:  612/605-4098
Fax:  612/605-4099
halunen@halunenlaw.com
coler@halunenlaw.com
wolchansky@halunenlaw.com

THE MEHDI FIRM, PC
AZRA Z. MEHDI
One Market
Spear Tower, Suite 3600
San Francisco, CA  94105

Telephone:  415/293-8039
Fax:  415/293-8001
azram@themehdifirm.com

Attorneys for Plaintiffs and the [Proposed] Class

**ECF CERTIFICATION**

The undersigned hereby certifies that, on August 21, 2013, a copy of the foregoing Memorandum of Law in Support of Plaintiffs' Unopposed Motion for an Award of Attorneys' Fees, Reimbursement of Expenses to Class Counsel and Incentive Award Payments to the Class Representatives was served on all counsel of record via electronic case filing notification. The filing attorney attests that he has obtained concurrence regarding the filing of this document from the signatories to this document.

Dated:  August 21, 2013                    By:     /s/ Michael Lieder
                                                    MICHAEL LIEDER