**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| ALEXIS RICHARDSON, *et al.*,<br><br>Plaintiffs,<br><br>v.<br><br>L'OREAL USA, INC.,<br><br>Defendant. | Case No: 13-CV-00508-JDB |
| MELISSA HOLYOAK,<br><br>Objector. | |

---

**OBJECTION OF MELISSA HOLYOAK**

---

Adam E. Schulman (DC Bar No. 1001606)
CENTER FOR CLASS ACTION FAIRNESS
1718 M Street NW, No. 236
Washington, DC 20036
Phone: (610) 457-0856
Email: shuyande24@gmail.com

*Attorney for Objector Melissa Holyoak*

TABLE OF CONTENTS

**TABLE OF CONTENTS**...............................................................................................I

**TABLE OF AUTHORITIES**......................................................................................II

**INTRODUCTION** ........................................................................................................ 1

**I.**      Melissa Holyoak is a class member and intends to appear at the fairness hearing................. 2

**II.**     The class cannot be certified as a mandatory 23(b)(2) class................................................... 4

      **A.**      Monetary claims do not belong in mandatory 23(b)(2) classes. ................................ 6

      **B.**      This class cannot be certified under (b)(2) because of the monetary components at stake. ......................................................................................................................... 8

            **1.**      Monetary claims predominate from the perspective of the class, its representatives and its claims. ........................................................................... 10

            **2.**      Monetary claims predominate from the perspective of the release. .................... 17

            **3.**      Predominance is not a matter of class counsel's subjective preferences; they cannot circumvent (b)(2)'s prerequisites by settling for injunctive relief. ............ 19

**III.**    The unbounded class definition violates Fed. R. Civ. P. 23(e)(1) and 23(e)(5)..................... 22

**IV.**    Even if certifiable, this settlement is not fair....................................................................... 24

      **A.**      The ensemble of attorneys' fees and incentive award provisions signal a self-dealing settlement............................................................................................................... 27

      **B.**      The settlement inappropriately treats salon-purchasing class members equivalent to mass-retail purchasers............................................................................................ 36

**CONCLUSION**..........................................................................................................**39**

# TABLE OF AUTHORITIES

## Cases

*Aho v. Americredit Fin. Servs.,* No. 10-cv-1373, 2011 WL 3047677, 2011 U.S. Dist. LEXIS 80426 (S.D. Cal. Jul. 25, 2011) ................................................................................................................15

*Alaniz v. Saginaw County,* No. 05-10323, 2009 U.S. Dist. LEXIS 43340 (E.D. Mich. May 21, 2009) ..23

*Allison v. Citgo Petroleum Corp.,* 151 F.3d 402 (5th Cir. 1998) ................................................ 8, 15

*Amchem Prods. Inc. v. Windsor,* 521 U.S. 591 (1997). .................................................. 5, 18-19, 24

*Am. Express Co. v. Italian Colors Rest.,* 133 S. Ct. 2304 (2013)....................................................18

*Ansoumana v. Gristede's Operating Corp.,* 201 F.R.D. 81 (S.D.N.Y. 2001) ....................................23

*AT&T Mobility v. Concepcion,* 131 S. Ct. 1740 (2011)..................................................................18

*Aviritt v. Reliastar Life Ins. Co.,* 615 F.3d 1023 (8th Cir. 2010) ....................................................16

*Bacon v. Honda of Am. Mfg., Inc.,* 205 F.R.D. 466 (S.D. Ohio 2001), *aff'd* 370 F.3d 565 (6th Cir. 2004) ...........................................................................................................................................19-20

*Bentley v. Honeywell, Int'l Inc.,* 223 F.R.D. 471 (S.D. Ohio. 2004) ...............................................23

*Blackman v. District of Columbia,* 633 F.3d 1088 (D.C. Cir. 2011) .................................... 6, 9, 12

*Bohn v. Boiron, Inc.,* No. 11 C 08704, 2013 U.S. Dist. LEXIS 107928 (N.D. Ill. Aug. 1, 2013).......13-14

*Bolin v. Sears, Roebuck & Co.,* 231 F.3d 970 (5th Cir. 2000).................................... 11, 15, 20, 21

*Broussard v. Meineke Disc. Muffler Shopes,* 155 F.3d 331 (4th Cir. 1998) .....................5, 34, 36, 38

*Brown v. Kelly,* 609 F.3d 467 (2d Cir. 2010) ............................................................................11

*Carrera v. Bayer Corp.,* No. 12-2621, 2013 U.S. App. LEXIS 17479 (3d Cir. Aug. 21, 2013).................38

*Casa Orlando Apts., Ltd. v. Fannie Mae,* 624 F.3d 185 (5th Cir. 2010) .........................................12

*Cattie v. Wal-Mart Stores, Inc.,* 504 F. Supp. 2d 939 (S.D. Cal. 2007) ..........................................13

*Charrons v. Pinnacle Group N.Y. LLC,* 269 F.R.D. 221 (S.D.N.Y. 2010) ........................................11

*Cholakyan v. Mercedes-Benz USA, LLC,* 281 F.R.D. 534 (C.D. Cal. 2012) ......................................12

*Christ v. Beneficial Corp.,* 547 F.3d 1292 (11th Cir. 2008) ........................................................15

*Clarke v. Advanced Private Networks, Inc.,* 173 F.R.D. 521 (D. Nev. 1997) ...................................17

*Cobell v. Salazar,* 679 F.3d 909 (D.C. Cir. 2012) ............................................................. 26, 35

*Compaq Computer Corp. v. Lapray,* 135 S.W.3d 657 (Tex. 2004) ..................................................8

*Crawford v. Equifax Payment Servs.*, 201 F.3d 877 (7th Cir. 2000)............................................. 18, 21, 30, 34

*Creative Montessori Learning Ctrs. v. Ashford Gear LLC*, 662 F.3d 913 (7th Cir. 2011) .............................36

*Cruz v. Dollar Tree Stores, Inc.*, No. 07-2050, 2009 U.S. Dist. LEXIS 62817 (N.D. Cal. Jul. 2, 2009) ...23

*Ellis v. Costco Wholesale Corp.,* 657 F.3d 970 (9th Cir. 2011)........................................................20

*Eubanks v. Billington*, 110 F.3d 87 (D.C. Cir. 1997).......................................................... 6, 7

*Felix v. Northstar Location Servs.*, No. 11-cv-00166(JJM), 2013 U.S. Dist. LEXIS 74717 (W.D.N.Y. May 28, 2013) ..................................................................... 18, 30

*Great-West Life & Annuity Ins. Co. v. Knudson*, 534 U.S. 204 (2002).....................................14-15

*Gulf Oil v. Bernard*, 452 U.S. 89 (1981).........................................................................24

*Gunnells v. Healthplan Servs.*, 348 F.3d 417 (4th Cir. 2003) ..............................................5

*Haggart v. Endogastric Solutions, Inc.*, No. 10-cv-346, 2012 U.S. Dist. LEXIS 89767 (W.D. Pa. Jun. 28, 2012) ...........................................................................11-12

*Hecht v. United Collection Bureau, Inc.*, 691 F.3d 218 (2d Cir. 2012) ..............................11, 12, 21

*Hanlon v. Chrysler Corp.*, 150 F.3d 1011 (9th Cir. 1998)........................................................30

*Hodgers-Durgin v. de la Vina*, 199 F.3d 1037 (9th Cir. 1999).................................................13

*Huber v. Taylor*, No. 002-304, 2011 WL 4553154, 2011 U.S. Dist. LEXIS 111704 (W.D. Pa. Sept. 29, 2011) ...........................................................................15

*Hubbard v. Donahoe*, No. 03-1062 (RJL), 2013 U.S. Dist. LEXIS 107096 (D.D.C. Jul. 31, 2013) . 26, 28

*In re Baby Prods. Antitrust Litig.*, 708 F.3d 163 (3d Cir. 2013) ...................................................31

*In re Bluetooth Headset Prod. Liab. Litig.*, 654 F.3d 935 (9th Cir. 2011) .................................*passim*

*In re Classmates.com Consol. Litig.*, No. 09-cv-0045-RAJ, 2012 U.S. Dist. LEXIS 83480 (W.D. Wash. Jun. 15, 2012) ..........................................................................3

*In re Cmty. Bank of N. Va. & Guar. Nat'l Bank of Tallahassee Second Mortg Litig.*, 418 F.3d 277 (3d Cir. 2005) ...........................................................................27, 32-33

*In re Dry Max Pampers Litig.*, No. 11-4156, --F.3d--, 2013 U.S. App. LEXIS 15930, 2013 WL 3957060 (6th Cir. Aug. 2, 2013) ...........................................................................*passim*

*In re Gen. Motors Corp. Pick-up Truck Fuel Tank Prods. Liab. Litig.*, 55 F.3d 768 (3d Cir. 1995) 8-9, 14, 28

*In re HP Inkjet Printer Litig.*, 716 F.3d 1173 (9th Cir. 2013) ............................................. 31, 32

*In re Katrina Canal Breaches Litig.*, 628 F.3d 185 (5th Cir. 2010).......................................... 26, 29

*In re Literary Works in Electronic Databases Copyright Litig.*, 654 F.3d 242 (2d Cir. 2011) ........................38

*In re LivingSocial Mktg. & Sales Practices Litig.*, MDL No. 2254, __ F. Supp. 2d.__, 2013 WL 1181489,

2013 U.S. Dist. LEXIS 40059 (D.D.C. Mar. 22, 2013) .................................................... 25, 29, 30, 31

*In re Monumental Life Ins. Co.*, 365 F.3d 408 (5th Cir. 2004)........................................................20

*In re Oracle Secs. Litig.*, 132 F.R.D. 538 (N.D. Cal. 1990) ............................................................29

*In re Rail Freight Fail Surcharge Antitrust Litig.*, 287 F.R.D. 1 (D.D.C. 2012) ...........................23

*In re Telectronics Pacing Sys. Inc.*, 221 F.3d 870 (6th Cir. 2000)..................................................20

*In re VA Data Theft Litig.*, 653 F. Supp. 2d 58 (D.D.C. 2009).................................................28-29

*In re Veneman*, 303 F.3d 789 (D.C. Cir. 2002) ................................................................................

*In re Wal-Mart Stores, Inc.*, No. 06-02069, 2008 WL 1990806, 2008 U.S. Dist. LEXIS 109446 (N.D. Cal. May. 2, 2008)...................................................................................................................23

*Janes v. Triborough Bridge & Tunnel Auth.*, No. 06 Civ. 1427, 2011 U.S. Dist. LEXIS 115381 (S.D.N.Y. Oct. 4, 2011) ...................................................................................................................15

*Jefferson v. Ingersoll Int'l Inc.*, 195 F.3d 894 (7th Cir. 1999) .....................................................7-8

*Johnson v. District of Columbia*, 248 F.R.D. 46 (D.D.C. 2008)......................................................23

*Kakani v. Oracle Corp.*, No. C 06-06493 WHA, 2007 WL 1793774, 2007 U.S. Dist. LEXIS 47515 (N.D. Cal. Jun. 19, 2007) ...............................................................................................................26

*Kartman v. State Farm Mut. Auto Ins. Co.*, 634 F.3d 883 (7th Cir. 2011) ....................................14

*Kottaras v. Whole Foods Mkt., Inc.*, 281 F.R.D. 16 (D.D.C. 2012) ...............................................16

*Lemon v. Int'l Union of Operating Eng'rs, Local No. 139*, 216 F.3d 577 (7th Cir. 2000) .............14

*Lobatz v. U.S. West Cellular of Cal., LLC*, 222 F.3d 1142 (9th Cir. 2000).....................................36

*Luevano v. Campbell*, 93 F.R.D. 68 (D.D.C. 1981) .........................................................................

*Lusby v. Gamestop, Inc.*, No. C12-03783, 2013 U.S. Dist. LEXIS 41794 (N.D. Cal. Mar. 25, 2013) .....21

*Marcus v. BMW of N. Am., LLC*, 687 F.3d 583 (3d Cir. 2012) ......................................................23

*Mazza v. Am. Honda Co.*, 666 F.3d 581 (9th Cir. 2012) .................................................................16

*McDermott v. Marcus, Errico, Emmer & Brooks, P.C.*, 911 F. Supp. 2d 1 (D. Mass. 2012) ........37

*McManus v. Fleetwood Enters., Inc.*, 320 F.3d 545 (5th Cir. 2003)...............................................11

*McNair v. Synapse Group, Inc.*, 672 F.3d 213 (3d Cir. 2012)........................................................13

*Melong v. Micronesian Claims Comm'n*, 643 F.2d 10 (D.C. Cir. 1980) ........................................38

*Mirfasihi v. Fleet Mortgage Corp.*, 356 F.3d 781 (7th Cir. 2004) .............................................4, 36

*Mogel v. UNUM Life Ins. Co. of Am.*, 646 F. Supp. 2d 177 (D. Mass. 2009) ...............................11

*Morrow v. Washington*, 277 F.R.D. 172 (E.D. Tex. 2011) .............................................................15

*Mueller v. CBS, Inc.*, 200 F.R.D. 227 (W.D. Pa. 2001)...................................................................23

*Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306 (1950)...............................................24

*Murray v. GMAC Mortg. Corp.*, 434 F.3d 948 (7th Cir. 2006) ......................................................34

*Ortiz v. Fibreboard Corp.*, 527 U.S. 815 (1999) ....................................................... 7, 16, 18, 37, 38

*Perdue v. Kenny A.,* 130 S. Ct. 1662 (2010) ...........................................................................32

*Pernod Richard USA, LLC v. Baccardi U.S.A., Inc.,* 653 F.3d 241 (3d Cir. 2011) ....................................37

*Phillips Petroleum Co. v. Shutts,* 472 U.S. 797 (1985) ...........................................................6, 18, 19

*Pilgrim v. Universal Health Card, LLC,* 660 F.3d 943 (6th Cir. 2011) ................................................16

*Radcliffe v. Experian Info. Solutions*, 715 F.3d 1157 (9th Cir. 2013) .........................................34-35

*Reeb v. Ohio Dep't of Rehab & Corr.*, 435 F.3d 639 (6th Cir. 2006) ...........................................6, 7, 9

*Richards v. Delta Air Lines, Inc.*, 453 F.3d 525 (D.C. Cir. 2006) ............................................... 4, 14

*Robinson v. Hornell Brewing Co.*, No. 11-2183, 2012 WL 1232188, 2012 U.S. Dist. LEXIS 51460
   (D.N.J. Apr. 11, 2012) .............................................................................................13

*Rodriguez v. Nat'l City Bank*, --F.3d--, 2013 U.S. App. LEXIS 16615, 2013 WL 4046385
   (3d Cir. Aug. 12, 2013) ...........................................................................................5

*Saur v. Snappy Apple Farms, Inc.*, 203 F.R.D. 281 (W.D. Mich. 2001)...............................................23

*Sobel v. Hertz*, No. 3:06-cv-00545, 2011 U.S. Dist. LEXIS 68984 (D. Nev. Jun. 27, 2011)......31-32, 33

*Staton v. Boeing*, 327 F.3d 938 (9th Cir. 2003)..............................................................27, 30, 35

*Stearns v. Select Comfort Retail Corp.* No. 08-cv-2746 JF, 2009 WL 1635931 (N.D. Cal. Jun. 5, 2009) 14

*Stoneback v. ArtsQuest,* No. 12-cv-03287, 2013 U.S. Dist. LEXIS 86457 (E.D. Pa. Jun. 19, 2013) 12, 13

*Swedish Hosp. Corp., v. Shalala*, 1 F.3d 1261 (D.C. Cir. 1993).....................................................28

*Szabo v. Bridgeport Machs., Inc.*, 249 F.3d 672 (7th Cir. 2001).....................................................16

*Thomas v. Albright*, 139 F.3d 227 (D.C. Cir. 1998) ..............................................................15, 36

*Thorn v Jefferson-Pilot Life Ins. Co.*, 445 F.3d 311 (4th Cir. 2006) ...............................................4

*Ticor Title Ins. Co. v. Brown*, 511 U.S. 117 (1994) .................................................................6

*Trollinger v. Tyson Foods, Inc.*, No. 4:02-cv-23, 2007 U.S. Dist. LEXIS 88866 (E.D. Tenn. Dec. 3, 2007)
   ....................................................................................................................23

*Trombley v. Nat'l City Bank*, 826 F. Supp. 2d 179 (D.D.C. 2011) ................................................ 21, 36-37

*True v. Am. Honda Motor Co.*, 749 F. Supp. 2d 1052 (C.D. Cal. 2010) .................................................. 30

*Veal v. Citrus World*, No. 2:12-cv-891-IPJ, 2013 WL 120761, 2013 U.S. Dist. LEXIS 2620 (N.D. Ala.
   Jan. 8, 2013) ....................................................................................................13

*Vallario v. Vandehey*, 554 F.3d 1259 (10th Cir. 2009) ..............................................................14

*Vassalle v. Midland Funding LLC*, 708 F.3d 746 (6th Cir. 2013) ....................................................26

*Wal-Mart Stores Inc. v. Dukes*, 131 S. Ct. 2541 (2011) ...........................................................*passim*

*Winston & Strawn LLP v. FDIC*, 894 F. Supp. 2d 115 (D.D.C. 2012)......................................32

*Weinberger v. Great N. Nekoosa Corp.*, 925 F.2d 518 (1st Cir. 1991) ...................................... 32, 33

*Wike v. Vertrue, Inc.*, 2010 WL 3719524, 2010 U.S Dist. LEXIS 96700 (M.D. Tenn. Sept. 15, 2010) 23

## Rules and Statutes

Fed. R. Civ. P. 23(a) .......................................................................................................................5

Fed. R. Civ. P. 23(a)(4) ..........................................................................................................37-38

Fed. R. Civ. P. 23(b)(2) ......................................................................................................*passim*

Fed. R. Civ. P. 23(b)(3) ...............................................................................................1, 5, 7, 16

Fed. R. Civ. P. 23(e)...........................................................................................................22, 25, 28

Fed. R. Civ. P. 23(e)(1) ...........................................................................................................22, 24

Fed. R. Civ. P. 23(e)(2) ...........................................................................................................24, 27

Fed. R. Civ. P. 23(e)(5) ...........................................................................................................22, 24

U.S. Const., Amend. V ..............................................................................................................6-7

U.S. Const., Amend. VII.............................................................................................................7

## Other Authorities

2 NEWBERG ON CLASS ACTIONS, § 8.04 ....................................................................................22

7B Charles Alan Wright et al., FEDERAL PRACTICE AND PROCEDURE, § 1787 (2d ed. 1986) .............22

Advisory Committee Notes, 39 F.R.D. 98 (1966) ......................................................................12

AMERICAN LAW INSTITUTE, PRINCIPLES OF THE LAW OF AGGREGATE LITIG. § 3.05(C) ...................25

Brickman, Lester, *Lawyer Barons* (2011)...........................................................................33-34

Brunet, Edward, *Class Action Objectors: Extortionist Free Riders or Fairness Guarantors*, 2003 U. CHI.

LEGAL F. 403 (2003) .........................................................................................................3

Burch, Elizabeth Chamblee, *Optimal Lead Plaintiffs*, 64 VAND. L. REV. 1109 (2011) ...........................20

Federal Judicial Center, MANUAL FOR COMPLEX LITIGATION § 21.222 (4th ed. 2004) ......................23

Federal Judicial Center, MANUAL FOR COMPLEX LITIGATION § 21.27 (4th ed. 2004) ......................38

Federal Judicial Center, MANUAL FOR COMPLEX LITIGATION § 21.612 (4th ed. 2004) .................. 9, 25

Fitzpatrick, Brian T., *The End of Objector Blackmail?*, 62 VAND. L. REV. 1623 (2009) ..............................4

Issacharoff, Samuel, *Class Action Conflicts*, 30 U.C. DAVIS L. REV. (1997) ...............................24

Issacharoff, Samuel, *Preclusion, Due Process, and the Right to Opt Out of Class Actions*, 77 NOTRE DAME L. REV. 1057 (2002) ............................................................................................ 8, 17

James, Fleming Jr.,  Geoffrey C. Hazard, Jr. & John Leubsdorf, CIVIL PROCEDURE § 10.22 (5th ed. 2001) .............................................................................................................. 16-17

Kaczynski, Elizabeth R., Note, *The Inclusion of Future Members in Rule 23(b)(2) Class Actions*, 85 COLUM. L. REV. 397 (1985)....................................................................................... 23-24

Karlsgodt, Paul & Raj Chohan, *Class Action Settlement Objectors: Minor Nuisance or Serious Threat to Approval*, BNA: CLASS ACTION LITIG. REPORT (Aug. 12, 2011) ..................................... 3

Leslie, Christopher R., *The Significance of Silence*, 59 FLA. L. REV. 71 (2007).......................................................................................... 25

Mullenix, Linda S., *No Exit: Mandatory Class Actions in the New Millennium and the Blurring of Categorical Imperatives*, 2003 U. CHI. LEGAL F. 177 (2003) ................................................. 20-22

Restatement (Third) of Restitution and Unjust Enrichment §49 cmt. a (2011) .................................... 14

Silver, Charles, *Due Process and the Lodestar Method*, 74 TUL. L. REV. 1809 (2000).................................... 33

Wolfman, Brian, *Judges! Stop Deferring to Class-Action Lawyers*, 2 U. MICH. J. L. REFORM 80 (2013) ...... 26

Wolfman, Brian & Alan B. Morrison, *What the Shutts Opt-Out Right Is and What It Ought to Be*, 74 UMKC L. REV. 729 (2006) ................................................................................ 12, 20

Zabcik, Brian, *Conscientious Objector*, AM. LAWYER (May 1, 2013), *available at* http://www.americanlawyer-digital.com/americanlawyer/lit2013spring/?lm=1367275927000&pg=11#pg11 ........................... 3

# INTRODUCTION

Hair products, "*En garde!*" This settlement is a tangled mess: the proposed class is improperly defined and certified; the settlement fails to produce any compensatory value for class members, still it earmarks nearly $1 million for class counsel and the named representatives.

In structure and design, the proposed settlement is a close cousin of that which was forcefully repudiated by the Sixth Circuit in *In re Dry Max Pampers Litig.* ("*Pampers*"), No. 11-4156, --F.3d--, 2013 WL 3957060 (6th Cir. Aug. 2, 2013). As in *Pampers*, the settlement's provisions sustain class counsel, the named representatives and the defendant, but disserve class members by burdening their claims in exchange for valueless labeling changes that only benefit *future* customers. The settling parties appear to subscribe to the core "fictive" premises rejected by *Pampers*: a belief that former purchasers care about "every square centimeter" of the defendant's prospective labeling and an ignorance of the "economic reality" that fees cannot be divorced from settlement fairness simply by segregating the fee fund and the negotiation. 2013 WL 3957060, at *3, *6.

This case involves purportedly misleading advertising on L'Oreal labels. Yet one discrete segment of the class could not possibly have been deceived: those, including named plaintiff Nancie Ligon, who purchased at a Big Kmart Store or other mass retail outlet. Nonetheless, the settling parties strain to shoehorn salon-purchasers into a mandatory class with mass retail-purchasers, leaving both subgroups empty-handed. The result is an intra-class conflict, occasioned by a theory that again "denigrate[s] the intelligence of ordinary consumers." *Pampers*, 2013 WL 3957060, at *5.

A common thread unites many of the shortcomings of this settlement: a failure to respect the autonomy of absent class members. This vice manifests itself in attempting to certify the class as a (b)(2) class rather than as an arguably suitable (b)(3) class; in proposing a class definition that would deprive certain class members of notice and opportunity to object entirely; and in coercing

absent class members into waiving their right to seek to use the class action mechanism. A (b)(2) class is untenable here because the class members, class representatives, class claims and available relief all point to the fact that monetary claims predominate. *See Wal-Mart Stores Inc. v. Dukes,* 131 S. Ct. 2541 (2011). It would be reversible error to approve the settlement.

## I.     Melissa Holyoak is a class member and intends to appear at the fairness hearing through her counsel.

Melissa Ann Holyoak is member of the putative (b)(2) settlement class, preliminarily certified as all consumers nationwide who purchased L'Oreal Products for personal, family or household use after August 30, 2008. During 2010 and 2011 Holyoak on multiple occasions purchased for personal use Redken All Soft Shampoo from Salon Envie in Columbia, Missouri. *See* Holyoak Decl. ¶3. She is therefore a member of the relevant class who has standing to object to the proposed certification and settlement.

Holyoak's address is 3804 Faurot Drive, Columbia, Missouri 65203. Her telephone number is (573) 823-5377. *See* Holyoak Decl. ¶2. Her email address is melissaholyoak@gmail.com. *Id.* She is an attorney with the public interest law firm Center for Class Action Fairness ("CCAF"). She is represented here by another CCAF attorney, Adam Schulman. Through attorney Schulman, she intends to appear[1] at the Fairness Hearing to discuss the points raised in this Objection and to address any responses that the settling parties may make. She does not plan to call any witnesses but reserve the right to cross-examine any witnesses who testify in support of the certification or settlement.

CCAF, established in 2009, represents class members *pro bono* in class actions where class counsel employs unfair class action procedures to benefit themselves at the expense of the class. *See e.g., Pampers,* 2013 WL 3957060, at *2 (CCAF's client's objections " were numerous, detailed, and

---

[1] She will not appear personally.

substantive.") (reversing settlement approval). CCAF has won millions of dollars for class members. *See, e.g.,* Brian Zabcik, *Conscientious Objector*, AM. LAWYER (May 1, 2013), *available at* http://www.americanlawyer-digital.com/americanlawyer/lit2013spring/?lm=1367275927000&pg=11#pg11; *In re Classmates.com Consol. Litig.*, No. 09-cv-0045-RAJ, 2012 U.S. Dist. LEXIS 83480, at *29 (W.D. Wash. Jun. 15, 2012) (noting that CCAF's client "was relentless in his identification of the numerous ways in which the proposed settlements would have rewarded class counsel … at the expense of class members" and "significantly influenced the court's decision to reject the first settlement and to insist on improvements to the second").

Because it has been CCAF's experience that class action attorneys often employ *ad hominem* attacks in attempt to discredit objections, it is perhaps relevant to distinguish CCAF's mission from the agenda of those who are often styled "professional objectors." A "professional objector" is a specific legal term referring to for-profit attorneys who attempt or threaten to disrupt a settlement unless plaintiffs' attorneys buy them off with a share of the attorneys' fees; thus, some courts presume that the objector's legal arguments are not made in good faith. Edward Brunet, *Class Action Objectors: Extortionist Free Riders or Fairness Guarantors*, 2003 U. CHI. LEGAL F. 403, 437 n.150 (2003). This is not CCAF's business model. Paul Karlsgodt & Raj Chohan, *Class Action Settlement Objectors: Minor Nuisance or Serious Threat to Approval*, BNA: CLASS ACTION LITIG. REPORT (Aug. 12, 2011) (distinguishing CCAF from professional objectors). CCAF refuses to engage in *quid pro quo* settlements and does not extort attorneys; and has never withdrawn an objection in exchange for payment. Instead, it is funded entirely through charitable donations and court-awarded attorneys' fees.

Nonetheless, to preempt any possibility of a false and unjustifiable accusation of objecting in bad faith and seeking to extort class counsel, Holyoak is willing to stipulate to an injunction

prohibiting herself from accepting compensation in exchange for the settlement of this objection. *See* Brian T. Fitzpatrick, *The End of Objector Blackmail?*, 62 VAND. L. REV. 1623 (2009) (suggesting inalienability of objections as solution to objector blackmail problem). Holyoak brings this objection through CCAF in good faith to protect the interests of the class.

## II.     The class cannot be certified as a mandatory 23(b)(2) class.

"Class-action settlements are different from other settlements." *Pampers*, 2013 WL 3957060, at *1. "[I]n class-action settlements the district court cannot rely on the adversarial process to protect the interests of the persons most affected by the litigation—namely, the class. Instead, the law relies upon the fiduciary obligations of the class representatives and, especially, class counsel, to protect those interests. And that means the courts must carefully scrutinize whether those fiduciary obligations have been met." *Id.* at *3 (internal quotation omitted). "Because class actions are rife with potential conflicts of interest between class counsel and class members, district judges presiding over such actions are expected to give careful scrutiny to the terms of proposed settlements in order to make sure that class counsel are behaving as honest fiduciaries for the class as a whole." *Mirfasihi v. Fleet Mortgage Corp.*, 356 F.3d 781, 785 (7th Cir. 2004). Thus, through its oversight responsibility, the court itself assumes a derivative "fiduciary obligation" to the class. *Luevano v. Campbell*, 93 F.R.D. 68, 85 (D.D.C. 1981); *Pampers*, 2013 WL 3957060, at *3.

The judicial duty "to protect … the rights of the absent plaintiffs" extends to the decision to grant class certification, wherein "district courts must conduct a rigorous analysis to ensure compliance with Rule 23, paying careful attention to the requirements of that Rule." *Thorn v. Jefferson-Pilot Life Ins. Co.*, 445 F.3d 311, 318 (4th Cir. 2006) (internal quotations and citations omitted). A proponent of class certification "has the burden of showing that the requirements of Rule 23(a) are met and that the class is maintainable pursuant to one of Rule 23(b)'s subdivisions." *Richards v. Delta Air Lines, Inc.*, 453 F.3d 525, 529 (D.C. Cir. 2006).

Aside from trial manageability concerns, that burden is no lighter when the Court is confronted with a settlement-only class certification. In fact, the specifications of rules Rule 23(a) and (b)(2) are "designed to protect absentees by blocking unwarranted or overbroad class definition" and "demand undiluted, even heightened, attention in the settlement context." *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 620 (1997); *Pampers*, 2013 WL 3957060, at *7 (same); *Rodriguez v. Nat'l City Bank*, --F.3d--, 2013 U.S. App. LEXIS 16615, 2013 WL 4046385, at *6 (3d Cir. Aug. 12, 2013) (the "policy in favor of voluntary settlement does not alter the 'rigorous analysis' needed to ensure that the Rule 23 requirements are satisfied."). Put another way, "it is not the mission of Rule 23(e) to supply the cohesion that legitimizes a settlement-only class action." *Gunnells v. Healthplan Servs.*, 348 F.3d 417, 451 (4th Cir. 2003) (Niemeyer, J., concurring in part and dissenting in part).

Fed. R. Civ. P. 23(b)(2) allows a class action to be maintained if 23(a)(1)-(4) are satisfied and "the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole." Rule 23(b)(2), however, lacks two paramount procedural protections that are afforded to absent class members in a (b)(3) class: the statutory right to exclude oneself and the statutory right to the "best notice practicable."  Given this state of affairs, courts should be even more vigilant in their enforcement of the specifications of (b)(2). *See Broussard v. Meineke Disc. Muffler Shops*, 155 F.3d 331, 338 (4th Cir. 1998) (intra-class conflicts are "of particular concern" in mandatory classes). The most potent textual protection is the requirement that "final injunctive or corresponding declaratory relief [be] appropriate with respect to the class as a whole." Fed R. Civ. P. 23(b)(2); *Wal-Mart Stores Inc. v. Dukes,* 131 S. Ct. 2541, 2560 (2011) ("[T]he validity of a (b)(2) class depends on whether final injunctive relief or corresponding declaratory relief is appropriate respecting the class *as a whole*.") (quoting Rule 23(b)(2) and adding emphasis).

Two notable consequences follow from this textual prescription. First, (b)(2) classes are not suitable for asserting monetary claims that accrue on an individual basis. *Wal-Mart*, 131 S. Ct. at 2557 ((b)(2) "does not authorize class certification when each class member would be entitled to an individualized award of monetary damages."). Second, the text entails that "cohesiveness is a significant touchstone of a (b)(2) class." *Blackman v. District of Columbia*, 633 F.3d 1088, 1094 (D.C. Cir. 2011) (Brown, J., concurring) (citing *Barnes v. Am. Tobacco Co.*, 161 F.3d 127, 142-43 & n.18 (3d Cir. 1998)); *accord Eubanks v. Billington*, 110 F.3d 87, 94 (D.C. Cir. 1997) ("[A]ssumptions of homogeneity and class cohesiveness…underlie (b)(2) certification."); *Reeb v.Ohio Dep't of Rehab. & Corr.*, 435 F.3d 639 (6th Cir. 2006) ("homogeneity of interests" is what justifies mandatory class treatment). The putative class here lacks cohesiveness and asserts individual monetary claims, each of which precludes (b)(2) certification.

**A.    Monetary claims do not belong in mandatory 23(b)(2) classes.**

Within the past twenty years the Supreme Court, with increasing frequency, has suggested that 23(b)(2) class actions cannot accommodate claims for monetary relief. In 1985, when *Phillips Petroleum Co. v. Shutts,* 472 U.S. 797, 812 (1985) declared that absent class members have a due process right to opt-out from class actions involving predominantly money damages, the Court conspicuously left undecided the question of whether due process compelled the right of opt out in actions which did not seek predominantly money damages. *Id.* at 811-12 n.3.

Since that time, all indications from the Supreme Court point to the conclusion that due process demands the right of opt out in any action containing any claim, even a non-predominant one, for monetary relief. Notably, in *Ticor Title Ins. Co. v. Brown*, 511 U.S. 117 (1994), in dismissing certiorari as improvidently granted, the Court declared that there is "at least a substantial possibility" that "in actions seeking [any] monetary damages, classes can only be certified under 23(b)(3), which permits opt out." *Id.* at 121. Five years later, the Court warned again that certifying a mandatory

class that includes money damages potentially compromises the Seventh Amendment and due process rights of absent class members. *Ortiz v. Fibreboard Corp.*, 527 U.S. 815, 845-46 (1999).[2]

Most significantly and most recently, the Court determined in *Wal-Mart Stores Inc. v. Dukes*, 131 S. Ct. 2541 (2011) that the "serious possibility that [the inclusion of monetary claims without a right to opt out would violate due process] provides an additional reason not to read Rule 23(b)(2) to include the monetary claims here." *Id.* at 2559. In so concluding, the Court reasoned that

> The mere "predominance" of a proper (b)(2) injunctive claim does nothing to justify elimination of Rule 23(b)(3)'s procedural protections: It neither establishes the superiority of *class* adjudication over *individual* adjudication nor cures the notice and opt-out problems. We fail to see why the Rule should be read to nullify these protections whenever a plaintiff class, at its option, combines its monetary claims with a request—even a "predominating request"— for an injunction. [*Id.*]

Both *Wal-Mart* and *Ortiz* were decisions driven by the canon of constitutional avoidance. They suggest that any time a class action seeks monetary relief on the basis of individuated aggregated claims, as opposed to a unitary group claim, it is best to read Rule 23 as demanding 23(b)(3) certification. "Such individual claims for money damages will always predominate over requested injunctive or declaratory relief." *Reeb v. Ohio Dep't of Rehab & Corr.*, 435 F.3d 639, 641 (6th Cir. 2006). This standard, much like the renowned "incidental damages"[3] standard, effectively harmonizes the Supreme Court's recurrent constitutional concerns with the idea that (b)(2) certifications should go forward when money damages do not "predominate." *See, e.g., Jefferson v.*

---

[2] In the interim, the D.C. Circuit similarly observed that "the underlying premise of (b)(2) certification--that the class members suffer from a common injury that can be addressed by classwide relief--begins to break down when the class seeks to recover … forms of monetary damages to be allocated based on individual injuries." *Eubanks*, 110 F.3d at 95.

[3] Incidental damages can be defined as those "that flow directly from liability to the class *as a whole* on the claims forming the basis of the injunctive or declaratory relief." *Wal-Mart*, 131 S. Ct. at 2560 (quoting *Allison*, 151 F.3d 402, 415 (5th Cir. 1998)).

*Ingersoll Int'l Inc.*, 195 F.3d 894, 897-99 (7th Cir. 1999); *Compaq Computer Corp. v. Lapray*, 135 S.W.3d 657, 667-68 (Tex. 2004).

*Wal-Mart,* the Supreme Court's most forceful proclamation to date, strongly implies that whenever monetary claims are at stake, class members must be permitted the opportunity to opt-out and proceed on their own. 131 S. Ct. at 2559. And this Court should so hold. But, "at a minimum," it affirmatively commands courts to avoid certifying "claims for individualized relief" within mandatory (b)(2) classes. *Wal-Mart*, 131 S. Ct. at 2557.

**B.      This class cannot be certified under (b)(2) because of the monetary components at stake.**

Although *Wal-Mart* disclaimed the significance of "predominating" injunctive claims, even if the opinion is read most narrowly (to adopt the *Allison* standard and permit non-individualized or incidental monetary relief within a constitutionally-viable (b)(2) class), this settlement cannot meet that standard.[4] Thus, it makes sense to evaluate the nature of the money damages claims at stake in this settlement under the minimum threshold test of *Wal-Mart*. Do the monetary claims accrue to the class as a whole (i.e. are incidental) or do they accrue to individual class members (i.e. are predominating)?

The predominance inquiry is made less tractable by the fact that the plaintiffs and defendants seek certification of a settlement-only class. Delaying certification until settlement poses various problems, *see In re Gen. Motors Corp. Pick-up Truck Fuel Tank Prods. Liab. Litig.*, 55 F.3d 768,

---

[4] It suffices to say that the claims here are not group-based, but are compensatory ones that accrued to individuals under the laws of various states upon the purchase of goods. *See* Samuel Issacharoff, *Preclusion, Due Process, and the Right to Opt Out of Class Actions*, 77 NOTRE DAME L. REV. 1057, 1073 (2002) (noting "an important distinction in the nature of the claim between those that truly inhere in the collective entity of the class and those that are merely an aggregation of what might otherwise be self-sustaining individual causes of action.") For the sake of completeness, however, see the remainder of this section.

786-800 (3d Cir. 1995) ("*GM Trucks*"), and calls for heightened judicial scrutiny of the certification. *Id.* at 807; *accord Pampers,* 2013 WL 3957060, at *7; *In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d 935, 946-47 (9th Cir. 2011); Federal Judicial Center, MANUAL FOR COMPLEX LITIGATION § 21.612 (4th ed. 2004).

In the context of a 23(b)(2) settlement, however, the analytical problems are all the more pronounced, because the court should determine whether monetary relief is incidental. If this class was being certified for trial, the (b)(2) analysis would be a comparatively easy matter of two steps: (1) look to the complaint and determine whether any monetary relief sought is incidental and thus non-predominant; and (2) make sure that the class has the requisite "cohesiveness"[5] /"homogeneity of interests"[6] Alternatively, this second inquiry can be conceived of as asking whether the injunctive relief is predominating from the perspective of the class and whether "final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole."[7] But because this is a settlement class, two new factors complicate the equation: (3) the actual relief obtained in the settlement; and (4) the claims released in the settlement. *See Hecht v. United Collection Bureau*, 691 F.3d 218, 223-24 (2d Cir. 2012) (focusing on the "retrospective" class definition in concluding that a (b)(2) settlement certification was improper).

This Court should not certify the class if any of the above factors weigh against (b)(2) certification. Certainly, under D.C. Circuit jurisprudence, if either the complaint contains non-incidental claims for monetary damages or the class is not sufficiently cohesive, the class cannot be

---

[5] *Blackman*, 633 F.3d at 1094.

[6] *Reeb*, 435 F.3d at 649.

[7] Fed. R. Civ. P. 23(b)(2); *Wal-Mart*, 131 S. Ct. at 2560 ("[T]he validity of a (b)(2) class depends on whether final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole.") (quoting 23(b)(2)).

certified. *See Richards*, 453 F.3d at 530 ("If recovery of damages is at the heart of the complaint, individual class members must have a chance to opt out of the class and go at it alone—or not at all."); *Blackman*, 633 F.3d at 1094 (emphasizing necessity of "cohesiveness"); *In re Veneman*, 303 F.3d 789, 792 (D.C. Cir. 2002) (same). From the perspective of due process, however, it is the release that is the vehicle for deprivation of an absent class member's right to sue. Thus, it stands to reason that when certifying a (b)(2) settlement class, the court should ensure that the release does not burden non-incidental monetary claims.

Ultimately, the composition of the class, the type of claims class members possess, and the claims they will release, all lead to the inescapable conclusion that monetary claims predominate. The parties may not end-run this conclusion by having the plaintiffs file a sham complaint and then settling for non-remedial injunctive relief.

### 1.      Monetary claims predominate from the perspective of the class and its representatives

The fact that monetary claims predominate (and (b)(2) certification is inappropriate) is apparent from the class definition. The class is defined as "all consumers nationwide who *purchased* the L'Oreal Products…" Settlement Agreement (Dkt. 9-2) §1.13 (emphasis added). Cohesive classes coalesce behind a common interest that makes appropriate the granting of final injunctive or corresponding declaratory relief. No such interest exists here. In this case there is a discontinuity between the class definition, former buyers, and the prospective injunctive relief sought in the complaint[8] and obtained in the settlement.[9] All settlement relief at most benefits future purchasers of L'Oreal products whereas the class comprises past purchasers.

---

[8] Complaint, Prayer for Relief.

[9] Settlement §2.4.

*Hecht* demonstrates how attempting (b)(2) certification is futile: when class members are "victims of a completed harm with no reference to ongoing injury or risk of future harm," when the definition "ensure[s] that every member would be entitled to damages, but not that every member would have standing to seek injunctive relief," (b)(2) certification is improper. 691 F.3d at 223-24. *Hecht* follows a wide consensus of courts that have rejected past attempts at shoehorning former customers, ex-employees, or any individuals who suffered a discrete harm in the past and who no longer have an ongoing relationship into 23(b)(2) classes that offer prospective injunctive relief. *See e.g., Brown v. Kelly*, 609 F.3d 467, 482 (2d Cir. 2010); *McManus v. Fleetwood Enters., Inc.*, 320 F.3d 545, 553 (5th Cir. 2003); *Bolin v. Sears, Roebuck & Co.,* 231 F.3d 970, 978 (5th Cir. 2000); *Charrons v. Pinnacle Group N.Y. LLC*, 269 F.R.D. 221, 229 (S.D.N.Y. 2010); *Mogel v. UNUM Life Ins. Co. of Am.*, 646 F.Supp.2d. 177, 184 (D. Mass 2009) ("[W]eighing the relative predominance of relief sought is unnecessary where class members do not stand to benefit from the injunctive relief sought: Of course, certification under rule 23(b)(2) is appropriate only if members of the proposed class would benefit from the injunctive relief they request.")(quotation omitted).

If any doubt remained, after *Wal-Mart* it cannot:

> "[E]ven though the validity of a (b)(2) class depends on whether "final injunctive relief or corresponding declaratory relief is appropriate respecting the class *as a whole*," about half the members of the class approved by the Ninth Circuit have no claim for injunctive or declaratory relief at all. Of course, the alternative (and logical) solution of excising plaintiffs from the class as they leave their employment may have struck the Court of Appeals as wasteful of the District Court's time." [*Wal-Mart,* 131 S.Ct. at 2560.]

Thus, post-*Wal-Mart*, courts frequently deny (b)(2) certifications that are inconsonant with the retrospectively-defined classes. *See e.g., Haggart v. Endogastric Solutions, Inc.*, No. 10-cv-346, 2012 U.S. Dist. LEXIS 89767, at *20  (W.D. Pa. Jun. 28, 2012) ("Even more essentially fatal to his motion for certification under (b)(2) is that Plaintiff only seeks to enjoin Defendant from making

representations to future potential EsophyX procedure patients; i.e., to individuals who are not members of the class as defined."); *Cholakyan v. Mercedes-Benz USA, LLC*, 281 F.R.D. 534, 559 (C.D. Cal. 2012); *Stoneback v. ArtsQuest*, No. 12-cv-03287, 2013 U.S. Dist. LEXIS 86457, at *37 (E.D. Pa. Jun. 19, 2013) (class of past purchasers of beer steins could not be certified under (b)(2)).

Commentators too have recognized the problem of mandatory injunctive relief settlement classes that remit no benefit to the class. *See e.g.* Brian Wolfman & Alan B. Morrison, *What the Shutts Opt-Out Right Is and What It Ought to Be*, 74 UMKC L. Rev. 729, 740 (2006) (applying their critique to all cases "where the class includes former customers who will not benefit from injunctive relief unless they choose to do business with the defendant in the future.").

Certainly, a 23(b)(2) class is appropriate when the class is comprised of individuals who maintain an ongoing relationship with the defendant. The prototypical example is a desegregation injunction in a civil rights case. *See* Advisory Committee Notes, 39 F.R.D. 98, 102 (1966). "While (b)(2) classes are not exclusively reserved for civil rights disputes, this class type is especially suited for those plaintiffs." *Casa Orlando Apts., Ltd. v. Fannie Mae*, 624 F.3d 185, 200-201 (5th Cir. 2010).

But when the only shared characteristic amongst class members is that they have purchased L'Oreal products for personal, family or household use since August 2008,  the requisite homogeneous interests necessary to cohere a class around injunctive relief are not present. "[A]t some level of abstraction, a degree of  cohesion will exist in almost any putative class," but fundamentally "the question is not one of fault but one of remedy." *Blackman*, 633 F.3d at 1094.

The problem of mismatch between (b)(2) and the class is compounded here by the fact that the named plaintiffs have themselves no standing to seek injunctive relief. Regardless of whether the underlying statutes permit injunctive relief, injunctions are "unavailable…where there is no showing of any real or immediate threat that the plaintiff will be wronged again." *Hecht*, 691 F.3d at 223-24 (quoting *City of Los Angeles v.Lyons*, 461 U.S. 95, 111 (1983)). Here, according to the Complaint, the

"Plaintiffs were decieve**d** and misle**d** by Defendant's labeling of its Products, and therefore suffer**ed** injury…" Complaint ¶15 (emphasis added). Like the class, they suffered discrete harms in the past. But, perhaps unlike some putative class members, they are now aware, and were aware at the time the suit was filed, that the L'Oreal products are not exclusively sold in high-end salons. "[T]he law accords people the dignity of assuming that they act rationally, in light of the information they possess." *McNair v. Synapse Group, Inc.*, 672 F.3d 213, 225 (3d Cir. 2012). Thus, in *McNair*, the Third Circuit held that the named plaintiffs had no standing to seek an injunction against deceptive renewal techniques when they were no longer subscribers at risk of being deceived by that technique. *Id.* at 226-27.

The theory applies seamlessly to consumer claims of false advertising on retail products. *See, e.g., Stoneback*, 2013 U.S. Dist. LEXIS 86457, at *37 ("[B]ecause plaintiffs now know the origin of the steins and mugs, it is difficult to discern how they would be injured by future misrepresentations from defendants.") (claims alleging "authentic German" steins were made in China); *Robinson v. Hornell Brewing Co.*, No. 11-2183, 2012 WL 1232188, 2012 U.S. Dist. LEXIS 51460, at *17 (D.N.J. Apr. 11, 2012) ("Plaintiff cannot plausibly demonstrate that he is likely to be fooled into purchasing Defendants' products.") (claims alleging "all natural" labeling of Arizona iced tea); *Veal v. Citrus World*, No. 2:12-cv-891-IPJ, 2013 WL 120761, 2013 U.S. Dist. LEXIS 2620, at *22 (N.D. Ala. Jan. 8, 2013) (following *Robinson* in case alleging misrepresentative labeling of orange juice as "fresh squeezed" and "pure"); *Cattie v. Wal-Mart Stores, Inc.*, 504 F. Supp. 2d 939, 951 (S.D. Cal. 2007) (*sua sponte* raising lack of standing to seek injunction on false advertising claim when plaintiffs knew the truth about defendant's products). The rule of law is simple: "Unless the named plaintiffs are themselves entitled to seek injunctive relief they may not represent a class seeking that relief." *Hodgers-Durgin v. de la Vina*, 199 F.3d 1037, 1045 (9th Cir. 1999). *See also Bohn v. Boiron, Inc.*, No. 11 C 08704, 2013 U.S. Dist. LEXIS 107928, at *8 (N.D. Ill. Aug. 1, 2013) ("[The named plaintiff] cannot

rely on the prospect that other consumers may be deceived by [defendant's] product to show that she has standing to pursue injunctive relief."). Neither the class as defined nor the class representatives befit a (b)(2) injunctive certification.

### 2. Monetary claims predominate from the perspective of the class members' alleged claims.

The claims at issue and available remedies further demonstrate that monetary claims predominate. Certification under Rule 23(b)(2) is "necessarily improper" when money damages are an adequate remedy. *Kartman v. State Farm Mut. Auto. Ins. Co.*, 634 F.3d 883, 892 (7th Cir. 2011). *See also Vallario v. Vandehey*, 554 F.3d 1259, 1267 (10th Cir. 2009) ("Ensuring the provisions of Rule 23(b)(2) are met requires…a close look at the relationship between a proposed class, its injuries, and the relief sought.") (internal quotation omitted); *Lemon v. Int'l Union of Operating Eng'rs, Local No. 139*, 216 F.3d 577, 580 (7th Cir. 2000) (23(b)(2) plaintiffs must "seek to redress a common injury *properly addressed by a class-wide injunctive or declaratory remedy*") (emphasis added). "The general rule is that injunctive relief will not issue when an adequate remedy at law exists." *Richards*, 453 F.3d at 531 n.6.

The nationwide putative class here alleges claims for breach of express warranty and for unjust enrichment, based upon past purchases. Complaint (Dkt. 1) ¶¶186, 189. Monetary damages is an adequate remedy at law for breach of warranty. *See GM Trucks*, 55 F.3d at 816 ("[T]he measure of damages for breach of warranty is the difference at the time and place of acceptance between the value of the goods accepted and the value they would have had if they had been as warranted, unless special circumstances show proximate damages of a different amount.") (quoting UCC § 2-714(2)); *Stearns v. Select Comfort Retail Corp.*, No. 08-cv-2746 JF, 2009 WL 1635931 (N.D. Cal. Jun. 5, 2009) ("A remedy for breach of express warranty should provide the buyer with the 'substantial value of the bargain.'") (citing UCC § 2-719). As for unjust enrichment, "the standard remedy [is] restitution in money." Restatement (Third) of Restitution and Unjust Enrichment §49 cmt. a (2011). This

qualifies as a remedy at law. *Great-West Life & Annuity Ins. Co. v. Knudson*, 534 U.S. 204, 213 (2002) (restitution is a legal remedy where the plaintiff does not seek specific relief, *i.e.*, the return of "particular funds or property," but rather seeks "to impose a merely personal liability upon the defendant to pay a sum of money").[10]

When final relief is not appropriate with respect to any nationwide class members, it certainly cannot be appropriate with respect to the class as a whole. *See Bolin*, 231 F.3d at 977 n.39 ("Of course, the unavailability of injunctive relief under a statute would automatically make (b)(2) certification an abuse of discretion."); *Christ v. Beneficial Corp.*, 547 F.3d 1292, 1298 (11th Cir. 2008) (same).

But even if prospective injunctions were permissible remedies for unjust enrichment and breach of warranty claims, monetary claims under those causes of action are not incidental. This is because these claims are "dependent in significant way[s] on the intangible, subjective differences of each class member's circumstances." *Allison*, 151 F.3d at 415. Compensatory damages/restitution amounts vary with the individual purchase price and quantity.[11] *See generally Thomas v. Albright*, 139 F.3d 227, 235 (D.C. Cir. 1998) ("Whenever individual plaintiffs in a subsection (b)(2) class have claims for differing amounts of damages, their interests may begin to diverge."). Any potential

---

[10] Even if it were considered an equitable—as opposed to a legal—remedy, a 23(b)(2) certification still could not lie. As the Supreme Court recently made clear in *Wal-Mart*, the proper division in the (b)(2) analysis is not between "equitable" claims and "legal" remedies but between "injunctive" and "monetary" ones. *Wal-Mart*, 131 S.Ct. at 2560.

[11] In the wake of *Wal-Mart*, court have uniformly found disgorgement and restitution to be non-incidental. *See, e.g., Morrow v. Washington*, 277 F.R.D. 172, 203 (E.D. Tex. 2011) (equitable restitution and compensatory damage claims are not incidental); *Huber v. Taylor*, No. 002-304, 2011 WL 4553154, 2011 U.S. Dist. LEXIS 111704, at *21 n.16 (W.D. Pa. Sept. 29, 2011) (refusing to certify a (b)(2) class when: disgorgement…is an individual right of each wronged [class member]"); *Aho v. Americredit Fin. Servs.*, No. 10-cv-1373, 2011 WL 3047677, 2011 U.S. Dist. LEXIS 80426, at *20 (S.D. Cal. Jul. 25, 2011) ("[R]estitutionary relief…is not incidental"); *Janes v. Triborough Bridge & Tunnel Auth.*, No. 06 Civ. 1427, 2011 U.S. Dist. LEXIS 115831, at *16 (S.D.N.Y. Oct. 4, 2011) (same).

---

statutory liquidated damages would vary depending upon the geographical location of the individual purchase.

Furthermore, "[t]he elements necessary to establish a claim for unjust enrichment also vary materially from state to state." *Mazza v. Am. Honda Motor Co.*, 666 F.3d 581, 591 (9th Cir. 2012); *cf also Avritt v. Reliastar Life Ins. Co.,* 615 F.3d 1023, 1036 (8th Cir. 2010) (affirming denial of (b)(2) certification of unfair and deceptive practices claim because defendant's "conduct cannot be evaluated without reference to the individual circumstances of each plaintiff" such as reliance). The same heterogeneity can be found in a state-to-state analysis of the law of breach of express warranty claims. *See Szabo v. Bridgeport Machs., Inc.*, 249 F.3d 672, 674 (7th Cir. 2001) (noting that "few warranty cases ever have been certified as class actions—let alone as nationwide classes, with the additional choice-of-law problems that complicate such a venture.") "Rule 23(b)(3) [is] the only conceivable vehicle for [a nationwide consumer fraud] claim." *Pilgrim v. Universal Health Card, LLC*, 660 F.3d 943, 946 (6th Cir. 2011).[12]

Notwithstanding the Potemkin Village that is the Complaint in this action, "[i]t is clear that money damages are at the heart of this case. The injury alleged is a financial loss due to overcharges resulting from [the mislabeling]. This is economic harm." *Kottaras v. Whole Foods Mkt., Inc.*, 281 F.R.D. 16, 27 (D.D.C. 2012). The status of the class and class representatives in relationship to the defendant and the type of claims at issue dictate that, if anything, this class should be certified as a 23(b)(3) class. Rule 23(b)(3) captures the growing edge of class actions, a category which this suit falls into for several reasons. *Ortiz,* 527 U.S. at 861-62. "Individualized money damages belong in Rule 23(b)(3)." *Wal-Mart*, 131 S.Ct at 2558; *see also* Fleming James, Jr., Geoffrey C. Hazard, Jr. &

---

[12] The fact that (b)(3) certification would not have been easy (*see* Memorandum in Support of Final Approval ("MFA") (Dkt. 17-1) at 25) in no way makes (b)(2) certification appropriate. To the contrary, (b)(2) classes more cohesiveness than (b)(3) ones.

John Leubsdorf, CIVIL PROCEDURE § 10.22, at 652 (5th ed. 2001) (noting that (b)(3) is commonly known as the "damages" class action).

### 3.     Monetary claims predominate from the perspective of the release.

Next, a thorough (b)(2) analysis entails examining the preclusive effects that the settling parties intend to foist upon absent class members. Samuel Isaacharoff, *Preclusion, Due Process, and the Right to Opt Out of Class Actions*, 77 NOTRE DAME L. REV. 1057, 1068-73 (2002). Determining the preclusive effects is easier in the settlement context where the agreement and notice should detail the scope of the precluded/released claims. Here, section 4.6 of the settlement agreement delineates the contours of the release.

In a (b)(2) class settlement, the release should confine itself to future claims for injunctive relief, without encroaching on absent class members' rights to bring claims for monetary relief in the future. Mandatory settlements that purport to release claims for monetary relief are, as a matter of law, not fair, reasonable or adequate. *Clarke v. Advanced Private Networks, Inc.*, 173 F.R.D. 521, 522 (D. Nev. 1997).

The cardinal issue is whether the settling parties have done enough by limiting the release's applicability solely to monetary claims brought on behalf of "any entity, group, or class, and/or on behalf of any individual other than himself or herself." Settlement §4.6. Even if we presume[13] that all this release is attempting to release class members' right to bring class actions under Fed. R. Civ.

---

[13] It is a charitable presumption that the release is only intended to apply to class procedures, because the plain language of the release bars parents from bringing claims on their childrens' behalves, it bars guardians from bringing claims on their wards' behalves, it bars a group of a few individuals from consensually joining together under Rule 20 to efficiently bring their own individual claims. All the above situations clearly fall within the *Wal-Mart's* chief concern that "individual class members' compensatory-damages claims would be *precluded* by litigation they had no power to hold themselves apart from." 131 S. Ct. at 2559 (emphasis in original).

P. 23—or analogous state law vehicles—such an non-consensual imposition on monetary claims is still unacceptable for multiple reasons.

First and foremost, § 4.6 waives this right in all suits, including those seeking individualized monetary relief. Neither Rule 23(b)(2) nor the constitutional rule of *Shutts* permit the waiver of a class member's ability to use the class action device when there is no right to opt out. *See Crawford v. Equifax Payment Servs.*, 201 F.3d 877, 880, 882 (7th Cir. 2000) (disapproving of a near-identical waiver because class members "gain nothing, yet lose the right to the benefit of aggregation in a class."). The settling parties have implemented what amounts to a limited carve-out scheme for certain claims, when brought in an individual capacity. This scheme that does not comport with the unabridged *Shutts* right of exclusion. *Cf. Ortiz*, 527 U.S. at 847 n.23 (limited opt-out mechanism doesn't satisfy *Shutts*).

Most recently, a class action waiver was discredited in the identical context of a mandatory (b)(2) settlement by the court in *Felix v. Northstar Location Servs.*, No. 11-CV-00166(JJM), 2013 U.S. Dist. LEXIS 74717, at *33-*34 (W.D.N.Y. May 28, 2013). In doing so, the court rejected plaintiffs' counter-argument that "the other Settlement Class members are not releasing any *individual* claims against Northstar." *Id.* *34. *Cf. also Pampers*, 2013 WL 3957060, at *2, *7 (noting the class action waiver but not reaching the question and instead overturning the settlement on fairness and adequacy grounds).

Undoubtedly, freedom of contract permits a class-action waiver: freely bargaining parties can choose to accept benefits in exchange for waiving rights, notwithstanding unconscionability doctrine. *See, e.g., Am. Express Co. v. Italian Colors Rest.*, 133 S. Ct. 2304 (2013); *AT&T Mobility v. Concepcion*, 131 S. Ct. 1740 (2011). But a mandatory settlement is more bereft of a lack of "a meaningful choice" than any so-called "contract of adhesion." No choice exists, because class members cannot opt out.

The *Crawford* release only precluded absent class members from instituting class actions, yet that alone was enough to made (b)(2) certification unsound. In effect, the class action waiver "cut[s] [absent class members] off at the knees." 201 F.3d at 882. As Judge Easterbrook noted, "Because these are small-stakes cases, a class suit is the best, and perhaps the only, way to proceed. *Id.* at 880. *Accord Amchem*, 521 U.S. at 617.[14]

The conclusion that a mandatory class action waiver of monetary claims is improper follows from precepts of 23(b)(2) and *Shutts*. What if, instead of eliminating the class action procedure, the provision eliminated the possibility of legal representation entirely and preserved monetary claims only if the class member litigated each claim *pro se*? Both procedural burdens are circumventions of the due process rule of *Shutts* and should not be countenanced.

### 4.    Predominance is not a matter of class counsel's subjective preferences; they cannot circumvent (b)(2)'s prerequisites by settling for injunctive relief.

The parties now maintain that (b)(2) certification is proper because it conforms to the complaint that plaintiffs filed in April—for the sole purpose of effectuating settlement. *See* Memorandum in Support of Final Approval ("MFA") (Dkt. 17-1) at 25 ("This case involves claims for injunctive relief…"). Immediately, it should be noted that the injunctive relief-only complaint in this action is an artificial means of bolstering the attempted (b)(2) certification and settlement. For instance, in the earlier-filed *Ligon* action, No.12-cv-4585 (N.D. Cal.), the plaintiffs sought predominating monetary relief in the form of disgorgement of ill gotten gains and compensatory damages. *See* Ligon Complaint (Dkt. 1), Prayer for Relief B-C.

This case is a perfect instantiation of why "Rule 23(b)(2) certainly cannot be read as requiring the court to accept the plaintiffs' ranking in importance of the various forms of relief they

---

[14] Ironically, the plaintiffs are well aware of the practical importance of the class action device. *See* MFA at 25 (citing *Amchem*). Yet, they make no effort to justify this extremely unusual release provision.

seek in the action." *Bacon v. Honda of Am. Mfg., Inc.*, 205 F.R.D. 466, 485 (S.D. Ohio 2001), *aff'd* 370 F.3d 565 (6th Cir. 2004); *Ellis v. Costco Wholesale Corp.*, 657 F.3d 970, 986-87 (9th Cir. 2011) (citing *Wal-Mart*). Nor can the rule be read to allow the class representatives' subjective intentions to govern the predominance inquiry. *In re Monumental Life Ins. Co.*, 365 F.3d 408, 415 (5th Cir. 2004).

Professor Linda Mullenix has noted that despite "all the high-minded rhetoric plaintiffs' and defense attorneys may attach to the virtues of opt-outs, all such principles will be abandoned when plaintiffs' and defense interests converge on the utility of the mandatory classes." Linda S. Mullenix, *No Exit: Mandatory Class Actions in the New Millennium and the Blurring of Categorical Imperatives*, 2003 U. CHI. LEGAL F. 177, 241 (2003). That point of convergence is at the time of settlement, when the defendants seek to broaden the global peace they will attain, and the plaintiffs would prefer not to have to overcome the (b)(3) hurdles of predominance and superiority. Mullenix is not alone in this observation. *See In re Telectronics Pacing Sys. Inc.*, 221 F.3d 870, 880 (6th Cir. 2000) ("The bootstrapping of a Rule 23(b)(3) class into a [mandatory] class is impermissible and highlights the problem with defining and certifying class actions by reference to a proposed settlement."); *Bolin*, 231 F.3d at 976 (evincing concern that "plaintiffs may attempt to shoehorn damages actions into the Rule 23(b)(2) framework, depriving class members of notice and opt-out protections"); Wolfman and Morrison, *supra*, at 740; Elizabeth Chamblee Burch, *Optimal Lead Plaintiffs*, 64 VAND. L. REV. 1109, 1119 (2011) ("Settling shifts the game into a peacemaking mode where achieving finality means keeping as many class members as possible in the settlement.")

The case at bar is an exemplar of Mullenix's theory. In the initial *Ligon* complaint,[15] the plaintiffs sought maximal monetary relief, but as soon as the discussion converged around settlement, the parties decided to strategically file a complaint across the country. *See* Settlement

---

[15] The first filed complaint is often a better prism into whether this action is predominantly for money damages, because at the time of the that filing, the litigation was at its most adversarial.

Recital D. As Mullenix explicates, "it is not uncommon to see class complaints in which the legal liability theory is simply asserted as, or converted into, a request for declaratory judgment or injunctive relief. Thus, class counsel may take a breach of contract claim and recast the class complaint as a request for a declaration from the court that the defendants have breached the contract. There are endless variations on this theme over an array of legal theories sounding in tort, contract, and statutory claims. As my colleague Professor Redish rightly suggests, the class action rule, as a procedural form or mechanism, was never intended to alter substantive law. The class action rule cannot possibly be used to modify the concepts underlying the appropriate use of the declaratory judgment action or injunctive relief." Mullenix, *supra*, at 221. Although slightly different than the particulars Mullenix describes, the general strategy is the same here. In their *Richardson* complaint, the plaintiffs have abandoned the customary monetary remedies for breach of warranty and unjust enrichment and recast them as merely an entitlement to "an order enjoining future unlawful conduct on the part of the Defendant." Complaint ¶187; Prayer for Relief B-C.[16]

Equally if not more troubling, to Holyoak's knowledge there has been no explanation for the sudden shift of venue. The Court should demand an explanation to—at the very least—allay any suspicion of forum shopping. *See Lusby v. Gamestop Inc.*, No. C12-03783, 2013 U.S. Dist. LEXIS 41794, *43-*44 (N.D. Cal. Mar. 25, 2013) (noting the possibility of forum shopping to avoid scrutiny of class settlements); *see generally Trombley v. Nat'l City Bank*, 826 F. Supp. 2d 179, 199 (D.D.C. 2011) (discerning "the status of litigation proceedings at the time of settlement" to be a factor for evaluation). Perhaps the parties were attempting to avoid a jurisdiction in which *Bluetooth* was binding law. *See infra* §IV.a.

---

[16] Although it is a necessary precondition to a (b)(2) settlement certification that the class obtain injunctive relief, it is not a sufficient one. As shown by *Hecht, Crawford,* and *Bolin, inter alia*, this Court must also consider the class definition, the injuries alleged, and the claims released.

---

In the case *sub judice*, putative class members have become the apparent "sacrificial pawn". *See* Mullenix, *supra*, at 241. The incentives are no longer present for any of the settling parties to protect the interests of unnamed parties. The Court is the last line of defense and must conduct an independent evaluation of whether monetary relief predominates. One must conclude that it does.

## III.   The unbounded class definition violates Fed. R. Civ. P. 23(e)(1) and 23(e)(5).

Fed. R. Civ. P. 23(e)(1) requires the court to direct reasonable notice of the settlement to all members of the class who would be bound by the settlement. Notice allows class members a sound platform for assessing the strengths and weaknesses of the case, the merits and demerits of the settlement in deciding whether to object or opt-out—when that right is available.[17] Unless each bottle of L'Oreal Product contains a notice of impending class action settlement, and warns customers that by purchasing the product they will become class members, those who purchase in the time immediately before the final approval order will not receive adequate notice.

Even if somehow these late-purchasing class members learn of the settlement, the objection deadline will have passed by that time. *See* Preliminary Approval Order (Dkt. 14) ¶19.c (setting the objection deadline as September, 11, 2013). Individuals who enter the class after the objection deadline will be deprived of their Fed. R. Civ. P. 23(e)(5) right of objection. Were this proceeding merely a class certification and litigation to final judgment under 23(b)(2), there would be no concomitant statutory right to notice or objection—but as a 23(e) settlement, the class does have those rights and the class definition effectively obliterates that right for a substantial subclass.

---

[17] *See* 7B Charles Alan Wright et al., Federal Practice and Procedure, § 1787 at 220 (2d ed.1986); 2 Newberg on Class Actions, § 8.04 at 8-17 ("[T]he purpose [of notice is] allowing the parties to make conscious choices that affect their rights in a litigation context.").

A threshold requirement in any potential Rule 23 certification is that the named plaintiffs propose an identifiable, unambiguous class.[18]  This means that at the very least every class definition should include at least: (1) a specification of a particular group at a particular time frame and location who were harmed in a particular way; and (2) a method of definition that allows the court to ascertain its membership.[19] A well-defined class is necessary "to ensure that the class is neither amorphous, nor imprecise" *Johnson v. District of Columbia*, 248 F.R.D. 46, 52 (D.D.C. 2008) (quoting *Lewis v. Nat'l Football League*, 146 F.R.D. 5, 8 (D.D.C. 1992)). "Clearly delineating the contours of the class…serves several important purposes." *Marcus v. BMW of N. Am., LLC*, 687 F.3d 583, 591-592 (3d Cir. 2012). These principles are violated by a class definition that has no definite class period and is only bounded by the issuance of a final approval order at an indeterminate future date.

Those courts that have analyzed the issue unanimously reached the same conclusion: proposed classes with no fixed end date must be denied certification.[20] Commentators agree.[21] The

---

[18] *In re Rail Freight Fuel Surcharge Antitrust Litig.*, 287 F.R.D. 1, 28 (D.D.C. 2012), *rev'd on other grounds* 2013 U.S. App. LEXIS 16500 (D.C. Cir. Aug. 9, 2013) ("The first implied requirement of Rule 23(a) is that the class must be sufficiently defined so as to be identifiable as a class.") (internal quotation omitted); Federal Judicial Center, MANUAL ON COMPLEX LITIGATION §21.222 (4th ed. 2004) ("The definition must be precise, objective, and presently ascertainable").

[19] *See e.g.*, *Bentley v. Honeywell Int'l, Inc.*, 223 F.R.D. 471, 477 (S.D. Ohio 2004).

[20] *See Mueller v. CBS, Inc.*, 200 F.R.D. 227, 236 (W.D. Pa. 2001); *Saur v. Snappy Apple Farms, Inc.*, 203 F.R.D. 281, 285-86 (W.D. Mich. 2001); *In re Wal-Mart Stores, Inc.*, No. 06-02069, 2008 WL 1990806, 2008 U.S. Dist. LEXIS 109446, at *15-*16 (N.D. Cal. May 2, 2008); *Alaniz v. Saginaw County*, No. 05-10323, 2009 U.S. Dist. LEXIS 43340, at *5 (E.D. Mich. May 21, 2009); *Trollinger v. Tyson Foods, Inc.*, No. 4:02-CV-23, 2007 U.S. Dist. LEXIS 88866, at *8-*11 (E.D. Tenn. Dec. 3, 2007); *Cruz v. Dollar Tree Stores, Inc.*, No. 07-2050, 2009 U.S. Dist. LEXIS 62817, at *3-*5 (N.D. Cal. Jul. 2, 2009); *Wike v. Vertrue, Inc.*, 2010 WL 3719524, 2010 U.S. Dist. LEXIS 96700 (M.D. Tenn. Sept. 15, 2010); *see also Ansoumana v. Gristede's Operating Corp.*, 201 F.R.D. 81, 85 n.2 (S.D.N.Y. 2001).

[21] *See* Elizabeth R. Kaczynski, Note, *The Inclusion of Future Members in Rule 23(b)(2) Class Actions*, 85 COLUM. L. REV. 397 (1985) (asserting that including future members in class actions "is

Supreme Court has itself even "recognize[d] the gravity of the question whether class action notice sufficient under the Constitution and Rule 23 could ever be given to legions so unselfconscious and amorphous" *Amchem*, 521 U.S. at 628. But even if Rule 23(e)(1) and (5) could be read to allow this open-ended class definition, the constitutional questions that would arise under *Mullane*[22] counsel against such an interpretation under the well-established canon of construction to avoid constitutional doubt. *See e.g.*, *Wal-Mart*, 131 S. Ct. at 2559 (construing 23(b)(2) to avoid potential unconstitutionality); *Gulf Oil Co. v. Bernard*, 452 U.S. 89, 103-04 (1981) (holding district court's order forbidding communication between counsel and absent class members violated Rule 23, and thus declining to decided whether such a ban violated the First Amendment).

Accepting that 23(e)(1) and (5) limit the availability of classes that veer unbridled into the future is neither unprecedented, nor need it be conceived of as a radical sea-change. Rather, class plaintiffs will be able to assert the same exact claims for the same exact relief; all that will be different is that absent class members will have the opportunity to receive the notice to which they are constitutionally entitled. As presently defined, the class may not be certified.

## IV.    Even if certifiable, this settlement is not fair.

Ms. Holyoak, *supra* §II-III, has urged this Court to reject this settlement on the various grounds which demonstrate that the underlying class cannot be certified as requested. These arguments can bleed into the corollary 23(e)(2) question of whether the settlement is "fair, reasonable and adequate." For instance, if final injunctive relief is not appropriate respecting the class as a whole, any settlement that offers only injunctive relief will be *per se* inadequate.

---

inconsistent with both the explicit requirements and the theoretical underpinnings of Rule 23" and poses "a serious threat to the due process rights of future members"); Samuel Issacharoff, *Class Action Conflicts*, 30 U.C. DAVIS L. REV. 805, 833 (1997) (advocating for "presumption against...non-closed class actions in which the class cannot be presently defined.")

[22] *Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306 (1950).

Nonetheless, there are several independent reasons that this Court should reject the settlement under 23(e) even if it accepts that the class itself is viable.

The burden of proving settlement fairness lies squarely with the proponents. *Pampers*, 2013 WL 3957060, at *4 (compiling cases and authorities); *accord* American Law Institute's Principles of the Law of Aggregate Litigation ("*ALI Principles*") § 3.05(c) (2010) ("In reviewing a proposed settlement, a court should not apply any presumption that the settlement is fair and reasonable."); *contra* MFA at 17. The burden is yet heightened when the parties seek approval of a pre-certification settlement. "Prior to formal class certification, there is an even greater potential for breach of fiduciary duty owed the class during settlement. Accordingly, such agreements must withstand an even higher level of scrutiny for evidence of collusion or other conflicts of interest than is ordinarily required under Rule 23(e) before securing the court's approval as fair." *Bluetooth*, 654 F.3d at 946-947 (citing cases from Second, Third, Seventh and Ninth Circuits); *see also* MANUAL FOR COMPLEX LITIG. § 21.612 (4th ed. 2004). Courts "must be particularly vigilant not only for explicit collusion, but also for more subtle signs that class counsel have allowed pursuit of their own self-interests … to infect the negotiations." *Pampers*, 2013 WL 3957060, at *3 (quoting *Dennis v. Kellogg Co.*, 697 F.3d 858, 864 (9th Cir. 2012)).

"There is no single test for settlement approval in this jurisdiction; rather, courts have considered a variety of factors" *In re Livingsocial Mktg. & Sales Practice Litig.*, 2013 WL 1181489, 2013 U.S. Dist. LEXIS 40059, at *23 (D.D.C. Mar. 22, 2013) (listing five factors).[23] But any list of factors

---

[23] The fourth and fifth factors noted by *LivingSocial* (the "reaction of the class" and the "opinion of experienced counsel") should be severely downplayed, if not entirely dispensed with. Inevitably, the "reaction of the class" prong begets the argument that the silence of absent class members (i.e. failure to object) constitutes endorsement of the settlement. This argument is empirically impoverished; silence is simply not consent. Christopher R. Leslie, *The Significance of Silence: Collective Action Problems and Class Action Settlements*, 59 FLA. L. REV. 71, 73 (2007) ("[S]ilence is a rational response to any proposed settlement even if that settlement is inadequate."). Although the D.C.

in an approval test is not exhaustive. *See, e.g., Pampers*, 2013 WL 3957060, at *3 (looking beyond Sixth Circuit's seven-factor test to find settlement unfair when it constitutes "preferential treatment" for class counsel); *Bluetooth*, 654 F.3d at 946 (consideration of eight-factor test "alone is not enough to survive appellate review"); *Vassalle v. Midland Funding LLC*, 708 F.3d 746 (6th Cir. 2013) (finding abuse of discretion even though all factors favored final approval); *In re Katrina Canal Breaches Litig.*, 628 F.3d 185, 195 (5th Cir. 2010) (*Reed* factors are not the sole reasons a settlement should be rejected as unfair, unreasonable or inadequate under Rule 23(e)).

The most common settlement defects are ones of allocation. This is because "the adversarial process—or 'hard-fought' negotiations—extends only to the amount the defendant will pay, not the manner in which that amount is *allocated* between the class representatives, class counsel, and unnamed class members." *Pampers*, 2013 WL 3957060, at *3 (emphasis in original). "[T]he defendant who contributed to the fund will usually have no interest in how the fund is divided between the plaintiffs and class counsel." *Hubbard v. Donahoe*, No. 03-1062 (RJL), 2013 U.S. Dist. LEXIS 107096, at *21 (D.D.C. Jul. 31, 2013) (quoting *Swedish Hosp. Corp. v. Shalala*, 1 F.3d 1261, 1272 (D.C. Cir. 1993)).

Allocational issues cannot be waived away simply by structuring the settlement as a constructive common fund, rather than a traditional common fund. *See Pampers*, 2013 WL 3957060, at *3; *Bluetooth*, 654 F.3d at 943; *Hubbard*, 2013 U.S. Dist. LEXIS 107096 at *21-*23; *contra* Plaintiffs'

---

Circuit approved of considering class reaction as a factor, it noted that "caution…should be exercised in inferring support from a small number of objectors to a sophisticated settlement." *Cobell v. Salazar*, 679 F.3d 909, 923 (D.C. Cir. 2012) (quoting *GM Trucks*, 55 F.3d at 812).

Likewise, the "opinion of experienced counsel" factor, is a test that is always passed and therefore, no test at all. *See generally* Brian Wolfman, *Judges! Stop Deferring to Class-Action Lawyers*, 2 U. MICH. J.L. REFORM 80 (2013). "Once the named parties reach a settlement in a purported class action, they are always solidly in favor of their own proposal." *Kakani v. Oracle Corp.*, No. C 06-06493 WHA, 2007 WL 1793774, 2007 U.S. Dist. LEXIS 47515, at *3 (N.D. Cal. Jun. 19, 2007); *accord ALI Principles* §3.05, *comment a* at 206 ("the lawyers who negotiated the settlement will rarely offer anything less than a strong, favorable endorsement").

Memorandum in Support of Fees ("Fee Memo") (Dkt. 18-1) at  4, 13, 18. "That the defendant in form agrees to pay the fees independently of any monetary award or injunctive relief does not detract from the need carefully to scrutinize the fee award." *Staton v. Boeing Co.*, 327 F.3d 938, 964 (9th Cir. 2003). For either way, "the economic reality is that a settling defendant is concerned only with its total liability." *Pampers*, 2013 WL 3957060, at *3 (internal quotation omitted). The only apparent way to effectively divorce class relief from fees is to reach an accord on class relief while simultaneously agreeing to litigate the issue of fees. *See In re Cmty. Bank of N. Va. & Guar. Nat'l Bank of Tallahassee Second Mortg. Litig.*, 418 F.3d 277, 308 (3d Cir. 2005). In other words, as long as the defendant willingly foots both bills, there is no way to avoid the "truism that there is no such thing as a free lunch." *Staton*, 327 F.3d at 964.

So, not unexpectedly, the two cardinal 23(e)(2) deficiencies relate to issues of allocation: 1) Class counsel and the named representatives are seizing more than their fair share of the settlement proceeds, and 2) The settlement inequitably treats salon-purchasing class members identically to mass retail-purchasing class members.

## A.     The ensemble of attorneys' fees and incentive award provisions signal a self-dealing settlement.

The settlement agreement permits class counsel to seek, unopposed, an award of fees and costs of $950,000. Settlement §2.6(a). This award is segregated from class relief. Settlement §2.6(c). The six class representatives are entitled to seek, unopposed, incentive awards of $1,000 each. Settlement §2.5.

The Ninth Circuit has recently identified three warnings signs of a class action settlement that is inequitable as between class counsel and the class. *Bluetooth*, 654 F.3d at 947. *Accord Pampers*, 2013 WL 3957060, at *3 ("preferential treatment" for class counsel renders settlements unfair).[24]

The first signal is "when counsel receive a disproportionate distribution of the settlement, or when the class receives no monetary distribution but class counsel are amply rewarded." *Bluetooth*, 654 F.3d at 947. Here, the putative (b)(2) class receives solely injunctive relief while agreement permits class counsel to seek, unopposed, an award of fees and costs of $950,000.

The D.C. Circuit "has joined the Third and Eleventh Circuits, among others, in concluding that the percentage of recovery method is superior to the lodestar method for determining attorneys' fee awards in common fund cases." *Hubbard*, 2013 U.S. Dist. LEXIS, at *20 (citing *Swedish Hosp.*, 1 F.3d at 1271). Percentage of recovery method is preferable even where the fund is a "constructive common fund" rather than a traditional pure common fund. *Id.* at *22-*23; *see also GMC Pick-Up Trucks*, 55 F.3d at 821 ("[P]rivate agreements to structure artificially separate fee and settlement arrangements cannot transform what is in economic reality a common fund situation into a statutory fee shifting case."); *contra* Fee Memo at 3. A proportionate award adheres to the 25% of the percentage of the fund benchmark.[25] To reach the appropriate ratio here, the class benefit would

---

[24] It is not necessary to allege or demonstrate actual "collusion." "While the Rule 23(a) adequacy of representation inquiry is designed to foreclose class certification in the face of 'actual fraud, overreaching or collusion,' the Rule 23(e) reasonableness inquiry is designed precisely to capture instances of unfairness not apparent on the face of the negotiations." *Bluetooth*, 654 F.3d at 948 (internal quotation omitted). Rather, due to the defendant's indifference as to the allocation of funds between the class, the named representatives and class, it is enough that the settlement evinces "subtle signs that class counsel have allowed pursuit of their own self-interest and that of certain class members to infect the negotiations." *Pampers*, 2013 WL 3957060, at *3 (quoting *Dennis v. Kellogg Co.*, 697 F.3d 858, 864 (9th Cir. 2012)).

[25] *E.g., Swedish Hosp. Corp. v. Shalala*, 1 F.3d 1261, 1272 (D.C. Cir. 1993) ("[A] majority of common fund class action fee awards fall between twenty and thirty percent."); *Hubbard v. Donahoe*, No. 03-1062 (RJL), 2013 U.S. Dist. LEXIS 107096, at *26 (D.D.C. Jul. 31, 2013) (awarding 20%); *In re VA Data Theft Litig.*, 653 F. Supp. 2d 58, 61 (D.D.C. 2009) (awarding 18% where a large portion of

have to be valued at $3.8 million. *See Pampers*, 2013 WL 3957060, at *5 (class relief must "be commensurate with [the] fee award").

As a matter of law, the injunctive relief that this settlement offers is not worth $3.8 million *in class value*. The injunctive labeling is described at Settlement § 2.4(a)-(h). For a period of five years from after the effective date, L'Oreal will cease using the contested representations[26] on their products, aside from the phrase "Réservé aux distributeurs agréés." (translated: "reserved for authorized distributors"). Settlement §2.4(a)(1), (b).

To date, as far as Ms. Holyoak is aware, there has been no attempt to quantify the injunctive relief. And the burden of proving the quantum of benefit lies with the proponents of the settlement. *Pampers*, 2013 WL 3957060, at *4. They must demonstrably show that the settlement "secures some adequate advantage for the class." *In re Katrina Canal Breaches Litig.*, 628 F.3d 185, 195 (5th Cir. 2010).

But at least there has been no disingenuous attempt to estimate the value of inestimable injunctions, which does nothing to serve the interest of the class and everything to serve the interest of class counsel. *See In re Oracle Secs. Litig.*, 132 F.R.D. 538, 544-45 (N.D. Cal. 1990) (Walker., J.) (referring to injunctive relief "expert valued at some fictitious figure" coupled with "arrangements to pay plaintiffs' lawyers their fees" to be the "classic manifestation" of the class-action agency

---

the fund went to cy pres recipients rather than class members); *In re LivingSocial Mktg. and Sales Practices Litig.*, MDL No. 2254, 2013 WL 1181489, 2013 U.S. Dist. LEXIS 40049, at *51, *65-*66 (D.D.C. Mar. 22, 2013) (same; reducing fee award to 18% where class counsel "attempt[ed] to disguise the size of their fee request" by "dubious" inflated valuation of the settlement value.). And in *Livingsocial* there was a concrete $4.5 million going to a combination of class members and cy pres recipients. Here there is only transitory, prospective, injunctive relief.

[26] L'Oreal has agreed to remove the following claims : "for sale only in professional beauty salons"; "exclusive salon distribution"; "exclusive to Kerastase consultant salons"; "only professional"; "only in salon"; "sold exclusively in salons"; "available only at fine salons and spas"; "available only at fine salons"; or similar claims suggesting availability for purchase exclusively in professional salons. Settlement §1.1.

problem); *In re LivingSocial Mktg. & Sales Practices Litig.*, MDL No. 2254, 2013 WL 1181489, 2013 U.S. Dist. LEXIS 40059, at *47 n.16 (D.D.C. Mar. 22, 2013) (rebuking a $54 million valuation of injunctive relief as "of marginal value" and noting that "the Court is unable to assess the reliability of the report."). "Precisely because the value of injunctive relief is difficult to quantify, its value is also easily manipulable by overreaching lawyers seeking to increase the value assigned to a common fund." *Staton v. Boeing*, 327 F.3d 938, 974 (9th Cir. 2003).

However, the reason why a $3.8 million valuation could not stand as a matter of law, is that "'[t]he fairness of the settlement must be evaluated primarily based on how it *compensates class members*'—not on whether it provides relief to other people, much less on whether it interferes with the defendant's marketing plans." *Pampers*, 2013 WL 3957060, at *6 (quoting *Synfuel Techs., Inc., v. DHL Express (USA), Inc.*, 463 F.3d 646, 654 (7th Cir. 2006)). Here, "[n]o changes to future advertising by [the defendant will benefit those who were already misled by [the defendant]'s representations." *True v. Am. Honda Motor Co.*, 749 F. Supp. 2d 1052, 1077 (C.D. Cal. 2010); *see also Crawford*, 201 F.3d at 880 (defendant's injunctive agreement not to use the abusive debt collection letter that was at issue in the case is a "gain" of "nothing" for class members). These are proper recognitions of the principle that the class is composed of people who have done business with the defendants *in the past*; while the prospective injunctive relief can only benefit those who do business with defendants *in the future. See Felix v. Northstar Location Servs.*,11-CV-00166(JJM), 2013 U.S. Dist. LEXIS 74717, at *32-*33 (W.D.N.Y. May 28, 2013) (prospective injunctive relief promise of no value to class members who only dealt with defendant in past transaction).[27]

---

[27] Note that this is *not* an argument that injunctive relief is *never* a benefit to the class. There are class actions where a class members receive injunctive relief that addresses their past injuries. For example, *Hanlon v. Chrysler Corp.*, 150 F.3d 1011 (9th Cir. 1998), is an injunction-only settlement approved by the Ninth Circuit. *Hanlon* is consistent with *Pampers'* and *Synfuel's* holdings. *Hanlon* plaintiffs alleged a product defect, and class members received "a redesigned improved

Earlier this year, this very Court recognized that a change in business practices "provides limited direct benefit to class members since they bought their [products in the past] and the injunctive relief applies only to prospective purchasers who may or may not have bought in the past." *LivingSocial*, 2013 WL 1181489, 2013 U.S. Dist. LEXIS 40059, at *51. Judge Huvelle then properly excluded any valuation of the injunctive relief from the common fund calculation. *Id.* at *46-*47. Although the settlement may well impose significant costs on L'Oreal, that is not the measure of compensable value. *Bluetooth*, 654 F.3d at 944 ("[T]he standard [under Rule 23(e)] is not how much money a company spends on purported benefits, but the value of those benefits to the class.") (quoting *TD Ameritrade Accountholder Litig.*, 266 F.R.D. 418, 423 (N.D. Cal. 2009)). It may be true that "every square centimeter" of a L'Oreal bottle is "extremely valuable" to the defendant, but it is "egocentrism" to presume that that the same space is equally valuable to class members. *Pampers*, 2013 WL 3957060, at *6; *contrast* MFA at 25 ("This comes at no small cost."); Fee Memo at 14 (same).

Non-class injunctive relief simply does not justify $950,000 in attorneys' fees.[28] *Bluetooth's* first warning sign is apparent.

---

replacement latch to be installed free of charge." This is retrospective injunctive relief, compensatory and potentially appropriate. But the injunctive relief here is not meant to make class members whole, and is thus not a benefit to class counsel's clients.

[28] Plaintiffs' extensive lodestar analysis (*see* Fee Memo 13-18) is unavailing. First, although the fee allotment is germane to the fairness of the settlement, even a modest request relative to lodestar cannot justify an unfair settlement. *See In re Baby Prods. Antitrust Litig.*, 708 F.3d 163, 180 n.14 (3d Cir. 2013) (lodestar multiplier of .37 not "outcome determinative"); *In re HP Inkjet Printer Litig.*, 716 F.3d 1173, 1177 (9th Cir. 2013) (same with multiplier of .32); *Bluetooth*, 654 F.3d 935 (reversing settlement approval notwithstanding district court's finding that the lodestar "substantially exceed[ed]" the fee requested and awarded). As one district court described the unsuitability of a applying lodestar methodology to settlement fee awards: "Class Counsel has requested for itself an uncontested cash award based on lodestar, rather than the value of the class recovery, with only a modest discount from the claimed lodestar amount. In other words, the class is being asked to 'settle,' yet Class Counsel has applied for fees as if it had won the case outright." *Sobel v. Hertz*

*Bluetooth*'s second and third indicia of an unfair settlement—the presence of a "clear-sailing" agreement (whereby defendant consents not to challenge the award of fees to plaintiffs' counsel) and a "kicker" (whereby any excess fees reduction by the court reverts back to the defendant rather than to the class)—are also present here. Settlement §2.6(a), (c). This is inappropriate; it indicates that the class attorneys have negotiated provisions to protect their fee award at the expense of potential class benefits. *See Weinberger v. Great Northern Nekoosa Corp.*, 925 F.2d 518, 525 (1st Cir. 1991) ("[A clear-sailing] clause by its very nature deprives the court of the advantages of the adversary process."); *Bluetooth*, 654 F.3d at 949 ("[T]he kicker deprives the class of that full potential benefit if class counsel negotiates too much for its fees"). Such provisions are indications that that the class attorneys have negotiated "red-carpet treatment on fees" while urging class settlement "at a low figure or less than optimal basis." *Pampers*, 2013 WL 3957060, at *3 (quoting *Weinberger*, 925 F.2d at 524).[29]   A clear-sailing provision "by its very nature deprives the court of the advantages of the

---

*Corp.*, No. 3:06-cv-00545-LRH-RAM, 2011 WL 2559565, 2011 U.S. Dist. LEXIS 68984, at *44 (D. Nev. Jun. 27, 2011).

Second, even if we were at the point of discussing reasonable fees, $950,000 would not be proper under established lodestar methodology. "An attorney who works incredibly hard, but obtains nothing for the class, is not entitled to fees calculated by any method. For although class counsel's hard work on an action is presumably a necessary condition to obtaining attorney's fees, it is never a sufficient condition. Plaintiffs attorneys don't get paid simply for working; they get paid for obtaining results." *HP Inkjet*, 716 F.3d at 1182. Appropriate use of the lodestar calibrates the award downward, not upward, where the degree of success achieved is disproportionately small. *See Bluetooth*, 654 F.3d at 942-44 (citing *Hensley v. Eckerhart*, 461 U.S. 424, 434-36 (1983)).

Here, not only is there not a discount on lodestar, plaintiffs are seeking an enhancement multiplier of 1.14. Fee Memo at 20-21 (citing cases that have since been superseded by *Perdue v. Kenny A.*, 130 S. Ct. 1662, 1669 (2010) ("[T]here is a strong presumption that the lodestar is sufficient" without an enhancement multiplier.). *See also Winston & Strawn LLP v. FDIC*, 894 F. Supp. 2d 115, 130 (D.D.C. 2012) (rejecting argument attempting to confine *Kenny A* to federal statutory fee shifting awards). In sum, plaintiffs may not use lodestar to sidestep the fundamental proportionality analysis.

[29] Although class benefits and fees were been negotiated separately (*see* MFA at 10; Fee Memo at 18), that does nothing to allay any conflict unless "fee negotiations [are] postponed until the settlement has been judicially approved." *In   re Cmty. Bank of N. Va. & Guar. Nat'l Bank of*

adversary process" and "suggests, strongly" that its associated fee request should go "under the microscope of judicial scrutiny." *Weinberger*, 925 F.2d at 525.

A "kicker arrangement reverting unpaid attorneys' fees to the defendant rather than to the class amplifies the danger" that is "already suggested by a clear sailing provision." *Bluetooth*, 654 F.3d at 949. "The clear sailing provision reveals the defendant's willingness to pay, but the kicker deprives the class of that full potential benefit if class counsel negotiates too much for its fees." *Id.* In a typical common fund settlement, the district court may, at its discretion, reduce the fees requested by plaintiffs' counsel—when it does so, the class will benefit from the surplus.

Under the proposed settlement, however, if the Court awards less than the $950,000 fee that defendants have already agreed to pay to class counsel, the defendant will be the only beneficiary. Because of the "economic reality that a settling defendant is concerned only with its total liability," this settlement's is therefore worse for the class than a traditional common fund. *Pampers*, 2013 WL 3957060, at *3 (quoting *Strong v. BellSouth Telecommns., Inc.*, 137 F.3d 844, 859 (5th Cir. 1998)). In effect, the parties have prevented the Court from returning the fees and class relief to natural equilibrium.

A "kicker" will likely have the additional self-serving effect of protecting class counsel by deterring scrutiny of the fee award. A court has less incentive to scrutinize a fee award, because the kicker combined with the clear sailing agreement means that any reversion will only go to the defendant that had already agreed to pay that amount. Charles Silver, *Due Process and the Lodestar Method*, 74 TUL. L. REV. 1809, 1839 (2000) (such a fee arrangement is "a strategic effort to insulate a fee award from attack"); Lester Brickman, *Lawyer Barons* 522-25 (2011) (same; further arguing that

---

*Tallahassee Second Mortg. Litig.*, 418 F.3d 277, 308 (3d Cir. 2005). Moreover, clear sailing undermines any benefits of separate negotiation. *Sobel v. Hertz*, No. 3:06-cv-00545, 2011 U.S. Dist. LEXIS 68984, at *45 (D. Nev. Jun. 27, 2011).

reversionary kicker should be considered *per se* unethical). *See specifically* Fee Memo at 13 (arguing that the separation of fees and class relief mean that the court need not exercise its fiduciary role). At a minimum, these two clauses are a warning sign of a self-serving settlement that merits justification: why was this negotiated in such a manner to make the class worse off? *In re Bluetooth*, *supra*.

Apart from the attorneys' fees award, the settlement assures each of the six named plaintiffs an unchallenged application for an incentive award of $1,000. Settlement §2.5. "The fact that one class member receives $2,000 and the other 200,000+ nothing is quite enough to demonstrate that the terms should not [be] approved under Rule 23(e)" *Crawford*, 201 F.3d at 882. This is because there is no "overlap" between the deals obtained by the named representatives and the unnamed class members. *Pampers*, 2013 WL 3957060, at *7. Rather the payment to named plaintiffs makes them alone more than whole and "provide[s] a *disincentive* for the class members to care about the adequacy of relief afforded unnamed class members." *Id* at *8.

The Seventh Circuit referred to this phenomenon as "leverag[ing]" "the class device…for one person's benefit"). *Murray v. GMAC Mortg. Corp.*, 434 F.3d 948, 952 (7th Cir. 2006). In *Murray*, the incentive payment "of $3,000…[was] three times the statutory maximum, while others don't get even the $100 that the Act specifies as the minimum." *Id.* "Such a settlement is untenable." *Id.* Given the $1,000 for each representative, $950,000 for the attorneys, and $0 for absent class members, this settlement is unsupportable.

"The premise of a class action is litigation by representative parties adjudicates the rights of all class members, so basic due process requires that named plaintiffs possess undivided loyalties to absent class members." *Broussard*, 155 F.3d at 338. Just a few months ago, the Ninth Circuit again disavowed these types of disproportionate incentive awards. *See Radcliffe v. Experian Info. Solutions*, 715 F.3d 1157 (9th Cir. 2013). The Ninth Circuit determined that incentive awards conditioned upon endorsement of the settlement proposed were impermissible. But more than that, "the

significant disparity between the incentive awards and the payments to the rest of the class members further exacerbated the conflict of interest caused by the conditional incentive awards." *Id.* at 1165. "There is a serious question whether class representatives could be expected to fairly evaluate whether awards ranging from $26 to $750 is a fair settlement value when they would receive $5,000 incentive awards." *Id.* As the disparity here is starker—$1,000 per representative, $0 per class member—the question becomes proportionally more serious. In such situations there is a well-founded fear that named representatives will be "more concerned with maximizing [their own gain] than with judging the adequacy of the settlement as it applies to class members at large." *Id.* (quoting *Staton*, 327 F.3d at 977).[30]

Although the D.C. Circuit has held that an incentive awards of a large magnitude are not objectionable in a vacuum,[31] they may well be when contrasted with the terms that a settlement agreement offers to the rest of the class. Plaintiffs note evidence that 30% of class actions include incentive awards. Fee Memo at 22. In no sense, however, is this non-monetary settlement in the top three deciles of settlements. Moreover, "to the extent that incentive awards are common, they are like dandelions on an unmowed lawn—present more by inattention than by design." *Pampers*, 2013 WL 3957060, at *8.

Here, we have a settlement where the class representatives will each get $1,000, the attorneys will get $950,000, but the class gets nothing unless they are satisfied enough with the defendant's products to buy them again. The main beneficiaries of this settlement are the attorneys; combined with the questionable clear-sailing and "kicker" provisions of the settlement with the questionable relief, *In re Bluetooth, supra*, there is a tremendous question of Rule 23(a)(4) adequacy: were the class

---

[30] *Staton* had also repudiated disproportionate incentive awards.

[31] *Cobell*, 679 F.3d at 922-923.

representatives and counsel in this case acting in the best interests of the class, or in the best interests of class counsel? *See Pampers*, *supra*. If the latter, then the plaintiffs cannot satisfy the 23(a)(4) and (g)(4) adequacy inquiries. *See Creative Montessori Learning Ctrs. v. Ashford Gear LLC*, 662 F.3d 913, 917 (7th Cir. 2011) (counsel must show the district court that "they would prosecute the case in the interest of the class . . . rather than just in their interests as lawyers who if successful will obtain a share of any judgment or settlement as compensation for their efforts."); *Lobatz v. U.S. West Cellular of Cal., Inc.*, 222 F.3d 1142, 1147 (9th Cir. 2000) (if "class counsel agreed to accept excessive fees and costs to the detriment of class plaintiffs, then class counsel breached their fiduciary duty to the class."). The class must be decertified if there is anything less than "undivided loyalties." *Broussard*, 155 F.3d at 338. At a minimum, the settlement must be rejected as unfairly dividing the constructive common fund.

**B.      The settlement inappropriately treats salon-purchasing class members equivalent to mass-retail purchasers.**

A district judge has a "duty in a class action settlement situation to estimate the litigation value of the claims of the class and determine whether the settlement is a reasonable approximation of that value." *Mirfasihi v. Fleet Mortg. Corp.*, 356 F.3d 781, 786 (7th Cir. 2004). *Accord Thomas v. Albright*, 139 F.3d 227, 231 (D.C. Cir. 1998) (Fairness depends upon "evaluat[ing] the terms of the settlement in relation to the strength of the plaintiffs' case."). This principle transcends merely weighing the total constructive common fund against the value of class claims in toto. In fact, the holistic weighing is exactly the issue which can often be trusted to the adversarial process between the settling parties. *See Pampers*, 2013 WL 3957060, at *3.

Judicial supervision includes weighing the value of claims of subclasses against one another to determine whether the intraclass allocation is fair and reasonable. Just as "it is appropriate to weigh distribution of the settlement in favor of plaintiffs whose claims comprises the set that was

more likely to succeed," it is inappropriate not to do so. *Trombley v. Nat'l City Bank*, 826 F. Supp. 2d 179, 202 (D.D.C. 2011) (quoting *Schulte v. Fifth Third Bank*, 805 F. Supp. 2d 560, 589 (N.D. Ill. 2011)). "[I]ntraclass equity" is a "requirement." *Ortiz*, 527 U.S. 815, 863.

But even a cursory look at the merits of the underlying claims reveals that those who purchased the L'Oreal products from a mass retailer have no reasonable claim at all, while those who purchased the product in a salon stand on much better footing. It is self-evident that there is no deception beyond mere "puffery" when the consumer is buying the product in a mass-retailer; the very act of finding the product available there means that no reasonable consumer could be deceived by the purported misrepresentations. To believe that customers could be deceived in such a scenario "would denigrate the intelligence of ordinary consumers." *Pampers*, 2013 WL 3957060, at *5. But as importantly, consumer protection or related claims will not lie in such circumstances. *See Pernod Ricard USA, LLC v. Bacardi U.S.A., Inc.*, 653 F.3d 241, 252 (3d Cir. 2011) ("[T]here may be cases, and this is one, in which a court can properly say that no reasonable person could be misled by the advertisement in question."). Even "the least sophisticated consumer possesses rudimentary knowledge about the financial world and is capable of making basic logical deductions and inferences." *McDermott v. Marcus, Errico, Emmer & Brooks, P.C.*, 911 F. Supp. 2d 1, 54 (D. Mass. 2012) (internal quotation omitted). Meanwhile, those class members who purchased their products in a salon are not subject to this certain defense.

Yet the relief is unitary and does not differentiate between the divergent value of these subclasses.[32] This presents not only a fairness problem, but a 23(a)(4) problem of adequate

---

[32] Unitary relief may well be required by 23(b)(2), but this just demonstrates another reason that the class should not be certified under (b)(2). *See Wal-Mart*, 131 S. Ct. 2541, 2557 ("The key to the (b)(2) class is the indivisible nature of the injunctive or declaratory remedy warranted--the notion that the conduct is such that it can be enjoined or declared unlawful only as to all of the class members or as to none of them.") (internal quotation omitted).

representation. When individuals with claims of divergent legal value are intermingled within a single class, 23(a)(4) and the requirement of interclass equity are violated. *See Ortiz*, 527 U.S. at 857-58; *Melong v. Micronesian Claims Comm'n*, 643 F.2d 10 (D.C. Cir. 1980) (affirming denial of certification of a class that attempted consolidate in a single class with those with strong and weak claims); *cf. also Carerra v. Bayer Corp.*, No. 12-2621, 2013 U.S. App. LEXIS 17479, at *20-*21 (3d Cir. Aug. 21, 2013) (noting the possibility of 23(a)(4) problem where an overbroad class dilutes the recovery of class members with legitimate claims). The problem of actual and potential conflicts is a matter of particular concern in a case such as this one because the [parties seek to] certif[y] the class under Federal Rule of Civil Procedure 23(b)[(2)] which does not allow class members to opt out of the class action." *Broussard v. Meineke Disc. Muffler Shops*, 155 F.3d 331, 338 (4th Cir. 1998). There is a schism within the class between those with no chance of success (mass-retail purchasers) and those with some chance of success (salon purchasers).

To eliminate intraclass conflicts, subclassing is required, with each subclass having "separate representation to eliminate conflicts interests of counsel." *Ortiz*, 527 U.S. at 856. That is, "reclassification with separate counsel," not merely separate named representatives. *Id.* at 857. *See also In re Literary Works in Electronic Databases Copyright Litig.*, 654 F.3d 242, 245 (2d Cir. 2011) ("Only the creation of subclasses, **and the advocacy of an attorney representing each subclass**, can ensure that the interests of that particular subgroup are in fact adequately represented.") (emphasis added); Federal Judicial Center, MANUAL ON COMPLEX LITIGATION § 21.27 (4th ed. 2004) ("If the certification decision includes the creation of subclasses reflecting divergent interests among class members, each subclass must have separate counsel to represent its interests."). None of these safeguards are in place to protect either the salon-purchasing subclass or the mass-retail purchasing subclass.

## CONCLUSION

As proposed, the settlement is riddled with defects. It presupposes a certification that, consistent with Rule 23 and the Constitution, must not be granted. The proposed class definition assures that a certain segment of the class will get neither notice nor an opportunity to object.

The settlement itself offers virtually nothing to the class while class representatives and class counsel will be paid nearly a million dollars. L'Oreal, as well, must be pleased with the virtually unprecedented non-consensual waiver of the ability to use class action mechanisms. This is a rare kind of settlement in which absent class members would be unequivocally better off were they not class members at all. Approval would be a miscarriage of justice.


Dated:  September 11, 2013

Respectfully submitted,

*/s/ Adam E. Schulman*
Adam E. Schulman (DC Bar No. 1001606)
CENTER FOR
CLASS ACTION FAIRNESS
1718 M Street NW, No. 236
Washington, DC 20036
Telephone:  (610) 457-0856
Email:  shuyande24@gmail.com


*Attorney for Melissa Holyoak*

**CERTIFICATE OF SERVICE**

The undersigned certifies he has filed the foregoing Objection via the Court's ECF system thereby effectuating service on all ECF registered attorneys. In addition, and in accord with the Preliminary Approval Order he certifies that he caused to be sent via first class mail a copy of the objection to the following counsel for the settling parties:

Clayton Halunen
Halunen & Associates
80 South Eighth Street
Minneapolis, Minnesota 55402

Frederick B. Warder III,
Patterson Belknap Webb & Tyler LLP
1133 Avenue of the Americas
New York, New York 10036

I declare under penalty of perjury that the foregoing is true and correct.

Dated: September 11, 2013

/s/ Adam Schulman
Adam Schulman