**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| ALEXIS RICHARDSON, JAY SANDLER, LUBNA PESHIMAM, TRACEY ANN BERTRAND, MOLLIE KRENGEL, AND NANCIE LIGON, Individually and on Behalf of All Others Similarly Situated | Case No. 13-CV-00508-JDB<br><br>The Honorable John D. Bates |
| Plaintiffs, | |
| v. | DATE:    October 11, 2013 |
| L'OREAL USA, INC., | TIME:    9:00 a.m. |
| Defendant. | JUDGE:   Honorable John D. Bates |

**REPLY MEMORANDUM IN OPPOSITION TO OBJECTIONS AND IN SUPPORT OF
FINAL APPROVAL OF THE CLASS ACTION SETTLEMENT**

## TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES ................................................................................................iii

INTRODUCTION ......................................................................................................... 1

DISCUSSION ................................................................................................................ 3

    I.   THE REACTION OF THE CLASS ...................................................... 3

        A.  Improperly Submitted Objections ................................................. 3

            1.   Joseph Lee Jones ................................................................. 3

            2.   Gabi Canales Morgan ........................................................... 4

        B.  Center for Class Action Fairness Objection .................................... 4

    II.  THE SETTLEMENT SHOULD BE FINALLY APPROVED NOTWITHSTANDING THE OBJECTIONS ....................................... 6

        A.  The Class Meets the Requirements of Rule 23(b)(2) ....................... 6

            1.   The Best Way to Define the Class that Will Benefit from Injunctive Relief Is through Past Purchasers of the Products .................. 7

        B.  Plaintiffs' Claims Are Solely Injunctive Because there Are No Viable Claims for Classwide Monetary Relief ............................... 10

        C.  Plaintiffs Have Standing to Represent a Class Seeking Injunctive Relief and Certification Under Rule 23(b)(2) ............................... 13

        D.  The Class Period is Appropriate .................................................. 15

        E.  The Class Properly Includes All Purchasers of the Products ......................... 15

    III.  THE SETTLEMENT IS FAIR, REASONABLE AND ADEQUATE AND WARRANTS FINAL APPROVAL ......................................... 17

        A.  The Settlement is Far Superior to the *Pampers* Settlement ......................... 18

        B.  The Requested Attorneys' Fees and Costs are Reasonable and Should be Awarded to Class Counsel ......................................... 19

            1.   The lodestar/multiplier method is appropriate for calculating attorneys' fees and costs ....................................................... 20

2.   The attorneys' fees and costs are reasonable and were
     negotiated at arm's length.....................................................................21

3.   The attorneys' fees and expenses are fair in comparison to the
     value of the injunctive relief, which benefits past, present and
     future purchasers of all L'Oréal Products...............................................24

4.   The incentive awards are reasonable .......................................................25

CONCLUSION ............................................................................................................25

ECF CERTIFICATION.................................................................................................27

# TABLE OF AUTHORITIES

**Page**

**Cases**

*Apple, Inc. v. Samsung Elecs. Co.*,
  678 F.3d 1314, 1336 (Fed. Cir. 2012) ................................................................. 8

*A-W Land Co., LLC v. Anadarko E&P Co. LP*,
  No. 09-cv-02293-MSK-MJW, 2013 WL 3199986 ................................................ 17

*Blessing v. Sirius Xm Radio, Inc.*,
  507 Fed. Appx. 1, 4 (2d Cir. 2012) ....................................................................... 19

*Cholakyan v. Mercedes-Benz USA, LLC*,
  281 F.R.D. 534 (C.D. Cal. 2012) ........................................................................... 10

*Cobell v. Norton*,
  407 F. Supp. 2d 140, 177 (D.D.C. 2005) ............................................................... 21

*Cobell v. Salazar*,
  679 F.3d 909, 922-23 (D.C. Cir. 2012) .................................................................. 25

*Cohen v. Chilcott*,
  522 F. Supp. 2d 105, 122 (D.D.C. 2007) ............................................................... 22

*Cohen v. Warner Chilcott Public Limited Co.*,
  522 F. Supp. 2d 105 (D.D.C. 2007) ................................................................... 8, 25

*Comcast Corp. v. Behrend*,
  133 S. Ct. 1426 (2013) ........................................................................................... 11

*Cotchett v. Avis Rent A Car Systems, Inc.*,
  56 F.R.D. 549, 554 (S.D.N.Y. 1972) ....................................................................... 5

*Delarosa v. Boiron, Inc.*,
  No. SACV-10-1569-JST (CWx), 2012 WL8716658,  (C.D. Cal. Dec. 28, 2012) .................... 8

*Dennis v. Kellogg Co.*,
  No. 09-cv-1786-IEG (WMC), 2013 WL 4834805, n.2, n.3 (S.D. Cal. 2013) ........................... 1

*Dewey v. Volkswagen Aktiengesellschaft*,
  681 F.3d 170, 184 (3rd Cir. 2012) .......................................................................... 16

*FTC v. H.J. Heinz Co.*,
  246 F.3d 708, 711 (D.C. Cir. 2001) ......................................................................... 8

*Glasser v. Volkswagen of Am., Inc.*,
   645 F.3d 1084, 1088 (9th Cir. 2011) ..................................................... 22

*Henderson v. Gruma Corp.*,
   No. 19094173, 2011 WL 1362188, at *7 (C.D. Cal. Apr. 11, 2011) ...................................... 13

*Hubbard v. Donahoe*,
   CIV. 03-1062 RJL, 2013 WL 3943495 (D.D.C. July 31, 2013) ............................................ 20

*In re Apple Inc. Securities Litigation*,
   No. 5:06-CV-05208, 2011 WL 1877988 ................................................................. 5, 23

*In re Black Farmers Discrimination Litig.*,
   856 F. Supp. 2d 1, 30 (D.D.C. 2011) ................................................................... 25

*In re Dry Max Pampers Litigation* ("*Pampers*"),
   724 F.3d 713, 721 (6th Cir. 2013) ...................................................................... 18

*In re Lorazepam & Clorazepate Antitrust Litig.*,
   No. MDL 1290(TFH), 99MS276(TFH), Civ. 99-0790(TFH), 2003 WL 22037741 ............ 3, 25

*In re Packaged Ice Antitrust Litig.*,
   Case No. 08-MDL-01952, 2012 U.S. Dist. LEXIS 162459, (E.D. Mich. Nov. 13, 2012)....... 13

*In re Southwest Airlines Voucher Litig.*,
   2013 U.S. Dist. LEXIS 120735, at *22 (N.D. Ill. Aug. 26, 2013) ......................................... 19

*In re Vitamins Antitrust Litig.*, \
   Misc. Action No. 99-197(TFH), 2001 WL 34312839, (D.D.C. July 16, 2001) ...................... 20

*Joel v. Giuliani*,
   218 F.3d 132 (2nd Cir. 2000) ........................................................................... 16

*Lonardo v. Travelers Indem. Co.*,
   706 F. Supp. 2d 766, 785 (N.D. Ohio 2010) ............................................................ 1

*Lowery v. Circuit City Stores, Inc.*,
   158 F.3d 742, 761 (4th Cir. 1998) ...................................................................... 7

*Luevano v. Campbell*,
   93 F.R.D. 68, 91 (D.D.C. 1981) ........................................................................ 3

*Marcus v. Geithner*,
   813 F. Supp. 2d 11, 20 (D.D.C. 2011) .................................................................. 7

*Moore v. CapitalCare, Inc.*,
  461 F.3d 1, 13 (D.C. Cir. 2006)...........................................................................11

*Osher v. SCA Realty I, Inc.*,
  945 F. Supp. 298, 305 (D.D.C. 1996)...................................................................3

*Rexam Inc. v. United Steelworkers of Am.*, Case No. 03-CV-2998 (PJS/JJG),
  2007 U.S. Dist. LEXIS 68653, (D. Minn. Sep. 17, 2007)...................................13

*Ries v. Ariz. Bevs. Uited States LLC, Hornell Brewing Co.*,
  287 F.R.D. 523 (N.D. Cal. 2012) ........................................................................13

*Summers v. Earth Island Inst.*,
  555 U.S. 488, 493 (2009) ....................................................................................14

*Swedish Hosp. Corp. v. Shalala*,
  1 F.3d 1261 (D.C. Cir. 1993)........................................................................11, 20

*Thomas v. Albright*,
  139 F.3d 227, 233 (D.C. Cir. 1998)......................................................................3

*Trombley v. Nat'l City Bank*,
  826 F. Supp. 2d 179, 205 (D.D.C. 2011)........................................................19, 22

*UFCW Local 1776 v. Eli Lilly & Co.*,
  620 F.3d 121, 125 (2d Cir. 2010) .........................................................................8

*Wal-Mart Stores, Inc. v. Dukes*,
  131 S. Ct. 2541, 2557 (2011)...........................................................................7, 11

*Wells v. Allstate Ins. Co.*,
  557 F. Supp. 2d 1, 8-9 (D.D.C. 2008) ................................................................25

*Williams v. Glickman*, No. Civ. A. 95-1149(TAF),
  1997 WL 33772612, (D.D.C. Feb. 14, 1997)........................................................7

## Rules

Fed. R. Civ. P. 23(b)(1)........................................................................................18

Fed. R. Civ. P. 23(b)(2)....................................................................................6, 16

Plaintiffs Alexis Richardson, Jay Sandler, Lubna Peshimam, Tracey Ann Bertrand, Mollie Krengel and Nancie Ligon respectfully submit the following response to the objections to final approval of this Settlement.

## **INTRODUCTION**

Of the millions who received notice of this Settlement, only two attorney-driven objections were filed and a third improper objection was received from a federal prisoner. One attorney objection contains vague, generalized criticisms of the Settlement. The other lengthier objection was asserted by an attorney-objector at the Center for Class Action Fairness ("CCAF"). This extremely low rate of objection—and the attorney-driven nature of the two submitted objections—strongly favor approval of the Settlement.

Focusing on the lengthier objection, Adam Schulman and Theodore Frank of CCAF went within their own ranks to find an objector to the Settlement, retaining Melissa Holyoak, a fellow CCAF lawyer. CCAF has been recognized as a "serial objector"—an "ostensibly 'activist' organization" that is "long on ideology and short on law." *Dennis v. Kellogg Co.*, No. 09-cv-1786-IEG (WMC), 2013 WL 4834805, n.2, n.3 (S.D. Cal. 2013) (quoting *Lonardo v. Travelers Indem. Co.*, 706 F. Supp. 2d 766, 785 (N.D. Ohio 2010)). Apparent in Holyoak's objection is CCAF's general ideological distaste for class action settlements and the utility of Federal Rule of Civil Procedure 23.

Failing to take note of key facts uncovered in pre-mediation discovery, both objectors focus on the lack of monetary relief for the Class. However, as detailed in Plaintiffs' Motion for Final Approval, and evidenced by both objectors' failure to claim they have suffered *any* damage by virtue of the Claims[1], the Class does not have any viable claims for monetary relief. Money

---

[1] All capitalized terms herein have the same meaning as in the Settlement Agreement "Settlement Agreement" filed with the Court on May 15, 2013 (Dkt. No. 9-2).

damages are not "incidental" and not "predominant," as claimed by CCAF; they simply do not flow at all from the claims asserted in the Complaint. The objections provide no basis for the Court to deny final approval of the Settlement.

The injunctive relief obtained for the Class is significant, benefits past and future purchasers of the Products, and remedies the very issue complained of in the Complaint. As the record shows, following extensive pre-mediation and confirmatory discovery, it became apparent that L'Oréal did not charge a premium price for the Products. Consumers purchase hair products for a variety of reasons, and if a consumer did, in fact, attach a value to the "salon-only" representations, determining monetary damages would require an individual inquiry, inappropriate for classwide treatment. For that reason and others, certification of a Rule 23(b)(3) class would have posed significant challenges. Viewing the experience of counsel for the Class and L'Oréal and the Settlement in relation to the strength of the case, final approval is warranted.

Both objectors take issue with the award of attorneys' fees and costs and incentive awards. Plaintiffs' Counsel negotiated their attorneys' fees and costs only after completing the negotiation of class relief; there was no tradeoff of relief to the Class for attorneys' fees, as objectors charge. Plaintiffs' Counsel request a mere 1.01 multiplier in seeking their attorneys' fees and expenses. Accordingly, the attorneys' fees, costs and incentive awards are fair and reasonable and should be awarded in their entirety.

As discussed below, the Settlement Class meets the criteria established by Rules 23(a) and 23(b)(2). In light of these considerations, the Settlement Class in this case should be certified and final approval granted.

## DISCUSSION

## I.    THE REACTION OF THE CLASS

It is important to look at the reaction of the settlement class when evaluating the fairness, adequacy, and reasonableness of a class action settlement. *Osher v. SCA Realty I, Inc.*, 945 F. Supp. 298, 305 (D.D.C. 1996) ("In evaluating the Class' own reaction to the settlement's terms, courts look to the number and vociferousness of the objectors"). A small number of objections provides "an important indication of [a settlement's] fairness and adequacy." *Luevano v. Campbell*, 93 F.R.D. 68, 91 (D.D.C. 1981). *See In re Lorazepam & Clorazepate Antitrust Litig.*, No. MDL 1290(TFH), 99MS276(TFH), Civ. 99-0790(TFH), 2003 WL 22037741, at *6 (D.D.C. June 16, 2003) ("existence of even a relatively few objections certainly counsel in favor of approval."). In fact, a settlement can be found fair "even though a significant portion of the class and some of the named plaintiffs object to it." *Thomas v. Albright*, 139 F.3d 227, 232 (D.C. Cir. 1998) (finding settlement fair where 15% of class members objected).

Here, while the Class has millions of members, only two objections were made to the Court, one tardily. A third objection violated the Court's Preliminary Approval Order. All of the objections are without merit.

### A.    Improperly Submitted Objections

#### 1.    Joseph Lee Jones

Joseph Lee Jones, an inmate in the El Dorado Correctional Facility in Kansas objects to the Settlement. (Halunen Decl., Ex. 2.) Mr. Jones failed to provide written notice of the objection to Plaintiffs' or L'Oréal's Counsel and did not file the objection with the Court. The Court's Preliminary Approval Order (Dkt. No. 14), required that each objection be filed with the Court and served on Class Counsel and L'Oréal's Counsel. As Mr. Jones failed to properly submit his objection, the Court should not consider it.

If the Court is inclined to consider the objection, Mr. Jones' crimes of dishonesty are particularly relevant here.  (*See* Halunen Decl., Ex. 3.)  Mr. Jones has been convicted of forgery, making a false writing, identity theft and identity fraud.  (*Id.*)  More important, he did not object to any particular aspect of the Settlement. He simply claims he is entitled to $200,000.   His objection therefore provides no basis for derailing final approval.

    2.  <u>Gabi Canales Morgan</u>

Ms. Morgan, a Corpus-Christi attorney, objects to the "overall unfairness of this settlement."   Ms. Morgan failed to timely file her objection as required by the Court's Preliminary Approval Order, Dkt. No. 14.   (*See* Dkt. No. 21, filed on September 20, 2013.) Accordingly, the Court should dismiss Ms. Morgan's objection as untimely.

Ms. Morgan claims that the injunctive relief does not benefit the Class and instead, only benefits future purchasers. Ms. Morgan also notes that the settlement website was no longer active when she made her untimely objection.[2]  She objects to the proposed attorneys' fees and costs award, which she claims is excessive.   Additionally, Ms. Morgan objects to the release language.   Finally, she makes overly broad objections to the alleged failure to meet the requirements of Rule 23 and claims Plaintiffs have failed to show that the settlement is "fair, reasonable and adequate." We address her objections in Section B below.

**B.**  **Center for Class Action Fairness Objection**

Objector Melissa Holyoak and her counsel, Adam Schulman, are attorneys at the Center for Class Action Fairness ("CCAF"). (Dkt. No. 19, p. 2.)   In the past year Ms. Holyoak, on

---

[2] The Settlement website was available, as required by the Court's Preliminary Approval Order, for 30 days following the publication of the Notice, until August 19, 2013. (Dkt. No. 16-1.)

behalf of CCAF, has acted as counsel in at least three objections.[3] Despite her claim that CCAF is a pro bono organization, she has requested fees in previous actions as objectors' counsel.[4]

Despite Ms. Holyoak's attempt to convince this Court that CCAF is not a "professional objector," CCAF has been an objector in at least 26 class actions since 2009.  CCAF has a long history of filing generic, ideological objections to class action settlements. CCAF's solicitation of objectors, on its blog and within its own ranks, raises questions as to standing and motive.[5] Ms. Holyoak admits that CCAF "is funded entirely through charitable donations and court awarded attorneys' fees."  (Dkt. No. 19 at p. 3.)  Her salary is paid by the very fees that CCAF obtains for objecting to class settlements, which creates a conflict of interest. Courts look askance at arrangements where an attorney is a member of the class that her firm seeks to represent.  *See Cotchett v. Avis Rent A Car Sys., Inc.*, 56 F.R.D. 549, 554 (S.D.N.Y. 1972) (finding a lawyer's possible recovery as a member of the class is exceeded by the interest she may have in the legal fees engendered by the lawsuit).

In its objection here, CCAF provides a long-winded preemptive response to an anticipated argument by Plaintiffs' Counsel that CCAF is seeking financial gain. It proclaims that "Holyoak is willing to stipulate to an injunction prohibiting herself from accepting compensation in exchange for the settlement of this objection." (Dkt. No. 19, pp. 3-4.)  However, CCAF's historical behavior speaks to the contrary.  For example, in *In re Apple Inc. Securities Litigation*, No. 5:06-CV-05208 JF(HRL), 2011 WL 1877988, at *5 (N.D. Cal. May 17, 2011),

---

[3] Objection to Proposed Settlement, *Redman v. Radioshack Corp.*, No. 11-CV-06741(E.D. Ill. Aug. 27, 2013), ECF No. 115; Theodore H. Frank's Objection to Settlement, *Person v. NBTY, Inc.*, No. 11-CV-07972 (E.D. Ill. Aug. 8, 2013), ECF No. 103; Objection to Proposed Settlement and Opposition to Motion for Attorneys' Fees, Expenses and Participation Awards, *Pecover v. Elec. Arts, Inc.*, No. 08-CV-02820 (N.D. Cal. Dec. 10, 2012), ECF No. 404.
[4] Decl. of Melissa Holyoak in Support of Unopposed Motion for Attorneys' Fees, *Pecover v. Elec. Arts, Inc.*, No. 08-CV-02820-CW (N.D. Cal. Dec. 10, 2012), ECF No. 466-1.
[5] CCAF uses its blog to solicit objectors. *See* Center for Class Action Blog, located at http://centerforclassactionfairness.blogspot.com/search?updated-max=2011-05-13T14%3A21%3A00-04%3A00&max-results=7 (last visited Sept. 24, 2013).

CCAF requested a fee award from the court that amounted to an hourly billable rate of $2,800. The court rejected CCAF's fee request. *Id.* Ultimately, CCAF obtained an $87,000 fee by agreeing not to appeal the settlement. *Id.*, at *5. To the extent that CCAF may argue that what it received is not the same as compensation to the actual objector, that is a distinction without a difference, particularly since Holyoak is employed by CCAF.

CCAF objects to the following: (1) certification of the Class as a (b)(2) class as it claims that monetary damages predominate; (2) appropriateness of removal of representations that L'Oréal's Products are sold only in salons as injunctive relief; (3) the Class definition; (4) the attorneys' fees and costs and incentive awards to the Plaintiffs (5) the fairness of the Settlement.

The Morgan and CCAF objections fail to provide a legitimate basis for the Court to deny final approval of the Settlement.

## II.    THE    SETTLEMENT    SHOULD    BE    FINALLY    APPROVED NOTWITHSTANDING THE OBJECTIONS

### A.    The Class Meets the Requirements of Rule 23(b)(2)

Rule 23(b)(2) requires that "the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole." Fed. R. Civ. P. 23(b)(2). Objectors do not dispute that most of these elements are satisfied. They do not challenge that L'Oréal "has acted . . . on grounds that apply generally to the class" in that its Products containing false or deceptive labels were sold, and absent the relief, would be sold to Class Members. They also do not challenge that the Settlement contains "final injunctive relief" in requiring that the false representations be deleted. Nor do they challenge that the injunctive relief "is appropriate" in that it directly addresses and eliminates the misrepresentations.

Rather, the objectors contend that the relief does not "respect[] the class as a whole" because the class is defined as persons who have purchased L'Oréal products, which refers to actions in the past, and the injunctive relief benefits people who will purchase the Products in the future.   Second, they argue that the claims are predominantly monetary, which precludes certification under Rule 23(b)(2) under *Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541, 2557 (2011).  The objectors are wrong in both respects.

        1.    <u>The Best Way to Define the Class that Will Benefit from Injunctive Relief Is through Past Purchasers of the Products</u>

Objectors criticize that the Settlement defines the Class for which injunctive relief is obtained in terms of persons who have bought the L'Oréal products in the past.  Completely absent, however, is any alternative suggestion for defining the Class.   The Class could not properly be defined as persons who will, or who might, buy the Products in the future because the definition would be imprecise and it would not be possible at the time of sending notice or subsequently to determine class membership.  *See Williams v. Glickman*, No. Civ. A. 95-1149(TAF), 1997 WL 33772612, at *4 (D.D.C. Feb. 14, 1997) ("the class must be susceptible to precise definition . . . in order to make it 'administratively feasible for the court to determine whether a particular individual is a member'") (internal citation omitted).  Without a viable class definition, it is doubtful whether broad injunctive relief that affects the rights of many people could be obtained in federal courts.  *See Lowery v. Circuit City Stores, Inc.*, 158 F.3d 742, 761 (4th Cir. 1998) (holding that broad injunctive relief generally not available in non-class employment discrimination cases), *vacated on other grounds*, 527 U.S. 1031 (1999); *Marcus v. Geithner*, 813 F. Supp. 2d 11, 20 (D.D.C. 2011) (adopting *Lowery*'s analysis that pattern-or-practice claim generally is not available in non-class employment discrimination claims).  And of course, an inability to obtain an order requiring a merchant to cease its misrepresentations would

undercut the policies adopted by virtually every state government as well as the District of Columbia making it illegal for merchants to engage in deceptive marketing of products to consumers. *See, e.g.*, *Delarosa v. Boiron, Inc.*, No. SACV-10-1569-JST (CWx), 2012 WL 8716658, at *4 (C.D. Cal. Dec. 28, 2012) (finding that a plaintiff should have standing for injunctive relief when the product at issue is one that a plaintiff may purchase again once it is no longer falsely advertised).

To avoid that result, this Court should recognize the reality that consumers, including purchasers of hair products (Kuhn Decl., ¶ 7), frequently exhibit strong brand loyalty. *See, e.g., Apple, Inc. v. Samsung Elecs. Co.*, 678 F.3d 1314, 1336 (Fed. Cir. 2012) (noting "a 'high degree of brand loyalty to Apple, which discourages Apple purchasers from switching to other brands'"); *FTC v. H.J. Heinz Co.*, 246 F.3d 708, 711 (D.C. Cir. 2001) (noting Gerber's "unparalleled brand recognition" and brand loyalty greater than any other jarred baby food). This reality animates much of marketing. A consequence of brand loyalty is that a consumer who has purchased a product in the past is more likely to purchase it in the future. *See Mason v. Nature's Innovation, Inc.*, No. 12cv3019, 2013 WL 1969957, at *3-4 (S.D. Cal. May 13, 2013) (finding standing to sue for injunctive relief when plaintiff is still interested in purchasing the product).

Brand loyalty can be seen in the behavior of the Plaintiffs and the Objector. For example, Plaintiff Lubna Peshimam has been purchasing several of L'Oréal's Products at salons for the past nine years. (Dkt. No., ¶ 13.) Plaintiff Jay Sandler purchased two types of L'Oreal products multiple times in 2012. (*Id.*, ¶ 12.) Objector Holyoak likewise repeatedly purchased L'Oréal's Redken products. (Kuhn Decl., ¶¶ 8-12.) While there are many products with similar qualities, Plaintiffs and Holyoak were loyal to the L'Oréal brand. As a result, consumers who have bought L'Oréal products in the past few years are likely to benefit from the injunctive relief. They are

logical members of a Class seeking an order requiring L'Oréal to stop making those misrepresentations.

Judge Kollar-Kotelly's decision approving the settlement in *Cohen v. Chilcott Public Limited Co.*, 522 F. Supp. 2d 105 (D.D.C. 2007), illustrates the desirability of focusing on economic realities in defining a class rather than insisting on a perfect one-to-one relationship of class members and persons benefited by a settlement. The *Cohen* plaintiffs claimed that the defendants engaged in an antitrust conspiracy that had the effect of increasing the price of a contraceptive, Ovcon 35. *Id.* at 111. The parties entered into a class settlement under which the defendants agreed to donate $3 million of contraceptives to primary care physicians, university health centers or clinics, and charitable organizations, which would then be distributed to clients. *Id.* at 112. An objector complained that the settlement did not compensate class members directly for monies they overpaid. *Id.* at 119. Judge Kollar-Kotelly concluded that the companies had substantial defenses to the claims, and that the cost of distributing money or coupons to the persons who had actually purchased Ovcon 35 would have exceeded the amount that defendants had agreed to donate. *Id.* at 119-20. Besides, she pointed out, class members who visited one of the recipients of the donations would benefit, *Id.*, but of course so too would women who had not purchased Ovcon 35, but visited one of the recipients. Thus, the judge approved a settlement in which the class was defined by past purchasers of a product but the beneficiaries would be persons who acquired the product in the future. This is exactly the type of settlement which CCAF criticizes, but which may be necessary because of economic realities.

CCAF cites several decisions in which courts have held that it was improper to define a class seeking injunctive relief in terms of persons who suffered harms in the past. But only one of these cases involved purchasers of consumer goods likely to be making repeat purchases in

the foreseeable future and the facts are distinguishable.[6]  *Cholakyan v. Mercedes-Benz USA, LLC*, 281 F.R.D. 534 (C.D. Cal. 2012), denied certification under Rule 23(b)(2) to a class of owners and lessees of a model of car.  However, unlike here, the *Cholakyan* class litigated on a monetary basis and sought class certification of a 23(b)(3) class.  *Id.* at 558-59.  Furthermore, the court's decision rested on the fact that the some class members would not benefit from injunctive relief at all.  *Id.* at 559-61.

To the extent that objectors are able to find decisions from other jurisdictions denying certification to a class consisting of recent past purchasers of a product, the Court should follow *Cohen* and not those decisions.  Neither *Dukes* nor any other controlling precedent requires an interpretation of the Rule 23 that would frustrate the consensus across the country that consumers deserve protection from such misrepresentations.

### B.    Plaintiffs' Claims Are Solely Injunctive Because there Are No Viable Claims for Classwide Monetary Relief

After many pages of argument that "monetary claims predominate" in this case (Dkt. No. 19, pp. 10-19), CCAF finally acknowledges that the Complaint in this case seeks only injunctive relief (except for attorneys' fees and costs).  (*Id.* at 19.)  But, it asserts, the Court should disregard the Complaint because it is a "sham" and "an artificial means of bolstering the attempted (b)(2) certification and settlement."  (*Id.* at pp. 10, 19.)

---

[6] *See Hecht v. United Collection Bureau*, 691 F.3d 218, 223-24 (2d Cir. 2012) (debt collection practices); *Brown v. Kelly*, 609 F.3d 467, 482 (2d Cir. 2010) (police practices toward loitering for purposes of begging); *McManus v. Fleetwood Enters., Inc.*, 320 F.3d 545, 553 (5th Cir. 2003) (purchase of motor homes); *Bolin v. Sears, Roebuck & Co.*, 231 F.3d 970, 978 (5th Cir. 2000) (post-bankruptcy collection efforts); *Haggart v. Endogastric Solutions, Inc.*, No. 10-cv-346, 2012 WL 2513494, at *5 (W.D. Pa. June 28, 2012) (one-time medical procedure); *Charron v. Pinnacle Group N.Y. LLC*, 269 F.R.D. 221, 229 (S.D.N.Y. 2010) (harassment of tenants in rent-regulated apartments); *Mogel v. UNUM Life Ins. Co. of Am.*, 646 F. Supp. 2d 177, 184 (D. Mass. 2009) (beneficiaries of life insurance policies).  The Supreme Court's adoption of the principle that former employees generally lack standing to seek injunctive relief, *Wal-Mart*, 131 S. Ct. at 2559-60, is distinguishable for the same reason.  Former employees, unlike former purchasers of a product, do not have the ability to re-establish a relationship at any time; the employer has to agree to re-hire them.  Finally, one decision that CCAF cites, *Stoneback v. ArtsQuest*, No. 12-cv-03287, 2013 WL 3090714 (E.D. Pa. June 20, 2013), involved plaintiff's standing to sue, not the definition of the class.  *Id.* at *37.

To support its argument that Plaintiffs and Plaintiffs' Counsel committed a fraud on the Court and on unnamed class members, CCAF cites to the class definition, the types of claims asserted, and the language of the release.  It completely ignores, however, Plaintiffs' explanation as to why the Complaint seeks, and the Settlement procures, only injunctive relief.  (*See* Dkt. No. 17-1, pp. 4-6.)  That explanation bears reiteration and further explication.

When the original complaint was filed in California, the then-only plaintiff intended to seek monetary as well as injunctive relief.  The theory was that the misrepresentations had allowed L'Oréal to charge a premium for its products, and the plaintiff would seek disgorgement of the excess profits for the class.  *See, e.g., Moore v. CapitalCare, Inc.*, 461 F.3d 1, 13 (D.C. Cir. 2006).  Disgorgement would avoid the issue of individualized damage determinations.  As a result, a class could be certified under either Rule 23(b)(2) based on the theory that damages were "incidental," or under Rule 23(b)(3) because there would be no need for potentially hundreds of thousands, if not millions, of individualized liability and damages rulings, thereby skirting the types of manageability issues with large classes highlighted in *Wal-Mart*, 131 S. Ct. at 2560-61, and *Comcast Corp. v. Behrend*, 133 S. Ct. 1426 (2013).

Through sworn statements and statistical data obtained during formal discovery and informal discovery during the mediation process, however, Plaintiff and counsel became convinced that L'Oréal did not charge, and consumers did not pay, a premium, based on the misrepresentations that the Products were sold only in salons.  There might be individual instances in which a premium was paid, but nothing across the board.  As a result, certification of a class seeking monetary relief was impossible.  There were no classwide claims for monetary relief.

Plaintiffs' Counsel reached this conclusion reluctantly. They had filed the lawsuit expecting to find substantial profits to be disgorged and thereby benefit the class. The conclusion also had a significant impact on counsel's fees because it eliminated creation of a common fund from which fees would have been awarded on a percentage-of-the-fund basis. *See, e.g., Swedish Hosp. Corp. v. Shalala*, 1 F.3d 1261 (D.C. Cir. 1993). Anyone who suggests that counsel would sell out classwide monetary claims if they were viable does not understand the economics of plaintiffs' law firms.

But after facing the new reality, Plaintiff had two choices. One was to dismiss the case, just as the *Cohen* plaintiffs could have dismissed their claims when they realized that they could not obtain enough in damages to cover the cost of distributing awards to all class members. The other choice was to focus on the fact that L'Oréal was making misrepresentations even if it was not charging premiums based on those misrepresentations, and try to negotiate injunctive relief to stop the misrepresentations. Dismissing the case did not benefit the class at all, while the second course could provide a substantial benefit, as long as L'Oréal did not demand an excessive concessions in return. After hard negotiations, the parties were able to agree on release of the right to bring class or multiple plaintiff actions in return for the injunction. This was a good deal for the class. Class members gained the elimination of the misrepresentation in return for concession of a right that, counsel was convinced, had nuisance or no value. The right to bring individual claims for their own monetary damages was expressly preserved.

The arguments that CCAF advances in support of the proposition that monetary claims predominate but prove nothing in the context of this case. It is correct that the typical remedies for breach of warranty and unjust enrichment are monetary, but in this case, any claim for classwide monetary relief is worthless. It is correct that under the Settlement Class Members

release classwide injunctive and monetary claims, but again, classwide monetary relief claims have no value.  Finally, it is correct that the class is defined in terms of persons who have purchased L'Oréal products, but there is no alternative—the class cannot be defined in terms of future purchasers.  Surely, these Class Members are better off with something—the elimination of the misrepresentations—than with nothing because the case was dismissed or the class denied certification.  *See In re Packaged Ice Antitrust Litig.*, Case No. 08-MDL-01952, 2012 WL 5493613, at *6 (E.D. Mich. Nov. 13, 2012) (approving settlement partly because "the Court is convinced that in this case, something was better than nothing"); *Rexam Inc. v. United Steelworkers of Am.*, Case No. 03-CV-2998 (PJS/JJG), 2007 WL 2746595, at *6 (D. Minn. Sep. 17, 2007) (same).

C.    **Plaintiffs Have Standing to Represent a Class Seeking Injunctive Relief and Certification Under Rule 23(b)(2)**

Courts have divided over whether a purchaser of a mislabeled consumer good has standing to seek injunctive relief.  CCAF cites only decisions of courts holding that they do not.  (Dkt. No. 19, pp. 13-14.)  Other courts have reached the opposite conclusion, holding the more persuasive position that denying standing to consumers who have knowledge of the misrepresentation is equivalent to holding that no consumer would ever be able to achieve injunctive relief for a class of consumers in a false labeling case.  *See Koeler v. Litehouse, Inc.*, No. CV12-04055(SI), 2012 WL 6217635, at *6 (N.D. Cal. Dec. 13, 2013. Obviously, any consumer who does not have knowledge that a representation is false also cannot be a plaintiff.  *See Ries v. Ariz. Bevs. United States LLC, Hornell Brewing Co.*, 287 F.R.D. 523 (N.D. Cal. 2012) ("[W]ere the Court to accept the suggestion that plaintiffs' mere recognition of the alleged deception operates to defeat standing for an injunction, then injunctive relief would never be available in false advertising cases, a wholly unrealistic result."); *Henderson v. Gruma Corp.*,

13

CV 10-04173, 2011 WL 1362188, at *7 (C.D. Cal. Apr. 11, 2011) (same); *Delarosa*, 2012 WL 8716658, at *4 (recognizing that there should be standing in a case where there is a likelihood that the plaintiff may purchase the consumer product in the future once it is no longer falsely advertised).   Just as a refusal to allow a class seeking injunctive relief to consist of former purchasers would gut the public policies underlying consumer fraud statutes, so too would refusal to allow a consumer aware of the deception to serve as the named plaintiff.[7]

Certainly, to have standing, a plaintiff must have "'such a personal stake in the outcome of the controversy' as to warrant *his* invocation of federal-court jurisdiction." *Summers v. Earth Island Inst.*, 555 U.S. 488, 493 (2009) (quoting *Warth v. Seldin*, 422 U.S. 490, 498-99 (1975)). The "stake" of a plaintiff seeking an injunction must be an injury that is "concrete and particularized" that will be cured, at least in part, by the injunction.  *Summers*, 555 U.S. at 493. Nothing, however, requires that the injury be economic to be concrete or particularized.  *See Id.* at 494 (explaining that standing originally came from plaintiff's "interests in viewing the flora and fauna of the [burnt] area"). CCAF's attempt to extend the adverse decisions to this case applies an overly crabbed definition of standing.

The Plaintiffs in this case, especially someone such as Ms. Peshimam who purchased L'Oréal products for nine years, have considerable loyalty to the product, but also now reservations about buying it and thereby supporting a product that engages in misrepresentations to other customers.  Once L'Oréal removes the false labeling, those reservations will disappear. Ms. Peshimam and the other Plaintiffs will be able to purchase L'Oréal products again without those concerns.   That interest is sufficient to support standing, especially when not to allow standing is at odds with the consumer protection statutes adopted in almost every state.

---

[7]      Objectors cannot contend that consumers may get around the standing issues by seeking damages and injunctive relief and certification under Rule 23(b)(3).   A plaintiff must have standing as to each form of relief sought. *Summers*, 555 U.S. at 493.

### D.    The Class Period is Appropriate

On October 1, 2013, Plaintiffs and L'Oréal filed a joint stipulation to amend the

Settlement Class definition to the following:

> All consumers nationwide who purchased the L'Oreal Products for personal,
> family or household use from August 30, 2008, up to and including June 27,
> 2013.  The Settlement Class excludes: (i) purchasers of the L'Oreal Products for
> re-sale, stylists and salon owners; (ii) L'Oreal, its officers, directors and
> employees; and its affiliates and affiliates' officers, directors and employees; (iii)
> Plaintiffs'' Counsel and their employees; and (iv) judicial officers and their
> immediate family members and associated court staff assigned to the D.C. Action.

(Dkt. No. 22.) This remedies the objection raised by CCAF regarding the "unbounded class

definition." (Dkt. No. 19, at p. 22.)  The limitation of the class period to certain dates prior to the

dissemination of notice eliminates any need to re-notice the Settlement.

### E.    The Class Properly Includes All Purchasers of the Products

CCAF argues that the Settlement Class "inappropriately treats salon-purchasing class

members equivalent to mass-retail purchasers" and characterizes the salon purchasers and mass-

retail purchasers as separate "subclasses." (Dkt. No. 19, at p. 36.)  In reality, however, CCAF

argues that those who purchased from a mass-retailer had no reasonable claim at all because they

could not possibly have been misled by a representation that the L'Oréal Products were sold only

in salons.  CCAF does not cite to a single consumer survey or provide any sworn testimony in

support of this factual proposition.  (*Id.* at 36-38.)

If CCAF were correct that mass-retail purchasers were not misled, then it should not

worry about the harm that that the Settlement supposedly would do to Class Members by barring

their right to bring class action lawsuits for monetary relief.  According to CCAF's logic, anyone

who bought the Products outside a salon had no damages, whether individual or class, from the

time of that purchase.  Thus, whether persons who purchased the Products at mass retailers

should have been included in the Class might have some academic interest under CCAF's view of the world, but no practical significance.  CCAF simply should not care about this issue.

By contrast, Plaintiffs believe that mass-retail purchasers may have viable claims, although not on a class basis for the reasons set out above, and thus address whether mass-retail purchasers should be included in a class certified under Rule 23(b)(2).  For them to be properly included, L'Oréal must have "acted or refused to act on grounds that apply" to mass-retail purchasers as well as salon purchasers, "so that final injunctive relief . . . is appropriate respecting" store purchasers as well as salon purchasers.  Fed. R. Civ. P. 23(b)(2).  The first prong is easy:  CCAF does not contest that L'Oréal labeled its bottles identically regardless whether they were sold in stores or salons.   CCAF contends that the Class runs afoul of the second prong because store purchasers would not benefit from a change in labeling.  CCAF is wrong.  The Complaint alleges that, "[a]t the point of sale, a reasonable consumer would not have the ability to independently investigate why or how a product that is labeled salon-only is sold in a mass retailer such as Kmart." (Dkt. No. 1, ¶45.)  A purchaser should not have to make a determination as to why Kmart is able to carry the salon-only product. The purchaser may believe the label and conclude that the bottles were somehow diverted; after all, L'Oréal contends that the products were intended for salon sale only and somehow diverted in large numbers. (Parenty Decl., Dkt. No.9-5 at ¶ 3.)  The purchaser may believe that L'Oréal has only recently changed marketing strategies and the bottle has not been altered.  The purchaser also could just be confused.  In any event, all Class Members will benefit from a change in labeling.

Equally important, there is no conflict between store purchasers and salon purchasers. *See Joel v. Giuliani*, 218 F.3d 132, 140 (2d Cir. 2000) (finding no intraclass conflict defeating settlement approval when with respect to the "broad relief sought . . . the interests of the class

members are identical."). This is not a case where "some [class] members claim to have been harmed by the same conduct that *benefitted* other members of the class." *Dewey v. Volkswagen Aktiengesellschaft*, 681 F.3d 170, 184 (3rd Cir. 2012). (emphasis added). Here, no class member benefits from the deceptive salon-only Claims. Inclusion of all purchasers does not compromise any single class member's interests or harm the salon purchasers who would be entitled to no more than the complete injunctive relief obtained in the Settlement. Accordingly, the Settlement achieves global relief for all purchasers. The injunctive relief ensures that not a single consumer—salon or otherwise—will be deceived by the salon-only Claims.

There is also no conflict between salon and store purchasers as to the release. Any purchaser, whether from a salon or a store, who may have a claim for monetary damages still has the opportunity to bring an individual claim for his or her own monetary damages. *See A-W Land Co., LLC v. Anadarko E&P Co. LP*, No. 09-cv-02293-MSK-MJW, 2013 WL 3199986, at *9 (D. Colo. June 24, 2013) ("[t]he only remedy that the class can obtain on a collective basis is the declaratory relief they seek; individualized claims for monetary damages can only be pursued in post-class dissolution individual suits."). The Class is therefore appropriately defined.

## III.   THE SETTLEMENT IS FAIR, REASONABLE AND ADEQUATE AND WARRANTS FINAL APPROVAL

Generally, when evaluating the fairness and adequacy of settlements, courts weigh the settlement against the possible better outcomes in litigation. Here, however, Objectors do not challenge that Plaintiffs obtained the primary the injunctive relief possible. If the Court allows Plaintiffs to proceed under Rule 23(b)(2) but strikes down the Settlement as unfair, then the best outcome would be the identical injunctive result, not some better result.

Alternatively, if the Court strikes down the Settlement based on the arguments that the Plaintiffs lack standing to seek injunctive relief, or because a class cannot be defined or certified

under Rule 23(b)(2), the alternative to the Settlement is dismissal of all class claims or denial of class certification because class claims for monetary relief are not viable.  In that event, the fairness and adequacy of the Settlement should be evaluated against these possibilities.

Either way, the Settlement is fair, reasonable and adequate. The Class will be worse off if the Settlement is not approved.  If the Settlement is approved, past purchasers of L'Oréal Products—many of whom are likely future, repeat purchasers like Holyoak—will have the opportunity to make informed future purchases and future new purchasers will be shielded from any potential deception.

Nonetheless, CCAF argues that the Settlement is not fair, reasonable and adequate by analogy to a recent Sixth Circuit decision and by challenging the proposed attorneys' fees and incentive awards.

### A.      The Settlement is Far Superior to the *Pampers* Settlement

CCAF mistakenly describes this settlement as the "close cousin" of the settlement in *In re Dry Max Pampers Litigation*, 724 F.3d 713 (6th Cir. 2013), which was recently found unfair because the award of $2.37 million in attorneys' fees did not match the benefit that the injunctive relief provided to the class.  (Dkt. No. 19, at p. 1.)  Contrary to CCAF's sweeping statement, there are four critical differences.

First, in *Pampers*, the complaint sought certification under Fed. R. Civ. P. 23(b)(1) or (3) and monetary damages for the class; however, the settlement was under Rule 23(b)(2) and provided only injunctive relief.  724 F.3d at 716.  Here, the complaint seeks what the settlement delivers: certification under Rule 23(b)(2) and only injunctive relief.  Additionally, Plaintiffs' Counsel extensively briefed why monetary relief is not available to the Class.

Second, in *Pampers*, the injunctive relief—the only relief for class members—was "nearly worthless."  *Id.* at 715.  The *Pampers* plaintiffs complained that Pampers Dry Max

diapers were causing severe diaper rash.  *Id.* The court characterized the injunctive relief as providing: (1) a refund program with essentially no value to the class; (2) package labeling that was "little more than an advertisement for Pampers" and did not address the relief requested in the complaint; and (3) website changes that provided "rudimentary information whose value to unnamed class members is negligible."  *Id.* at 718-20.  The limited value of the information did nothing to prevent the rash—it did not even provide advice on how to prevent rashes.  By contrast, the injunctive relief achieved in this case is a valuable label change that entirely eradicates the deception complained of in the Complaint, and as requested in the Complaint, requires "Defendant to stop marketing its professional hair care products as products sold only in salons." (Dkt. No. 1, at ¶191(C).  The remedy achieved here is the best possible for the Class.

Third, even though the Plaintiffs here achieved far more valuable relief than did the *Pampers* plaintiffs, the fees requested here are less than half of those requested in *Pampers*.

Finally, the decision in *Pampers* does not reveal whether the attorneys' fees and incentive awards were negotiated along with the injunctive relief or after the injunctive relief had been established.  In this case, fees and incentive awards were negotiated in the presence of the mediator only after agreement had been reached on the injunctive relief (Halunen Decl., ¶5; Sabraw Decl. ¶13.)  This diminishes any likelihood that the parties traded them for released relief to the class.  *See Blessing v. Sirius XM Radio, Inc.*, 507 Fed. Appx. 1, 4 (2d Cir. 2012); *In re Southwest Airlines Voucher Litig.*, 2013 WL 4510197, at *8 (N.D. Ill. Aug. 26, 2013); *Trombley v. Nat'l City Bank*, 826 F. Supp. 2d 179, 206 (D.D.C. 2011).

## B.     The Requested Attorneys' Fees and Costs are Reasonable and Should be Awarded to Class Counsel

The objectors argue that the requested award of attorneys' fees and costs is unreasonable.  Specifically, and citing no supporting authority in this Circuit, CCAF asserts that: (1) the

19

percentage of recovery method should be applied in this case;[8] (2) the existence of "clear-sailing" and "kicker" provisions signals a self-dealing settlement; and (3) the attorneys' fees and costs are disproportionate to the injunctive relief, which only benefits future purchasers.  None of these arguments are sufficient to reduce, let alone eliminate, the requested award of fees and costs.

1.    The lodestar/multiplier method is appropriate for calculating attorneys' fees and costs

CCAF distorts this Circuit's case law in its argument that the percentage of recovery method is appropriate for calculating fees in this case.  CCAF cites to *Hubbard v. Donahoe*, CIV. 03-1062 RJL, 2013 WL 3943495 (D.D.C. July 31, 2013) and *Swedish Hospital Corp. v. Shalala*, 1 F.3d 1261, 1265 (D.C. Cir. 1993), to support this off-base assertion.  *Hubbard* actually confirms that courts in this District utilize "the lodestar method . . . in the statutory fee shifting framework, whereas the percentage of recovery method is employed where the efforts of counsel have generated a common fund."  *Hubbard*, 2013 WL 3943495, at *7 (citing *In re Vitamins Antitrust Litig.*, MISC. No. 99-197(TFH), 2001 WL 34312839, at *2-3 (D.D.C. July 16, 2001)).  *Swedish Hospital* is likewise inapposite as the issue there was whether the lodestar method was appropriate in a *common fund* case.  *See Swedish Hospital*, 1 F.3d at 1267.  In fact, the *Swedish Hospital* Court recognized that an alternative to the lodestar method is not readily available in a non-common fund case.  *See id.* at 1269.[9]

---

[8] CCAF relies heavily on *In re Bluetooth Headset Products Liability Litigation*, in arguing that the attorneys' fees requested here are unreasonable.  654 F.3d 935 (9th Cir. 2011). However, *Bluetooth* is not controlling and inapposite. The *Bluetooth* Court agreed that the lodestar method is appropriate for calculating fees in class actions brought under fee-shifting statutes where the primary relief obtained is injunctive and not easily monetized.  *Id.* at 941.  It found that the district court's mistake was not in using a lodestar method, but in failing to use an explicit calculation or provide an explanation for the awarded fees.  *Id.* at 943. Here, Plaintiffs have presented local precedent and a systematic calculation supporting the request for attorneys' fees and costs.

[9] Even if the value of injunctive relief may sometimes be treated as part of a constructive common fund for purposes of a percentage of recovery award, in this case it would be impossible to value the injunctive relief, as CCAF seems to admit. (Dkt. No. 19, p. 30.)  L'Oréal has "never sought to determine whether its use of the [salon-only] Claims in

Accordingly, the lodestar method should be applied here.  Plaintiffs' Counsel, on a contingency basis, fought for a class of consumers who were reasonably deceived by L'Oréal's deceptive labeling of the Products.  Plaintiffs' Counsel obtained the precise relief they sought in the Complaint, and now ask to be reasonably compensated for achieving that benefit.

It is well settled in this District that, under the lodestar method, the reasonable hours expended should be multiplied by an appropriate, reasonable hourly rate to calculate the "lodestar" figure per attorney.  *See Cobell v. Norton*, 407 F. Supp. 2d 140, 170 (D.D.C. 2005). In their Motion for an Award of Attorneys' Fees, Reimbursement of Expenses to Class Counsel and Incentive Award Payments to the Class Representatives, Plaintiffs' Counsel provided the reasonable hourly rates and hours expended in this litigation and justification for a modest multiplier.  Since that submission, Plaintiffs' Counsel has incurred additional fees.  Plaintiffs' current lodestar and expenses total $938,457.71, which amount to a mere 1.01 multiplier.  (*See* Halunen Decl., ¶17.) Accordingly, Plaintiffs should be awarded fees based on the lodestar methodology, plus a very modest multiplier.

2.       The attorneys' fees and costs are reasonable and were negotiated at arm's length

The attorneys' fees and costs provision, like the injunctive relief and incentive awards to the Plaintiffs were reached through contentious, arm's-length negotiations under the supervision and guidance of Judge Ronald Sabraw (Ret.) of JAMS.  Judge Sabraw has tried both jury and non-jury class actions and has approved numerous class action settlements which always entails determining whether settlements were fair, reasonable and adequate.  (Sabraw Decl. at ¶1.)  With

---

connection with the L'Oréal Products has any quantifiable value to consumers."  (Parenty Decl, Dkt. No. 9-5 at ¶12.)  Furthermore, L'Oréal does not have "an understanding of how any such value could be determined or measured."  (*Id.*, ¶12.) It is unsure whether the salon-only claims "have any particular value to consumers, or whether L'Oréal's use of the [salon-only] Claims impacts the amount consumers are willing to pay for L'Oréal Products."  (*Id.*)

Judge Sabraw's guidance, and only after Plaintiffs provided a detailed itemization of the fees and expenses to date and a conservative projection of the fees and costs to final approval, Defendant agreed to pay fees and expenses to Plaintiffs not to exceed $950,000. (*Id.* at ¶11.)

Judge Sabraw attested to the contentious, hard-fought nature of the settlement negotiations. (Sabraw Decl. at ¶6.) He further confirmed that the parties always negotiated at arm's length, and there was never any indication of collusion. (*Id.* at ¶12.) He believes the Settlement provides a tremendous benefit to the class and public. (*Id.* at ¶15.) Finally, Judge Sabraw, acutely aware of the claims and defenses raised by both Parties, attested to his belief that the settlement is fair reasonable and adequate.[10]   (*Id.* at ¶16.)   *See Cohen v. Chilcott*, 522 F. Supp. 2d 105, 122 (D.D.C. 2007).

The Class will not benefit from any reduction in the attorneys' fee award, which would benefit only L'Oréal. Thus, the only reason for the Court to review this aspect of the Settlement is to determine if it was collusive and if somehow Plaintiffs and their lawyers traded the Class's interests for a larger fee award. But that could not have happened unless the Court doubts the testimony of Judge Sabraw and Plaintiffs' Counsel that the attorneys' fee negotiations occurred only after agreement on the other terms had been reached and that the attorneys' fee negotiations were hard-fought and non-collusive. As there is no evidence of collusion and the attorneys' fees, expenses and incentive payments are not affecting the class relief, Holyoak does not have standing to object. *See Glasser v. Volkswagen of Am., Inc.*, 645 F.3d 1084, 1088 (9th Cir. 2011) (finding no standing "[i]f modifying the fee award would not 'actually benefit the objecting class member,'" because challenge does not redress any injury) (internal citation omitted).

---

[10] Judge Sabraw had a complete understanding of the facts of this action and the complex legal issues involved, and he believes that the injunctive relief benefits all class members as some may be unaware of the Product sales outside of salons and others misinformed regarding the ability to sell salon-only Products in mass retailers. (Sabraw Decl. at ¶14.)

CCAF has no direct evidence of collusion, but complains about two provisions that supposedly show that Judge Sabraw and Plaintiffs' Counsel are either lying or wrong. First, it complains that a "clear sailing" provision, a provision that L'Oréal will not challenge the requested fee award as long as it is not greater than $950,000 (Dkt. No. 19, at p. 32), shows an intent to protect a fee award "at the expense of potential class benefits." (Dkt. No. 19 at p. 32.)

This certainly is not true here, when the parties did not discuss the amount of attorneys' fees and expenses, including the "clear sailing" provision, until after the other settlement terms were agreed upon. (*See* Halunen Decl., at ¶5; Sabraw Decl., at ¶13.) *See, e.g., In re Apple Inc. Secs. Litig.*, 2011 WL 1877988, at *10 (finding no collusion where "the settlement is the product of a formal mediation session and several months of negotiations conducted at arm's length"). Collusion is especially unlikely when the fees and expenses are paid out of the defendant's own pocket rather than a common fund, because in the former case the defendant has every reason to challenge an unreasonable fee request. Here, the Parties simply capped the attorneys' fees and expenses that L'Oréal would agree to pay, based entirely on a conservative estimate of Plaintiffs' Counsel's attorneys' fees and costs through final approval. The cap benefits both sides. Plaintiffs' counsel benefits by obtaining some degree of certainty after working long hours on a contingent basis, and L'Oréal benefits by providing an incentive to Plaintiffs to keep their fee request within reasonable bounds. This arrangement is neither collusive nor self-dealing.

Likewise, CCAF's assertion is wrong that the presence of a "kicker" indicates self-dealing or a meritless settlement. By definition, a "kicker" means a provision that funds that otherwise would have reverted to the class or a *cy pres*, are "kicked" back to the Defendant. By contrast, in *Bluetooth*, on which CCAF again relies, a *cy pres* fund existed as part of the settlement and the unawarded attorneys' fees were returned to the defendant rather than added to

the *cy pres*.  *See Bluetooth*, 654 F.3d at 947.   Here, there is no kicker because, as discussed above, the attorneys' fees and expenses are paid by L'Oréal out-of-pocket and there is no amount to revert. For the reasons discussed above and in Plaintiffs' prior motion for attorneys' fees, the fee request is fair and reasonable.

        3.     <u>The attorneys' fees and expenses are fair in comparison to the value of the injunctive relief, which benefits past, present and future purchasers of all L'Oréal Products</u>

CCAF admonishes Plaintiffs' Counsel for attempting to recover their fees based solely on the time reasonably expended to bring this case to a close, yet undercuts its own argument by admitting the difficulty in valuing the injunctive relief in this case.   Indeed, valuation of injunctive relief can prove difficult.   While it may be difficult to attribute a precise value to the injunctive relief, and Plaintiffs' Counsel saw no merit in submitting a valuation to the Court that would have been based on hypothetical, subjective economic theories, that does not mean the injunctive relief is not *valuable*.

The injunctive relief achieved on behalf of the Class completely cures the allegations of deception in the Complaint and is the best relief practicable.   In arguing the injunctive relief has no value, the objectors improperly submit that the injunctive relief will only benefit future purchasers.  This premise is not true. The injunctive relief—removal of deceptive labeling—will provide a benefit to past and current purchasers of L'Oréal Products, not just future purchasers. *See* Section II.A.1. Furthermore, as discussed above in Section II.A.1, if this were true, no consumer would ever be able to achieve injunctive relief for a class of consumers in a false labeling case.

  "The Court must look at the settlement as a whole and should not reject a settlement merely because individual class members claim that they would have received more by litigating

rather than settling." *In re Black Farmers Discrimination Litig.*, 856 F. Supp. 2d 1, 30 (D.D.C. 2011). Looking at this settlement as a whole, it is fair, reasonable and accurate.

4. <u>The incentive awards are reasonable</u>

Incentive awards to named plaintiffs are common in class action litigation. *See In re Lorazepam*, 2003 WL 22037741, at *10. Indeed, "courts routinely approve incentive awards to compensate named plaintiffs for the services they provided and the risks they incurred during the course of the class action litigation." *Id.* CCAF argues that incentive awards provide a disincentive for the named class members to care about the unnamed class members. (Dkt. No. 19, p. 42.) However, the Court of Appeals rejected the same line of reasoning made by CCAF in *Cobell v. Salazar*, 679 F.3d 909, 922-23 (D.C. Cir. 2012). Further, courts in this circuit have routinely awarded incentive awards well in excess of the modest request here. *See Wells v. Allstate Ins. Co.*, 557 F. Supp. 2d 1, 8-9 (D.D.C. 2008) (awarding $10,000 in incentive awards to named plaintiffs); *Cohen*, 522 F. Supp. 2d at 124 (awarding $7,500 the named plaintiffs).

The modest $1,000 incentive awards are reasonable here considering that Plaintiffs dedicated their time and effort in assisting Class Counsel by, (1) providing evidence and gathering facts for this case, as well as assisting in the preparation of the complaints that were filed; (2) collecting their documents; (3) staying abreast of the litigation and settlement negotiations; and (4) reviewing and approving the Settlement. (Halunen Decl. ¶18.)

**<u>CONCLUSION</u>**

For the above reasons, and reasons articulated in other motions submitted in the context of final approval, the Settlement is fair, reasonable and adequate and warrants final approval. The objectors have failed to provide the Court with any basis to find otherwise. Plaintiffs respectfully request that the Court grant their Motion for Final Approval in its entirety.

Respectfully submitted,

MEHRI & SKALET, PLLC

Dated: <u>October 2, 2013</u>

<u>/s/ Michael Lieder</u>
MICHAEL LIEDER (D.C. Bar No. 444273)
1250 Connecticut Avenue NW
Suite 300
Washington, DC 20036
Telephone: 202/822-5100
Fax:  202/822-4997
mlieder@findjustice.com

Local Counsel for Plaintiffs and the [Proposed]
Class

HALUNEN & ASSOCIATES
CLAYTON HALUNEN
SUSAN M. COLER
MELISSA W. WOLCHANSKY
1650 IDS Center
80 South Eighth Street
Minneapolis, MN  55402
Telephone:  612/605-4098
Fax:  612/605-4099
halunen@halunenlaw.com
coler@halunenlaw.com
wolchansky@halunenlaw.com

THE MEHDI FIRM, PC
AZRA Z. MEHDI
One Market
Spear Tower, Suite 3600
San Francisco, CA  94105
Telephone:  415/293-8039
Fax:  415/293-8001
azram@themehdifirm.com

Attorneys for Plaintiffs and the [Proposed] Class

## <u>ECF CERTIFICATION</u>

The undersigned hereby certifies that, on October 2, 2013, a copy of the foregoing Reply Memorandum in Opposition to Objections and in Support of Final Approval of the Class Action Settlement was served on all counsel of record via electronic case filing notification. The filing attorney attests that he has obtained concurrence regarding the filing of this document from the signatories to this document.

Dated:  October 2, 2013                    By:___/s/ Michael Lieder_____
                                                        MICHAEL LIEDER